DONALD W. SEARLES Cal. Bar No. 135705
Email: searlesd@sec.gov
PETER DEL GRECO Cal. Bar No. 164925
Email: delgrecop@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Lorraine Echavarria, Associate Regional Director
John W. Berry, Regional Trial Counsel
444 South Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904



# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

STEVE CHEN, USFIA, INC., ALLIANCE FINANCIAL GROUP, INC., AMAUCTION, INC., ABORELL MGMT I, LLC, ABORELL ADVISORS I, LLC, ABORELL REIT II, LLC, AHOME REAL ESTATE, LLC, ALLIANCE NGN, INC., APOLLO REIT I, INC., APOLLO REIT II, LLC, AMKEY, INC., US CHINA CONSULTATION ASSOCIATION, and QUAIL RANCH GOLF COURSE, LLC

Defendants.

Case No. CV 15-07425 RGK (GJSx)

COMPLAINT

(FILED UNDER SEAL)



Plaintiff Securities and Exchange Commission (the "SEC") alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Sections 20(b),

1

20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) and 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa.

2. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce or of the mails, in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

3. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district. In addition, venue is proper in this district because all defendants reside and transact business in this district.

## SUMMARY

4. This is an action brought to halt an ongoing securities offering fraud perpetrated by defendant Steve Chen, and various purported business entities that he operates and controls including defendants US Fine Investment Arts, Inc. ("USFIA"), Alliance Financial Group, Inc. ("AFG"), Amauction, Inc., Aborell Mgmt I, LLC, Aborell Advisors I, LLC, Aborell REIT II, LLC, Ahome Real Estate, LLC, Alliance NGN, Inc., Apollo REIT I, Inc. Apollo REIT II, LLC, Amkey, Inc., US China Consultation Association ("USCCA"), and Quail Ranch Golf Course, LLC. All of these entities are co-located in an office building owned by one of Chen's business entities, Apollo REIT II, LLC, located in Arcadia, California.

5. According to its website, www.usfiainc.com, USFIA is a subsidiary of and founded by US China Consultation Association ("USCCA"), which is purportedly a joint venture between the Unites States and Chinese governments. Beginning in approximately April 2013, Chen and USFIA began to raise, and have continued to raise, significant funds from investors, totaling approximately $32

million. Among other false and misleading representations made by Chen, or by others acting at his direction, to investors to cause them to invest in USFIA, Chen has claimed that USFIA owns several large mines, including amber mines in the Dominican Republic and Argentina; that an investment in USFIA was guaranteed to increase in value sixty four times over a very short period; that USFIA was going to conduct an initial public offering ("IPO") in the near future, and that investors would receive or be entitled to receive pre-IPO shares in USFIA that would increase in value once the company went public. No IPO ever took place. Later, in approximately September 2014, investors were told that instead of cash or shares, they would receive a cryptocurrency known as "Gemcoins" in exchange for their investment in USFIA, which would greatly increase in value.

6. In fact, Chen, through his various business entities, is operating nothing more than a pyramid scheme, where investors are encouraged to build out a network of downstream investors and are compensated on their ability to do so. The USFIA amber-mining investments that Chen and his related business entities sold to investors, with the prospect of receiving pre-IPO shares, as well the Gemcoin ~~offering constitute~~ offering constitute securities under the federal securities laws.

7. In offering and selling these securities to U.S. investors, Defendants, acting with scienter, made material misrepresentations and omissions as to the value of those securities and uses of investors' monies. By this conduct, Defendants have violated and are violating the antifraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. § 77q, and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder.

8. Defendants offered and sold these securities to U.S. investors in unregistered transactions, with no available exemption from registration. In doing so, Defendants have violated and are violating the registration provisions of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77f.

9. In the face of growing investor unrest, and negative publicity in the

press, Chen was interviewed by the Arcadia Police Department on September 15, 2015, regarding his operation of USFIA. Immediately after that interview, Chen attempted to wire $7.5 million out of USFIA's bank account at Bank of America to a bank in the Peoples Republic of China. The wire was broken down into two parts, and $3.5 million was sent abroad, while the remainder is still held by the bank.

10. In light of the Defendants' ongoing conduct, and Chen's recent efforts to move investor funds overseas, the SEC seeks a temporary restraining order and preliminary and permanent injunctions prohibiting future such violations and prohibiting Defendants from soliciting, accepting or depositing any investor monies; an order freezing Defendants' assets, appointing a temporary receiver, providing for expedited discovery, requiring preservation of documents, and ordering an accounting; and disgorgement of Defendants' ill-gotten gains, prejudgment interest, and civil penalties.

## THE DEFENDANTS

11. **Steve Chen.** Steve Chen is a resident of Arcadia, California.

12. **USFIA, Inc.** USFIA, Inc. is an active California corporation located at 135 East Live Oak Avenue in Arcadia, California. Steve Chen is its registered agent and its sole principal.

13. **Alliance Financial Group, Inc.** Alliance Financial Group, Inc. is a California corporation located at 135 East Live Oak Avenue in Arcadia, California. Promotional materials describe it as the holding company for the various entities owned by Steve Chen.

14. **Amauction, Inc.** Amauction, Inc. is an active California corporation located at 135 East Live Oak Avenue in Arcadia, California. Steve Chen is its registered agent and its sole principal.

15. **Aborell Mgmt I, LLC.** Aborell Mgmt I, LLC is an active California limited liability company located at 135 East Live Oak Avenue in Arcadia, California. Steve Chen is its registered agent and its sole manager.

16. **Aborell Advisors I, LLC.** Aborell Advisors I, LLC is an active California limited liability company located at 135 East Live Oak Avenue in Arcadia, California. Steve Chen is its registered agent and its sole manager.

17. **Aborell REIT II, LLC.** Aborell REIT II LLC is an active California limited liability company located at 135 East Live Oak Avenue in Arcadia, California. Steve Chen is its registered agent.

18. **Ahome Real Estate, LLC.** Ahome Real Estate, LLC is a California limited liability company located at 135 East Live Oak Avenue in Arcadia, California. Steve Chen is its registered agent and its sole principal. It purports to be in the business of real estate and gemstone investments.

19. **Alliance NGN, Inc.** Alliance NGN, Inc. is an active California corporation located at 135 East Live Oak Avenue in Arcadia, California. Steve Chen is its registered agent and its sole principal.

20. **Apollo REIT I, Inc.** Apollo REIT I, Inc. was a California corporation located at 12801 Schabarum Avenue in Irwindale, California. Steve Chen was its registered agent and its principal.

21. **Apollo REIT II, LLC.** Apollo REIT II is a California limited liability company located at 12801 Schabarum Avenue in Irwindale, California. Steve Chen is identified as its General Partner and 50% owner on a loan application it submitted to JPMorgan Chase in 2011

22. **Amkey, Inc.** Amkey, Inc. is an active California corporation located at 135 East Live Oak Avenue in Arcadia, California. Steve Chen is its registered agent and its sole principal.

23. **US China Consultation Association.** US China Consultation Association is an active California corporation located at 135 East Live Oak Avenue in Arcadia, California. Steve Chen is its registered agent and its sole principal.

24. **Quail Ranch Golf Course, LLC.** Quail Ranch Golf Course LLC is a California limited liability company located at 135 East Live Oak Avenue in Arcadia,

1 | California. Steve Chen is its registered agent.

## THE FRAUDULENT SCHEME

### A. USFIA Initial Offering Materials

25. The USFIA is physically located in Arcadia, California, and its offerings were made, using the facilities of interstate commerce, to investors located in the United States, as well as overseas. Investor funds were received by USFIA in the United States and those funds were maintained in U.S. bank accounts.

26. USFIA's website is registered to Steve Chen and AFG. Investors in USFIA received units of ownership in USFIA. Chen represented that these units would be convertible to USFIA common stock, on a 1:1 basis, when USFIA went public. Chen also told investors that when USFIA went public, its common stock would not be worth less than $20 per share. USFIA identified the units as "points" in the investor accounts it maintained on its computer system.

27. In addition to receiving units or points in USFIA, investors also typically received an amount of amber, purportedly equal to 30% of their investment. USFIA did sent the amber to investors, but upon obtaining appraisals of the amber, investors learned that the amber was practically worthless.

28. USFIA also represented that it had an extensive bonus and award system to encourage investors to recruit additional investors. As set forth in its written investor "Compensation Program," investors could choose from five different "packages" ranging in amounts of $1,000, $2,000, $5,000, $10,000 and $30,000. Depending on the type of package purchased by a downstream investor, the recommending investor would receive a 10% "Recommendation Award," and an additional "binary" reward based on sales of an investor's downline investors. Investors would also receive a "Recurring Bonus" generated by different "generations" of downstream investors, ranging from 5% to 20%. USFIA's materials also represented that investors would receive minimum monthly income depending on how many teams of investors the investor managed. USFIA's materials also

provided for other rewards, including a travel reward, a car reward (a BMW or Mercedes Benz), and a house reward (for a house at the Quail Ranch Golf Course).

**B.     The "Gemcoin" Offering**

29.     Beginning on or about September 1, 2014, Chen's and USFIA's investors were told that instead of receiving IPO shares in exchange for their units in USFIA, they would be required to convert their units or points into "Gemcoins," some type of virtual currency which was to be issued by USFIA, and allegedly secured by USFIA's amber mines in the Dominican Republic and Argentina. Chen told investors that the conversion from USFIA units to Gemcoins was necessitated by a change in U.S. government policy. According to Chen, this change also caused a delay in the promised USFIA IPO by about two years, but when USFIA finally went public investors would be able to use their Gemcoins to purchase USFIA stock.

**C.     Defendants' Misrepresentations and Omissions to Investors**

30.     In connection with Chen's "Gemcoin" offering, Chen, through the USFIA website, and through secondary websites that link to websites Chen controlled, made the following outlandish statements designed to encourage investors to invest in Gemcoins, which on information and belief, the SEC believes to be false:

- Gemcoin is growing exponentially and there are millions of Gemcoin users around the world today;
- Gemcoin's value is backed by Alliance Financial Group's mines around the world;
- Gemcoin is issued by USFIA Currency Fund, "a multinational corporation" in California that is owned, supported and backed by AFG;
- AFG is involved in the processing of world class jewelry, REITs, biotech, information technology, and the aerospace industry;
- AFG has more than $50 billion in assets worldwide and more than 2,000 business associates; and
- AFG owns the unique Copper Pectolite mines and Rhodochrosite mines

in Argentina and El Valle mines in the Dominican Republic, where its 30,000 square foot mine produces 2/3 of the world's high-quality amber.

31. In addition, through the USFIA website, and through secondary websites that link to websites Chen controlled, made the following material misrepresentations designed to encourage investors to invest in Gemcoins:

- the use of Gemcoin as a virtual currency has been legalized by the State of California;
- Gemcoin is backed by $15 billion in assets and that there is "zero" chance of devaluation because Gemcoins are backed by their equivalent in precious stones; and
- that 2000 ATM platforms exist for converting Gemcoins into paper money.

32. In addition to these Internet-based misrepresentations, Chen, and others acting on his behalf, made numerous oral representations to investors that were equally incredible, and on information and belief the SEC believes are false, including the following:

- that USFIA would open 3000 coffee shops in the next three years;
- that USFIA owned 70% of the amber mines in the Dominican Republic;
- that investors would receive amber equal in value to 30% of their investment principal, in addition to units in USFIA, in exchange for their investments;
- that Steve Chen founded China Unicom, had been an undersecretary to the Secretary of States of the People Republic of China, and that the USCCA reported to both the presidents of the United States and the PRC; and
- that units in USFIA would increase exponentially every two months, such that 10,000 units would become 100,000 units in two months, and would double every two months after that.

*Id.* ¶¶ 23, 34, 41-42, 45-46, 54, 86.

33. In addition, Chen, and others acting on his behalf, made numerous oral misrepresentations to investors designed to encourage investors to invest in Gem Coins, including the following:

- the investors would be permitted to withdraw or sell their Gemcoins within 60 days on investing;
- that investors would be able to sell their Gemcoins to other investors at an online auction facility conducted on USFIA's website;
- that the price of Gemcoins would steadily increase over time;
- that the United States government has purchased 70% of the Gemcoins in circulation; and,

34. Defendants knew, or were reckless in not knowing, that all of the aforementioned statements and misrepresentations were false and misleading.

35. Each of these statements and misrepresentations were also materially misleading to investors. Indeed, USFIA never engaged in an IPO and investors have been unable to sell or auction off their Gemcoins, and their value is *de minimus*.

**D. Defendants' Commingling and Misuse of Investor Funds**

36. During the period from July 2011 through May 2015, approximately $32 million had been credited to USFIA's primary bank account at the Bank of America. Of that amount, almost $19 million came in the form of wires, made by individuals, primarily located in Asia, from foreign banks located in Asia. Approximately $5.7 million came in the form of checks, the majority of which were drawn on U.S. banks. It does not appear from USFIA's bank records that it had any apparent revenues during the period in issue. Other amounts, both credited to and debited from USFIA's primary account at the Bank of America, consisted of transactions with corporate entities controlled by Chen, including Ahome Real Estate, Amauction, Amkey, Apollo REIT I, Apollo REIT II, and Quail Ranch Golf Course. On information and belief, all of these funds represent funds obtained from investors in

connection with Chen's and USFIA's securities offering as many of the wires and checks credited to USFIA's primary bank account at Bank of America were in denominations of the investment amounts promoted by USFIA.

37. In addition, substantial amounts were drawn out of USFIA's primary bank account to purchase luxury automobiles, entertainment, travel, and as cash withdrawals.

38. In the face of growing investor unrest, and negative publicity in the press, Chen was interviewed by the Arcadia Police Department on September 15, 2015, regarding his operation of USFIA. Immediately after that interview, Chen attempted to wire $7.5 million out of USFIA's bank account at Bank of America to a bank in the Peoples Republic of China. The wire was broken down into two parts, and $3.5 million was sent abroad, while the remainder is still held by the bank.

**E. Defendants' Offer and Sale of Securities Without Registration or Exemption**

39. Defendants did not register with the SEC any of securities they offered or sold.

40. Defendants' solicitations and offerings are ongoing.

41. By his actions described herein, Chen was a necessary participant and a substantial factor in the offer and sale of the securities described herein.

**FIRST CLAIM FOR RELIEF**

**Unregistered Offer and Sale of Securities**

**Violations of Section 5(a) and (c) of the Securities Act**

**(against all Defendants)**

42. The SEC realleges and incorporates by reference paragraphs 1 through 41 above.

43. The USFIA and Gemcoin offerings that were offered and sold to U.S. customers as alleged herein constitute "securities" as defined by the Securities Act and

the Exchange Act.

44. Defendants, by engaging in the conduct described above, directly or indirectly, singly and in concert with others, made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer to sell or to sell securities, or carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such securities, and when no exemption from registration was applicable.

45. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined, will continue to violate, Section 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e.

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a) of the Securities Act

### (against all Defendants)

46. The SEC realleges and incorporates by reference paragraphs 1 through 41 above.

47. Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

    (a)    with scienter, employed devices, schemes, or artifices to defraud;

    (b)    obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)    engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

48. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined, will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

### THIRD CLAIM FOR RELIEF

### Fraud in Connection with the Purchase or Sale of Securities

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

### (against all Defendants)

49. The SEC realleges and incorporates by reference paragraphs 1 through 41 above.

50. Defendants, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities or interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

(a) employed devices, schemes, or artifices to defraud;

(b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon other persons.

51. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined, will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

#### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

## II.

Issue orders, in a form consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily and permanently enjoining Defendants and their agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 5(a) and (c) and Section 17(a) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a) and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. §§ 240.10b-5.

## III.

Issue orders, in a form consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily and permanently enjoining Defendants and their agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from soliciting, accepting, or depositing any monies from actual or prospective investors in connection with any offering of securities pursuant to Section 20(b) of the Securities Act and Section 21(d) of the Exchange Act.

## IV.

Issue in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and a preliminary injunction freezing the assets of Defendants Steven Chen, defendants US Fine Investment Arts ("USFIA"), Alliance Financial Group, Inc. ("AFG"), US China Consultation Association ("USCCA"), Amauction, Inc., Aborell REIT I, LLC, Aborell REIT II, LLC, Ahome Real Estate, LLC, Alliance NGN, Apollo REIT I, Apollo REIT II, LLC, Amkey, Inc., and Quail Ranch Golf Club, LLC.; prohibiting each of the Defendants from destroying documents; and ordering accountings by each of the Defendants; and appointing a receiver over defendants US Fine Investment Arts ("USFIA"), Alliance Financial Group, Inc. ("AFG"), US China

Consultation Association ("USCCA"), Amauction, Inc., Aborell REIT I, LLC, Aborell REIT II, LLC, Ahome Real Estate, LLC, Alliance NGN, Apollo REIT I, Apollo REIT II, LLC, Amkey, Inc., and Quail Ranch Golf Club, LLC.

## V.

Order Defendants to disgorge all ill-gotten gains from their illegal conduct, together with prejudgment interest thereon.

## VI.

Order Defendants to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## VII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VIII.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: September 22, 2015              Respectfully submitted,

/s/ Donald W. Searles
Donald W. Searles
Peter Del Greco
Attorneys for Plaintiff
Securities and Exchange Commission