1  DONALD W. SEARLES, Cal. Bar No. 135705
   Email: searlesj@sec.gov
2  PETER F. DEL GRECO, Cal. Bar No. 164925
   Email: delgrecop@sec.gov
3
   Attorneys for Plaintiff
4  Securities and Exchange Commission
   Michele Wein Layne, Regional Director
5  Lorraine B. Echavarria, Associate Regional Director
   John Berry, Regional Trial Counsel
6  444 South Flower Street, Suite 900
   Los Angeles, California 90071
7  Telephone:  (323) 965-3998
   Facsimile:  (213) 443-1904
8



9

10               UNITED STATES DISTRICT COURT

11               CENTRAL DISTRICT OF CALIFORNIA

12

13  SECURITIES AND EXCHANGE          Case No. CV 15-07425 RGK (GJS)
    COMMISSION,
14                                   **DECLARATION OF PETER F.
               Plaintiff,            DEL GRECO IN SUPPORT OF
15                                   PLAINTIFF'S *EX PARTE*
          vs.                        APPLICATION FOR A
16                                   TEMPORARY RESTRAINING
    STEVE CHEN, USFIA, INC.,         ORDER**
17  ALLIANCE FINANCIAL GROUP,
    INC., AMAUCTION, INC., ABORELL
18  MGMT I, LLC, ABORELL
    ADVISORS I, LLC, ABORELL REIT
19  II, LLC, AHOME REAL ESTATE,
    LLC, ALLIANCE NGN,INC.,
20  APOLLO REIT I, INC., APOLLO
    REIT II, LLC, AMKEY, INC,, US
21  CHINA CONSULTATION
    ASSOCIATION, and QUAIL RANCH
22  GOLF COURSE, LLC,

23             Defendants.

24

25

26

27

28



1    I, Peter F. Del Greco, declare pursuant to 28 U.S.C. § 1746, as follows:

2    1.    I am an attorney admitted to practice law by the State Bar of California and

3    by this Court.  I am a Staff Attorney in the Enforcement Division of Plaintiff Securities

4    and Exchange Commission's ("SEC") Los Angeles Regional Office.  I have personal

5    knowledge of each of the matters set forth below and, if called as a witness, I could and

6    would competently testify to the facts stated herein.

7    2.    In November 2014, the SEC began to receive information from individuals

8    claiming to have invested in, and been defrauded by, USFIA Inc. ("USFIA").  The matter

9    was assigned to me for investigation.

10    3.    At about the same time, I was informed that the FBI was conducting its own

11    undercover investigation into USFIA.  I had several conversations and meetings with

12    representatives of the FBI to discuss coordination of our respective investigations.  The

13    criminal authorities were concerned that overt investigatory efforts by the SEC might

14    compromise their undercover investigation and alarm one of the subjects of that

15    investigation, whom they believed to pose a flight risk.  Accordingly, an agreement was

16    reached that the SEC would, at least temporarily, refrain from issuing subpoenas or

17    taking other overt investigative action, and the criminal authorities would share bank

18    records and other documents and information that it obtained in the course of its

19    investigation.

20    **A.    The Defendants**

21    4.    USFIA, Inc. is an active California corporation located at 135 East Live Oak

22    Avenue in Arcadia, California.  Steve Chen is its registered agent and its sole principal.

23    A true and correct copy of the Westlaw Corporate Records and Business Registration for

24    USFIA, Inc. is attached hereto as Exhibit 1.

25    5.    Amauction, Inc. is an active California corporation located at 135 East Live

26    Oak Avenue in Arcadia, California.  Steve Chen is its registered agent and its sole

27    principal.  A true and correct copy of the Westlaw Corporate Records and Business

28    Registration for Amauction, Inc. is attached hereto as Exhibit 2.

6.      Ahome Real Estate, LLC is a California limited liability company located at 135 East Live Oak Avenue in Arcadia, California.  Steve Chen is its registered agent and its sole principal.  It purports to be in the business of real estate and gemstone investments.  A true and correct copy of the Westlaw Corporate Records and Business Registration for Ahome Real Estate, LLC is attached hereto as Exhibit 3.

7.      Amkey, Inc. is an active California corporation located at 135 East Live Oak Avenue in Arcadia, California.  Steve Chen is its registered agent and its sole principal.  A true and correct copy of the Westlaw Corporate Records and Business Registration for Amkey, Inc. is attached hereto as Exhibit 4.

8.      Alliance Financial Group, Inc. is a California corporation located at 135 East Live Oak Avenue in Arcadia, California.  Promotional materials describe it as the holding company for the various entities owned by Steve Chen.  A true and correct copy of the account opening document it submitted to Bank of America, which identifies Steve Chen as its President, is attached hereto as Exhibit 5.

9.      US-China Consultation Association is an active California corporation located at 135 East Live Oak Avenue in Arcadia, California.  Steve Chen is its registered agent and its sole principal.  A true and correct copy of the Westlaw Corporate Records and Business Registration for Amkey, Inc. is attached hereto as Exhibit 6.

10.     Quail Ranch Golf Course LLC is a California limited liability company located at 135 East Live Oak Avenue in Arcadia, California.  Steve Chen is its registered agent.   A true and correct copy of the Westlaw Corporate Records and Business Registration for Quail Ranch Golf Course, LLC is attached hereto as Exhibit 7.

11.     Alliance NGN, Inc. is an active California corporation located at 135 East Live Oak Avenue in Arcadia, California.  Steve Chen is its registered agent and its sole principal.  A true and correct copy of the Westlaw Corporate Records and Business Registration for Alliance NGN, Inc. is attached hereto as Exhibit 8.

12.     Aborell Mgmt I, LLC is an active California limited liability company located at 135 East Live Oak Avenue in Arcadia, California.  Steve Chen is its registered

agent and its sole manager.   A true and correct copy of the Westlaw Corporate Records and Business Registration for Aborell Mgmt I, LLC is attached hereto as Exhibit 9.

13.     Aborell Advisors I, LLC is an active California limited liability company located at 135 East Live Oak Avenue in Arcadia, California.  Steve Chen is its registered agent and its sole manager.   A true and correct copy of the Westlaw Corporate Records and Business Registration for Aborell Mgmt I, LLC is attached hereto as Exhibit 10.

14.     Aborell REIT II LLC is an active California limited liability company located at 135 East Live Oak Avenue in Arcadia, California.  Steve Chen is its registered agent.  True and correct copies of the Westlaw Corporate Records and Business Registration for Aborell REIT II LLC and the account opening document it submitted to Bank of America, which identifies Steve Chen as its sole manager, are attached hereto as Exhibit 11.

15.     Apollo REIT I, Inc. was a California corporation located at 12801 Schabarum Avenue in Irwindale, California.  Steve Chen was its registered agent and its principal.  A true and correct copy of the Westlaw Corporate Records and Business Registration for Apollo REIT I, Inc. is attached hereto as Exhibit 12.

16.     Apollo REIT II is a California limited liability company located at 12801 Schabarum Avenue in Irwindale, California.  Steve Chen is identified as its General Partner and 50% owner on a loan application it submitted to JPMorgan Chase in 2011, a true and correct copy of which is attached hereto as Exhibit 13.

**B.      Written Representations Made By the Defendants and Their Disciples**

17.     Attached hereto as Exhibit 14 is a true and correct copy of a domain name registry search I conducted at www.whois.com for www.usfiainc.com.  It identifies Steve Chen and Alliance Financial Group Inc. ("AFG") as the registrants for the site.

18.     Attached hereto as Exhibit 15 are true and correct copies of web pages I printed from the www.usfiainc.com website.  Its "About Us" page states that USFIA "is founded and owned by the US China Consultation Association" and that it is "a global company who owns several large mines in the world including amber mine, Blue Larimar

mine and Rhodochrosite mine in Dominica and Argentina."  Its "My Account" page links to a back office located at www.ammine.do, which includes the announcement that investors must convert their reward points into Gemcoin cryptocurrency by November 16, 2015 or their points balance will expire.  Its "News" page links to various videos, most of which are in  Chinese, but also to one titled "Gemcoin Promotional Video by Malaysia Team", which is in English, which I viewed, and in the course of which the following representations are made:

- Gemcoin is growing exponentially and there are millions of Gemcoin users around the world today;

- Gemcoin's value is backed by Alliance Financial Group's mines around the world;

- The use of Gemcoin as a virtual currency has been legalized by the State of California;

- Gemcoin is issued by USFIA Currency Fund, "a multinational corporation" in California that is owned, supported and backed by AFG;

- AFG is involved in the processing of world class jewelry, REITs, biotech, information technology, and the aerospace industry;

- AFG has more than $50 billion in assets worldwide and more than 2,000 business associates; and

- AFG owns the unique Copper Pectolite mines and Rhodochrosite mines in Argentina and El Valle mines in the Dominican Republic, where its 30,000 square foot mine produces 2/3 of the world's high-quality amber.

19.    Attached hereto as Exhibit16 is a true and correct copy of a domain name registry search I conducted at www.whois.com for www.alliancefinancialgroupusa.com. It identifies Wendy Liu and AFG as the registrants for the site.

20.    Attached hereto as Exhibit 17 are true and correct copies of web pages I printed from the www.alliancefinancialgroupusa.com website.  Its "About Us" page states that its "milestone" accomplishments include "Real Estate Development, Real

1   Estate Investment Trusts, Precious Metals and Gemstone Mining, a professional Auction

2   House, a Telecommunications and Networking Company, an Aeronautical Supplies

3   company as well as a Biotechnological firm" and boasts of a "global footprint" that

4   includes "branch offices in over 18 countries and regions with more than 2000 full time

5   employees."

6        21.    In addition to the two websites noted above which are directly linked to

7   USFIA and AFG, there are numerous secondary websites which, registered to others,

8   which link to the websites he controls, repeat (and in some cases expand upon) the

9   information those websites provide, and/or link directly to the online portal allowing a

10  website viewer to invest in USFIA.  For example:

11       22.    Attached hereto as Exhibit 18 is a true and correct copy of a domain name

12  registry search I conducted at www.whois.com for www.gemcoin-usfia.com.  It identifies

13  Richard Mertz and Numora International Inc. as the registrants for the site.  Attached

14  hereto as Exhibit 19 are true and correct copies of web pages I printed for www.gemcoin-

15  usfia.com.  Its "Home" page contains the same English-language video linked to the

16  www.usfiainc.com website that is described in paragraph 18 herein.  Its "AFG" page

17  links to the www.alliancefinancialgroupusa.com website that is described in paragraph 20

18  herein.  Its "USFIA" page states that USFIA is a US-Chinese joint venture with strong

19  political connections, and contains a link to a video in which the narrator states that AFG

20  has branches in more than 18 countries, more than 2000 associates, and more than $50

21  billion in assets; that Gemcoins are available at more than 2,500 ATMs worldwide; and

22  that "If you're not getting a 10% to 20% return per month, you need to check out

23  Gemcoin."  Its "Gemcoin" page links to a narrated 30-minute slideshow which states that

24  Gemcoin is the "world's first virtual currency fully backed with intrinsic value", which is

25  supported by AFG's mines; and describes the investment packages offered and the

26  possibility of earning a 7.5% bonus on investments made by those investors whom one

27  recruits.  Its "Contact" page contains AFG's Arcadia, California mailing address.

28  Attached hereto as Exhibit19A is a true and correct copy of a Gemcoin page on Facebook

1  at www.facebook.com/gemcoin.us.  It depicts a photograph of boxed stones beneath a

2  banner reading "Gemcoin Backed by Real Assets – Our Precious Gemstone", which,

3  Richard Mertz, the www.gemcoin-usfia.com registrant claims, USFIA submitted to the

4  US Department of Treasury towards a $15 billion pledge for the intrinsic value for its

5  virtual currency.

6        23.     Attached hereto as Exhibit 20 is a true and correct copy of a domain name

7  registry search I conducted at www.whois.com for www.gemcointeam.com.  It identifies

8  Perfect Privacy, LLC of Jacksonville, Florida as the registrant for the site.  Attached

9  hereto as Exhibit 21 are true and correct copies of web pages I printed for

10  www.gemcointeam.com.  The homepage for the site states that USFIA is controlled by

11  UCCA and that UCCA is the result of an alliance between China and the USA, pursuant

12  to a partnership agreement signed by Presidents Obama and Xi in June 2013; that Chen

13  created China Unicom in 1993; and contains links to the www.usfiainc.com and

14  www.alliancefinancialgroupusa.com websites registered to AFG and Chen, as well as to

15  www.ahomeusa.com, which contains information in Chinese about real properties owned

16  by Ahome, including the Quail Ranch Golf Course, which appears to be for sale through

17  an EB-5 visa offering.  Attached hereto as Exhibit 22 is a true and correct copy of a

18  domain name registry search I conducted at www.whois.com for www.ahomeusa.com,

19  which identifies Wendy Liu and Ahome Real Estate, LLC as the registrants for the site.

20        24.     Attached hereto as Exhibit 23 is a true and correct copy of a domain name

21  registry search I conducted at www.whois.com for www.gemcoin-investment.com.  It

22  identifies Phillippe Dupuis of Oradour, France as the registrant for the site.  Attached

23  hereto as Exhibit 24 are true and correct copies of web pages I printed for www.gemcoin-

24  investment.com.  Its "Gemcoin" page states that Gemcoin is backed by $15 billion in

25  assets and that there is a "zero" chance of devaluation because Gemcoins are backed by

26  their equivalent in precious stones.  Its "How It Works" page links to a slideshow which

27  states that USFIA and UCCA's Board members include 10 US and Chinese Peoples'

28  Congress members, USFIA's Dominican mine has already produced 1 million grams of

1  amber, and the value of Gemcoins has doubled in two months. Its "Gemcoin Valuation

2  Updates" show the price of Gemcoin moving in one direction only – up.

3          25.      Attached hereto as Exhibit 25 is a true and correct copy of a domain name

4  registry search I conducted at www.whois.com for www.investgemcoin.com.  It

5  identifies Tze Hong Sim of Singapore as the registrant for the site.  Attached hereto as

6  Exhibit 26 are true and correct copies of web pages I printed for

7  www.investgemcoin.com.  Its "User Guides ????" page contains links to several videos,

8  most in Chinese, but several featuring USFIA vice-president Leonard Johnson speaking

9  in English while simultaneously being translated into Chinese.  Its "User Guide" links to

10  various .pdf slideshows which appear to have been created by Registrant Sim, but

11  includes (under the heading "To sign up member"), a link to the www.usfiainc.com

12  website, and under "Make Payment," a link to an instructional, in both English and

13  Chinese, which explains how to make payment on the www.usfiainc.com site registered

14  to Chen.

15          26.      Attached hereto as Exhibit 27 is a true and correct copy of a domain name

16  registry search I conducted at www.whois.com for www.1gemcoin.com.  It identifies

17  Ethan Zhang of Ontario, Canada as the registrant for the site.  Attached hereto as Exhibit

18  28 are true and correct copies of web pages I printed for www.1gemcoin.com.  Its "About

19  Us" page states that California has legally recognized Gemcoins, that USFIA is backed

20  by AFG's $50 billion in assets, and posts a photograph of a Spanish-language deed

21  purportedly evidencing USFIA's ownership of an amber mine in the Dominican

22  Republic.

23          27.      Attached hereto as Exhibit 29 is a true and correct copy of the deed of sale

24  portrayed on the www.1gemcoin.com website as well as an English translation thereof.

25  Rather than demonstrating USFIA's ownership of the property described in the

26  document, it identifies Yan Chen, Steve Chen's brother, as the owner.  As such, the deed

27  provides no indicia of ownership whatsoever on the part of USFIA.

28          28.      Attached hereto as Exhibit 30 is a true and correct copy of a domain name

1  registry search I conducted at www.whois.com for www.gemcoin.ch.  It identifies

2  Sebastian Catusse of Geneva, Switzerland as the registrant for the site.  Attached hereto

3  as Exhibit 31 are true and correct copies of web pages I printed for www.gemcoin.ch.  Its

4  homepage contains a link to the www.alliancefinancialgroupusa.com site controlled by

5  Chen, a profile of Chen, and a Gemcoin flyer stating that Gemcoin has been declared

6  legal currency by California.  Other pages link to the www.usfiainc.com homepage, recite

7  USFIA's control by UCCA and UCCA's existence as an alliance between the USA and

8  China, Chen's creation of China Unicom, links to a video of USFIA vice-president

9  Leonard Johnson speaking at a conference in Dubai, and means of registering for USFIA

10  via the www.gemcoin.ch website.

11        29.    Attached hereto as Exhibit 32 is a true and correct copy of a domain name

12  registry search I conducted at www.whois.com for www.usfia.ch.  It identifies Sebastian

13  Catusse of Geneva, Switzerland as the registrant for this site too.  Attached hereto as

14  Exhibit 33 are true and correct copies of web pages I printed for www.usfia.ch.  Its

15  homepage contains a link, at the bottom, to the member log-in on the www.usfiainc.com

16  website controlled by Chen and a link to a page titled "I am sending a summary of

17  USFIA event with Steve Chen, Leonard and USFIA Team on 8/30/15.  GEMCOIN????"

18  that appears to reflect information conveyed by Chen concerning Gemcoin, including

19  representations as to the existence of 2000 ATM platforms for converting Gemcoins to

20  paper money, the worldwide scarcity of amber and the 1200% increase in its price over

21  the past year, and the fact that Gemcoin and Bitcoin are the only two cryptocurrencies

22  currently recognized by California.

23        **C.    Oral Representation Made By The Defendants To Investors**

24              <u>Chenyu Chen</u>

25        30.    On August 19, 2015, I, along with members of the FBI and the IRS, jointly

26  interviewed Chenyu Chen, with the assistance of a Mandarin interpreter, at the FBI

27  offices in West Covina.  Mr. Chen, a 57-year old male residing in Rowland Heights,

28  California, made the following statements:

31.     He first learned of USFIA from his friend, Yuting "Sharon" Sun. Sun had taken part in a beauty contest sponsored by USFIA, won some prize money, and invested it in USFIA.

32.     A few days after learning of it from Sun, in or about September 2014, he visited USFIA's offices in Arcadia. He met individually and collectively with four individuals during that visit: Steve Chen, Kevin Hsiao, and another male and a female whose names he did not recall. Hsiao told him that USFIA was going to open about 3,000 coffee shops in the next three years. He also told him that if Chen invested $30,000, he would receive $60,000 worth of Gemcoins – twice the usual amount, as he was eligible for an "early investor bonus" – as well as $30,000 worth of amber. Hsiao compared Gemcoin to Bitcoin, with which Chenyu Chen was familiar, and told him that USFIA had approximately $50 billion in assets, which included amber mines in the Dominican Republic.

33.     The woman whose name he does not recall told him that he would receive additional compensation if he referred new investors to USFIA. For example, she told him that if he referred someone who invested $10,000, he would receive $10,000 in Gemcoins and $10,000 worth of amber.

34.     One of the individuals he met with – he did not recall which one – told him that he would be able to withdraw or sell his Gemcoins 60 days after investing.

35.     When Chenyu Chen met one-on-one with Steve Chen, Steve Chen was sitting at his computer. Steve Chen looked up from the screen and told Chenyu Chen that Gemcoins were currently valued at 5.46 cents apiece.

36.     In September 2014, Chenyu Chen invested a total of $30,000 in USFIA, in several transactions involving his credit cards and personal checks. Attached hereto as Exhibit 34 is a true and correct copy of a check for $15,000 that was drawn on Chen's account, made payable to USFIA, and deposited into the USFIA account at Bank of American ending in x0123. Attached hereto as Exhibit 35 are true and correct copies of receipts for two investments in USFIA that Chen made for $6,000 and $3,000,

1  respectively, after allowing USFIA to swipe his credit card on a visit to its office.

2  Attached hereto as Exhibit 36 are true and correct copies of other documents Chen

3  received from USFIA, evidencing his total investment of $30,000, which were provided

4  by Chen.

5       37.    Chen's primary reason for investing was that he believed in the potential for

6  appreciation in the value of Gemcoins.  Although he received amber as well as

7  Gemcoins, the amber was a secondary consideration.

8       38.    Sixty days after investing, Chen was able to auction his Gemcoins on the

9  members-only portion of USFIA's Internet website.  To do so, he logged in using his

10  personalized user name, password and verification code, listed some portion of his

11  Gemcoins for sale at the prevailing daily rate that was reported on the USFIA website,

12  and waited for another USFIA investor to agree to purchase them.  It was at this time that

13  he was told for the first time that he could only auction 5 to 10% of the value of his

14  original investment at a time, and further, that he would receive only 75% of the sales

15  proceeds.  The remaining 25% would automatically be reinvested as Gemcoins.  This

16  limitation on his ability to sell his Gemcoins had not been disclosed to him prior to

17  investing.

18       39.    When a sale had been completed, and 75% of the sales proceeds credited to

19  his account, Chen would pick up a check for that amount at USFIA's offices in Arcadia.

20  Attached hereto as Exhibit 37 are true and correct copies of the four checks Chen

21  received from USFIA for Gemcoin sales proceeds.

22       40.    In 2015, Chen received from USFIA a 2014 Form 1099-Misc indicating that

23  he had received a total of $9,598.98 in "employee compensation."  The amount indicated

24  exceeds the sum of the four checks he received from USFIA for the only Gemcoin sales

25  that he completed.  Attached hereto as Exhibit 38 is a true and correct copy of the Form

26  1099.

27       41.    USFIA posted the current price of Gemcoins on its website every day.

28  According to the website, the price was increasing steadily.  USFIA claimed that the

1   price of Gemcoins increased $.01 for every $8 million in new Gemcoin investments.  At

2   one point, the USFIA website indicated that Chen's account held about $200,000 worth

3   of Gemcoins.

4        42.    In late 2014, USFIA blocked investor accounts from auctioning Gemcoins

5   and refused to honor withdrawal requests.  Kevin Hsiao told Chen that it was a temporary

6   interruption caused by efforts to upgrade their Internet connection, and advised him not to

7   sell once the upgrade was completed because the price of Gemcoins would increase.

8        43.    In early 2015, the auction feature still had not been restored, and Chen went

9   to USFIA's office to redeem his investment.  USFIA refused to honor his request.

10        Yinquan "Michael" Liu

11        44.    On August 20, 2015, I, along with members of the FBI and the IRS, jointly

12   interviewed Yinquan "Michael" Liu, with the assistance of a Mandarin interpreter, at the

13   FBI offices in West Covina.  Mr. Liu, a 60-year old male residing in Arcadia, California,

14   made the following statements:

15        45.    In December 2013 a friend invited him to dinner at USFIA headquarters in

16   Arcadia.  After the meal, Kevin Hsiao and Jason Ning made a presentation about USFIA

17   to the 20 or so potential investors in attendance.  Hsiao and Ning made the following

18   statements:

19   •   USFIA was going to have an initial public offering of its stock within the

20       next six months, and was currently offering investors the opportunity to

21       purchase pre-IPO stock in the form of units of USFIA.

22   •   Someone investing $10,000 in USFIA would receive 10,000 units in USFIA.

23   •   USFIA units were guaranteed to increase 64 times in value when USFIA

24       went public.

25   •   USFIA owned 70% of the amber mines in the Dominican Republic.

26   •   In addition to receiving units, investors in USFIA would receive amber.

27   •   A person investing $10,000 would typically receive $3,000 worth of amber

28       in addition to 10,000 units, but they were in a bonus period during which a

1      person investing $10,000 would receive $7,000 worth of amber instead, in

2      addition to 10,000 units.

3      • The amber was guaranteed to increase 64 times in value as well.

4      46. USFIA maintained an online auction facility on which investors could sell

5  their units or their amber to other investors two months after making their initial

6  investment.

7      47. Liu was not convinced that he should invest in USFIA at that time.  As a

8  result, he attended another presentation at USFIA's offices the following week.  At that

9  presentation, Kevin Hsiao spoke again and was joined by Steve Chen.  Chen repeated the

10  same claims about an investment in USFIA that Hsiao and Ning had made at the prior

11  presentation.  In addition, he made a number of new statements, including:

12      48. USFIA was led by U.S.-China Consultation Association ("UCCA"), which

13  consisted of Steve Chen, John Wuo, Solomon Yang and Kun Jian.

14      49. UCCA had been formed by the governments of the United States and the

15  Peoples' Republic of China ("PRC") to serve as a conduit between the two nations and to

16  resolve conflicts between them.

17      50. UCCA had brokered an agreement between the USA and the PRC to allow

18  the exportation of shale gas extraction techniques, commonly referred to as "fracking",

19  by the USA to the PRC.

20      51. UCCA reported to the presidents of the USA and the PRC.

21      52. UCCA reported to the White House through Leonard Johnson, its vice-

22  president, who is the younger brother of the White House Chief of Staff.

23      53. The USA and the PRC wanted to fund UCCA, but that Steve Chen had

24  refused their offer because he wanted to maintain its independence.

25      54. Steve Chen had once been the under-secretary to the PRC's Secretary of

26  State.

27      55. Steve Chen had founded China Unicom, brought it to a successful IPO in the

28  United States, and would use the experience he had acquired doing so in bringing USFIA

1   to an even more successful IPO.

2       56.    Liu was impressed with Chen's presentation and, a few days later, decided

3   to invest.  The most important factor in his decision to invest was Chen's assertion that

4   the United States government had endorsed UCCA, and by extension, USFIA.

5       57.    Liu personally made two $5,000 investments in USFIA; his wife and

6   daughter each invested an additional $10,000; and several family members invested as

7   well.  In total, his family invested $40,000 in principal and $22,000 in credits received for

8   referring other investors.  These investments were made in cash, by checks made payable

9   to USFIA, and with credit cards.  The checks were provided, in person, to CoCo Xu, a

10  USFIA employee, at USFIA's Arcadia offices.

11      58.    Investors in USFIA received commissions or bonuses on the amounts

12  invested by persons they referred to USFIA, and on the amounts invested by persons

13  whom their referrals referred to USFIA.  Those referral bonuses were paid from the

14  amount contributed by the new investor.  Liu received several such referral bonuses, paid

15  with a check drawn on a USFIA bank account that he picked up at the USFIA office.

16      59.    The password-protected portion of the USFIA website had a chart of unit

17  prices and provided access to investor account balances.  At one time Liu's personal

18  account was reported to be worth more than $250,000.

19      60.    Liu's principal motivation for investing was to acquire pre-IPO stock in the

20  form of units, which he anticipated would increase greatly in value when USFIA went

21  public.  Chen and others at USFIA had represented that upon the IPO, each unit in

22  USFIA would be converted into a share of USFIA common stock.  Liu considered the

23  amber to be a bonus for investing rather than a primary reason for doing so, and he

24  suspects that most investors felt the same way.  But in early to mid-2014, USFIA began

25  to describe its offering as the purchase of amber with a "gifting" of units.  And in August

26  or September 2014, USFIA began calling the units "Gemcoins" and began describing its

27  offering as the purchase of Gemcoins with a "gifting" of amber.

28      61.    When Liu made his initial purchase of units, he was told that he could sell or

13

"auction" them, for cash, on the USFIA website, within 60 days.  But when he tried to do so, no sale occurred.  He complained to USFIA and was provided multiple explanations for the delay and multiple dates by which the sale of units and withdrawal of the corresponding sales proceeds would commence, but all of those dates came and went and he has never been able to do so.  He currently has 1.5 million units but is unable to sell or convert into cash any of them.

62.     The degree of security around USFIA in general and Steve Chen in particular is alarming.  Visitors to USFIA's offices in Arcadia must pass through a metal detector and/or be patted down by security guards.  Steve Chen is almost always accompanied by armed security guards.  The atmosphere there is intimidating, and not conducive to questioning USFIA's use of investor monies.

### Jun "Jason" Ning

63.     On August 20, 2015, I, along with members of the FBI and the IRS, jointly interviewed Jun "Jason" Ning, with the assistance of a Mandarin interpreter, at the FBI offices in West Covina.  Mr. Ning, a 54-year old male residing in Rowland Heights, California, made the following statements:

64.     In September 2013, a friend showed him an advertisement for USFIA in the World Journal, a Chinese-language newspaper, and asked Ning whether he thought it would be a good idea to invest in USFIA.  The newspaper ad did not provide sufficient information to decide, so Ning made several trips to USFIA's offices in Arcadia, where he attended several presentations to potential investors and also met individually with Coco Ke Xu, Star Wu and/or Yan Chen, Steve Chen's brother.

65.     Liu remained unconvinced about the merits of investing in USFIA so he returned again to meet directly with Steve Chen.  During this discussion, Chen made the following representations:

- USFIA owns an amber mine in the Dominican Republic;
- USFIA is a subsidiary of U.S. China Consultation Association (UCCA), which is a joint venture between private entities and the U.S. and Chinese

governments;

- USFIA's mining profits directly benefit the families of President Obama and the People's Republic of China's president and premier;

- USFIA vice-president Leonard Johnson is related to President Obama;

- Steve Chen was formerly (a) the Chinese Secretary of State and (b) the CEO of China Unicom;

- Steve Chen had $50 billion in total assets; and

- Steve Chen was a major player in China's jade market, and China's jade market had grown 230 times since Chen took a major interest in it.

66.    Steve Chen introduced Ning to Jian Jun "Solomon" Yang, whom he identified as being involved in UCCA and USFIA.  It is Ning's understanding and belief that Solomon Yang is the son of Baibing Yang, who was a powerful and influential member of the Peoples' Republic of China's military.  It is also his understanding and belief that Solomon Yang is extremely wealthy.  The involvement of Solomon Yang provided a great deal of credibility to USFIA and the representations that Steve Chen made about it.

67.    Steve Chen told Ning that eight years after first arriving in the United States he took China Unicom public.  Chen told Ning that as a result of taking China Unicom public, he knew all of the major players on Wall Street, and that he would use his experience and his contacts to take USFIA public sometime in 2014.

68.    Ning told Chen that he had experience and training in direct marketing.  Chen asked Ning to work for him, and offered him a 5% commission on the amount that Ning raised from investors in USFIA.  Chen told Ning that he should be able to raise $200 million, and thus earn $10 million in commissions.  As inducement, Chen gave Ning a total of $10,000 of pre-IPO units in USFIA without requiring Ning to invest any of his own money.  Chen told Ning that the cost of the units would be deemed satisfied by the amounts invested by those whom Ning recruited.

69.    Ning also invested about $10,000 of his own money when he decided to join

1  USFIA in 2013.  He did so by providing two deposits of cash to Coco Ke Xu.  But Ning

2  had these amounts credited to the accounts of people below him in his multilevel

3  marketing pyramid, rather than directly to Ning's account, in order to obtain the referral

4  bonuses that would entitle Ning to additional pre-IPO units in USFIA

5       70.    Ning disseminated the information that Steve Chen had provided to him to

6  potential investors whom Ning recruited for USFIA.  The points Ning emphasized about

7  USFIA, and which Ning thinks had the greatest impact on investors, were that it was

8  going to go public in 2014 and that Chen had $50 billion in assets backing it.

9       71.    The USFIA offices in Arcadia are extravagant and luxurious.  There is a

10 restaurant inside and plaques on the walls bearing Chinese scriptures written by the

11 Chinese president.  Ning brought potential investors there to see the lavish

12 accommodations and to attend presentations at which Steve Chen spoke.  He was a very

13 convincing speaker and often persuaded those whom Ning brought to invest.

14      72.    Investors in USFIA received units in USFIA.  These units would be

15 convertible to USFIA common stock, on a 1:1 basis, when USFIA went public.  Chen

16 told Ning that when USFIA went public, its common stock would be worth at least $20

17 per share.  The units were identified as "points" in the investor accounts maintained by

18 USFIA on its computer system.

19      73.    Investors were also provided with amber, the amount of which varied with

20 the amount invested.  Several investors told Ning that they later determined that the

21 amber that USFIA had provided was worth a fraction of the amount represented.  But the

22 promise of amber was never really the reason for investing.  Initially, it was to acquire

23 pre-IPO units in USFIA; later it was to acquire Gemcoins.

24      74.    Most of the investors Ning recruited purchased their units in cash.  Chen told

25 Ning that he preferred cash.

26      75.    In December 2013, USFIA presented Ning with a new 2014 Mercedes S550,

27 as a reward for his outstanding contribution in bringing investors to the company, in a

28 presentation made to an audience of investors and reporters.  Chen urged Ning to tell

80.    In July 2014, Chen announced that the U.S. government had deemed USFIA's units to be illegal, and that the IPO could not proceed as planned.  In September 2014, USFIA converted investor "points", which had represented pre-IPO units in USFIA, into "points" in Gemcoin.  Chen claimed that Gemcoin was an electronic currency equivalent to that offered by Bitcoin, but that they were backed by his and USFIA's considerable assets.  Chen told USFIA investors that the U.S. government had purchased 70% of the Gemcoins in circulation and that the remaining 30% belonged to him.

81.    When USFIA converted units to Gemcoins, Ning began warning investors about USFIA.  Investors whom Ning warned began demanding the return of their money.  USFIA told several of them that they could only receive 40% of their investment amount because the units had never publicly traded.

82.    Chen terminated Ning's units shortly thereafter.

Dong-Jun "Andy" Liu and Li "Lili" Li

83.    On September 17, 2015, I, along with members of the FBI and the IRS, jointly interviewed Dong-Jun "Andy" Liu and Li "Lili" Li, with the assistance of a Mandarin interpreter, at the FBI offices in West Covina.  Mr. Liu, a 52-year old male and Ms. Li, a 33-year old female, residing in Monterey Park, California, made the following statements:

84.    In September or October 2013, Liu and Li attended a party at the USFIA office in Arcadia because circus performers they knew were performing there.  Liu was given two brochures – one about USFIA and the other about UCCA.  The UCCA brochure contained a picture of John Wuo, whom Liu recognized as a member of the Arcadia City Council.  Wuo was at the party and Liu spoke with him.  Wuo told Liu that Steve Chen was a prominent businessman and that USFIA was involved in various business ventures.  When the performance was over, about 20 people were led to a conference room where Jason Ning, Kevin Hsiao, Alicia Xie, Coco Ke Xu and Steve Chen made a presentation about USFIA.  Even while others spoke on behalf of USFIA,

potential investors that the car demonstrated how well USFIA was doing.  Ning later discovered that the car had been leased, and that while USFIA had made a $30,000 down payment on it, Ning was to assume the lease payments of $1,600 per month.

76.     Chen initially promised that USFIA would go public in April 2014.  In April 2014, however, Chen stated that USFIA's computer had been hacked and that the IPO would be delayed until July 2014.

77.     At about this time, Ning expressed his doubts about the legitimacy of USFIA to Chen, and Chen offered Ning $10,000 per month to keep quiet about its problems.  Ning subsequently went to Chen's office to discuss withdrawing his account balance.  Baoping "John" Zhang, a Chen bodyguard, was also at that meeting.  At one point Zhang pointed a gun at Ning's head and told Ning that Zhang could have him killed in either the U.S. or China.  Chen did not refund Ning's money.

78.     In 2014, Ning was one of 22 people who traveled to the Dominican Republic to visit USFIA's amber mines.  Steve Chen, his brother Yan Chen, and Wei Wen ("Wayne") Zhao, whom Ning believes is also related to Steve Chen, led Ning and 18 other USFIA investors.  Zhao gave each investor an additional piece of luggage to take from Los Angeles to the Dominican Republic.  Each piece of luggage contained low-quality amber which, Zhao told Ning, USFIA had purchased in Mexico and was bringing to the Dominican Republic for processing, so that it could be resold in the United States as higher-quality amber "originating" in the Dominican Republic.

79.     The trip to the Dominican Republic lasted three days and two nights.  During that time they visited a small factory that produced amber.  They also visited a mine that was a 60-foot deep hole.  Only one person could go down the mine at a time.  A worker was lowered into the mine with a rope and emerged with a bag of polished blue amber.  Yan Chen said that the mine produced two bags of blue amber per day.  Steve Chen told them that he had purchased the mine 14 years ago for $150 million, and that USFIA had other mines in the Dominican Republic but that they were too difficult to visit.

1    Chen was present.

2        85.    Ning stated that Steve Chen had been the secretary to a high-ranking

3    government official in the Peoples' Republic of China, was the founder of China

4    Unicom, and was now the owner of USFIA, which owned mining rights in the

5    Dominican Republic and held about $50 billion in global assets.

6        86.    Hsiao described the investment offered by USFIA as offering two distinct

7    ways to make money:  One was to purchase equity shares in USFIA in the form of

8    "units", which would increase in number exponentially every two months or so.  For

9    example, according to Hsiao, a $10,000 investment entitled the investor to 10,000 units,

10   which two months later would become 100,000 units, and then would double every two

11   months after that.  After a 60-day waiting period, the investor could sell 10% of his initial

12   investment back to USFIA every day.  The unit price was based on the global sales of

13   gemstones.  The second way to make money was to receive an 8% monthly bonus after

14   the 60-day waiting period had expired.  The bonus was payable in cash, which investors

15   could pick up in the form of a check at USFIA's Arcadia office.

16       87.    Coco Ke Xu advised that investors would receive amber equal in value to

17   30% of their investment principal.  In addition, for a limited time USFIA was offering

18   new investors an Ipad mini.  But there were only 500 slots available for new investors

19   investing $10,000, and those slots were quickly being filled.  Xu described Chen as

20   having a solid business background and said that people who had invested in Amkey with

21   Chen had made a lot of money.

22       88.    Alicia Xie described how to recruit new investors.

23       89.    Steve Chen said that he had been operating Amkey for the past seven years

24   and that Amkey would soon issue publicly-traded stock.  Chen described how he had

25   taken China Unicom to its initial public offering.  Chen said USFIA owned the rights to

26   75% of the amber mines in the Dominican Republic, including exclusive rights to certain

27   gemstones such as blue amber.  He stated that USFIA's mining rights were for 100 years

28   and that they were part of USFIA's $50 billion in global assets.  Chen said that

individuals who invested $10,000 in USFIA now would become millionaires when USFIA held its initial public offering in six to twelve months.

90.   Liu and Li visited the USFIA office frequently over the next two weeks before committing to investing. Arcadia City Council member John Wuo was there every time, which seemed to Liu and Li a demonstration of the company's stability. On one of those visits, Steve Chen told Liu that USFIA vice-president Leonard Johnson was a member of Barack Obama's family.

91.   Liu and Li invested in USFIA in October or November 2013. For each of them, the most important reason for investing was the opportunity to own stock in a company that would soon go public. Liu and Li invested about $13,000 and $11,000 respectively, via their credit cards. When Liu received his monthly credit card statement several weeks later, he noted that the receipt indicated that his monies had gone to Amkey instead of USFIA. This surprised Liu, who asked Xe about it. Xe told him that it did not matter because both USFIA and Amkey were together.

92.   After investing, Liu and Li received the amber they had been promised as part of their investment. Liu had the amber that USFIA had told him was worth $26,000 independently appraised, and was told that it was worth less than $100.

93.   Every two months, the number of units in Liu and Li's online accounts increased tenfold, as did the total value of the account holdings, which were denominated in US dollars. But even 60 days after investing, Liu was unable to sell or otherwise convert into cash any of his unit holdings.

94.   Liu recruited an investor who invested $10,000 and received a $1000 bonus for doing so, which he picked up at the USFIA office.

95.   In April 2014, Liu was told that persons associated with USFIA had been arrested in the Peoples' Republic of China, and Liu attempted to withdraw his money from USFIA, without success.

96.   In September 2014, Liu attended a USFIA conference at which Chen announced that USFIA units had been converted into Gemcoins. By that point, Liu had

about 800,000 units in USFIA, which became 800,000 Gemcoins. Chen said that the conversion was necessitated by a U.S. Government policy change that would delay USFIA's IPO by about two years. Chen reassured attendees that he was still working on the IPO, and that when USFIA went public investors could use their Gemcoins to purchase USFIA stock. In the meantime, Chen told conference attendees that they would be able to trade Gemcoins on USFIA's online trading platform in November.

97. Chen also told conference attendees that if they did not want to have their units converted into Gemcoins, they could receive a buyout for 20 to 30% of the amount they had invested. In addition, they would have to return all of the amber that they had received. At that point an investor challenged Chen on the difference between the price at which USFIA valued its amber and the price at which it had been independently appraised, and Chen responded that the amber was just a gift, and if the investor did not like the amber, he could dispose of it.

98. In November and December 2014, Liu made two successful attempts to sell Gemcoins, realizing sales proceeds of less than $1,000 total, which he was paid via checks that he picked up at USFIA's office, and many unsuccessful attempts to sell them. USFIA limited Gemcoin sales to 5% of the investor's original investment amount, and mandated that 20% of the Gemcoin sales proceeds be used to purchase more Gemcoins and 5% of the sales proceeds be paid as a transaction fee. USFIA set the Gemcoin price on its website.

99. Liu and Li received $30,000 to $40,000 in commissions for referring new investors to USFIA. Attached hereto as Exhibit 39 are true and correct copies of three checks drawn on USFIA's account at Bank of America, made payable to Liu for commission payments.

100. Attached hereto as Exhibit 40 is a true and correct copy of a document provided by USFIA to Liu titled "Compensation Program." It describes in detail the extensive bonus and award system with which USFIA encouraged investors to recruit additional investors:

Jackson's behalf.  Although the investment was intended for USFIA, the Visa receipt indicates that the proceeds went to Amauction, Inc. instead.

102.   Liu also received a $26,250 bonus for referring Jun Wu, a Peoples' Republic of China citizen who invested $300,000 with USFIA for the purpose of obtaining an L1 US immigration visa followed by EB-5 immigration.  A true and correct copy of the bonus check is attached hereto as Exhibit 42.  It is Liu's understanding and belief that no US visa or EB-5 immigration was granted to Wu and that Wu remains in China.

103.   Since May 2015, Liu has been receiving anonymous phone calls in which the caller threatens dire physical harm to Liu if he continues to speak disparagingly about USFIA.

George Mo

104.   On September 17, 2015, I, along with members of the FBI and the IRS, jointly interviewed George Mo, with the assistance of a Mandarin interpreter, at the FBI offices in West Covina.  Mo, a 71-year old male residing in West Covina, made the following statements:

105.   On January 20, 2014 he accompanied his friend Michael Liu to the USFIA office in Arcadia.  Liu made a presentation to Mo and other prospective investors about USFIA.  He was told that USFIA owned valuable mining interests in the Dominican Republic.  On Liu's advice, Mo wrote a check for $10,000 payable to USFIA.  Attached hereto as Exhibit 43 is a true and correct copy of that check, evidencing its deposit in USFIA account no. x0213.

106.   On January 22, 2014, Mo returned to USFIA to pick up the amber he was due for investing.  At that time, he was given a receipt, a true and correct copy of which is attached hereto as Exhibit 44.  The receipt identifies Mo and his account no. 113581, recites the fact that he invested $10,000, contains the entry "3000 coco", and in the same box contains Chinese characters which, Mo said, translate as "give amber away for free."

107.   Liu recently gave Mo a print-out of Mo's account status at USFIA as of July 13, 2015.  It bears Mo's account no. 113581 and indicates that his original $10,000

- It indicates that investors could purchase by Package Type A ($1,000), B ($2,000), C ($5,000), D ($10,000) and E ($30,000);

- Depending on the Package Type purchased by a downline investor, the recommending investor would receive a "Recommendation Reward." For example, according to the "Compensation Program", a downline purchase of the D package ($10,000) would entitle the recommending investor to a 10% "Recommendation Reward" ($1,000);

- Investors could also receive a Binary Reward calculated based on sales of an investor's downline investors, with the bonus rate and maximum daily bonus amount varying based on the package purchased when joining. For example, purchasers of the D package ($10,000) would receive a 12% Binary Reward with a $10,000 Daily Binary Reward limit;

- Investors could also receive a Leaders Reward calculated on one's first upline and first through third downline binary rewards;

- Investors could also receive a Global Reward, in the form of a coupon or unit, one time or multiple times;

- The Compensation Package also represents to investors that, as managers, they would receive minimum monthly income. For example, if an investor managed two teams, each generating $300,000, that investor would receive a minimum monthly income of $20,000; if an investor managed six teams each generating $500,000, that investor would receive a minimum monthly income of $1.5 million;

- Other potential rewards included travel, a BMW or a Mercedes, and a house on the Quail Ranch Golf Course.

101. One of Liu's referrals was Timothy Jackson, who invested $1,000. Attached hereto as Exhibit 41 is a true and correct copy of Jackson's Membership Application Form and USFIA-issued receipts for his investment, as well as the Visa credit card receipt generated by the investment transaction, which Anthony Norris made on

1   investment made on January 20, 2014 then constituted 800,000 Gemcoins with a value of

2   $249,920.  A true and correct copy of the print-out is attached hereto as Exhibit 45.

3   **D.   Bank Records**

4   108.   Attached hereto as Exhibit 46 is a true and correct copy of a spreadsheet I

5   created listing the various accounts controlled by Steve Chen for which the FBI provided

6   me with records, and the time span which those records cover.

7   109.   After receiving the bank records from the FBI, I reviewed them and entered

8   the pertinent data contained therein in individualized Excel spreadsheets.  After entering

9   the bank records data in chronological order, I created for each account a second

10  spreadsheet in which I sorted the various deposits and debits by the source of deposit and

11  recipient of debit.  This allowed me to use the "Sum" feature in the Excel program to

12  aggregate the sub-totals involving a particular depositor or recipient or type of transaction

13  in each account for which I was provided bank records.

14  110.   Attached hereto as Exhibit 47 is a true and correct copy of the spreadsheet I

15  created for USFIA Account No. x0123 at Bank of America (the "Primary USFIA

16  Account") from bank records provided by the FBI, by sorting the transactions by

17  "Source" (i.e., cash provider) and "Beneficiary" (i.e., cash recipient), and in cases where

18  the number of transactions or the amounts involved were significant, aggregating the

19  transaction amounts.  The spreadsheet encompasses all activity in the account from its

20  opening in July 2011 through May 2015.

21  111.   I have determined that a total of $32,139,405 was credited to the Primary

22  USFIA Account, and $28,405,578 debited therefrom during that time period, leaving a

23  balance of $3,732,999.

24  112.   Of the credits to the Primary USFIA Account:

25  •   $18,916,301, or roughly 60%, came in the form of wires, which are

26  aggregated by the monthly amount and denoted in the spreadsheet as

27  "Various Wires."  The amounts were aggregated because the wire activity

28  was too voluminous to itemize.  For example, in July 2014, a month chosen

at random, there were 195 wires.  Virtually all of the wire transfers – which are itemized on the monthly account statements -- were made by individuals with foreign, usually Asian, names, from foreign, usually Asian, banks.  In addition, most of the wires were in denominations of the investment amounts promoted by USFIA.  For example, in March 2014, another month chosen at random, there were 73 wires of or about $1,000, 53 wires of or about $2,000, 19 wires of or about $5,000, 18 wires of or about $10,000, and 3 wires of or about $30,000.  In addition, there were numerous wires in multiples of $5000, $10,000 and $30,000 that could denote the purchase of multiple investment packages.  Virtually every wire was a multiple of $1000 or $2000.

- $5,283,268, or roughly 16%, came from corporate entities controlled by Chen – specifically, Ahome Real Estate ($1,000,000), Amauction ($3,050,000) and Amkey ($1,233,267.82).

- $936,408, or roughly 3%, came in the form of cash deposits ($681,034) and money orders ($255,374).

- $935,636, or roughly 3%, was credited to the account in transactions identified on the monthly statements as "Merchant Service", which are believed to be credit card transactions.

- The relatively small amount of $340,865, or roughly 1%, has not been identified because the underlying records either were not produced or are illegible.

- The remaining $5,726,927, or roughly 17%, came from the various remaining persons and entities identified in the spreadsheet.  The majority of these transactions were via check, not wire, and the majority of the checks were drawn on US bank accounts.  Many contain notations – such as "units" or "amber" – that support the conclusion that they are investor monies, not actual revenues.

- Indeed, I did not see any credits to the USFIA Primary Account that I believe represent revenues earned from any legitimate business or investment endeavor.

113.  Of the debits to the Primary USFIA Account:

- $6,482,263, or roughly 23%, went to USFIA account no. x7578 at Bank of America (the "Secondary USFIA Account"); its disbursement is discussed below.

- $4,567,805, or roughly 16%, went to corporate entities controlled by Chen – specifically, Ahome ($300,000), Amauction ($1,255,500), Amkey ($3,250), Apollo Real Estate Investment LLC ($10,000), Apollo REIT I, LLC ($134,932), Apollo REIT II ($2,359,177), and Quail Ranch Golf Course, LLC ($504,946).

- $1,426,569 is denoted on the spreadsheet as "Misc. Debits", and refers to payments to Intuit, EDD and the IRS – i.e., for the maintenance of the fraudulent conduct.

- $2,175,819 is denoted on the spreadsheet as "Various Checks < $5000", and refers to the monthly aggregates of the hundreds of checks issued each month in those smaller amounts.

- $1,529,310 was spent on gems or similar fashion items – specifically $989,310 to New Sparkle Stone & Beads (identified on its website as a purveyor of gemstones), $105,000 to Galaxy Gems, $150,000 to New Look Fashion Management (identified on its website as a high-end fashion showroom), $105,000 to Oceanview Mines (identified on its website as a place to dig for one's own gems), and $180,000 to the luxury shopping center South Coast Plaza.

- 1,012,609 went to the purchase of automobiles – specifically, Fusion Luxury Motors ($243,999), Jordan Ford Ltd. ($118,615), Pacific BMW ($56,966), Penske Mercedes Benz ($428,529), Symes Cadillac ($114,500), and Nick

Alexander Imports ($50,000).

- 735,027 left the account as checks payable to cash ($475,027) or cash withdrawals ($260,000).

- $336,286 was paid to Li Zhao (also identified on spreadsheet as Zhao Li), who is believed to be Chen's wife and who is known to share a personal bank account with him;

- 1,168,730 was paid to individuals whom, through my review of the bank records, I know have been paid for promotional services rendered to a variety of Chen-owned entities – specifically, Alicia Xie Geiser ($282,280), Coco Ke Xu ($152,479), John Zhang ($20,838), John Wuo ($100,000), Johnson & Associates ($80,000) and its principal Leonard Johnson ($6,000), Kim Holland ($96,500), Ming Qing "Kevin" Xiao also identified on spreadsheet as Mingqiang Xiao ($122,759), Ren Ni ($279,178), and Wei Wen Zhao ($28,696).

- $1,956,873 was spent on what appears to be USFIA's lavish entertainment and travel efforts to recruit new investors – specifically, to City Smart Tourism ($51,500), Golden World Travel ($89,750), High Way Travel Tourism ($37,184), Hilton Hotels ($83,403), Hyatt Regency ($49,911), Luck & Buddy Tours LLC ($138,266), Newport Bay Cruises ($24,120), Pacific Palms Resort ($538,665), Philip Entertainment Productions ($106,709), Premier Ballroom ($19,608), San Gabriel Hilton ($5,000), Wan Ho Restaurant ($116,941), and WF Travel Services ($695,816).

- The remaining $6,277,045, net of Return Item Chargebacks, was distributed to the various persons and entities identified on the spreadsheet, whose exact role is unknown at present.  In most cases, however, reasonable inferences can be drawn from the name alone that the payments do not represent genuine investment activity commensurate with USFIA's claims to be in the business of amber mining, information technology, biotechnology or the

aeronautical industry.

114.    Attached hereto as Exhibit 48 is a true and correct copy of a similar spreadsheet I created for USFIA account no. x7578 at Bank of America (the "Secondary Account") from bank records provided by the FBI, by entering the transactions recorded therein in and sorting by Source and Beneficiary.  The spreadsheet encompasses all of the activity in the account from its opening in June 2014 through November 2014.

115.    Based thereon, I determined that $5,093,395 was credited to the Secondary Account during that time period:

- $3,332, 263 of which (about 65%) came from the Primary Account;
- $1.6 million of which (about 32%) came from other Chen-owned entities – specifically, Amauction ($900,000), Ahome ($600,000) and Amkey ($100,000); and
- The remainder of which consisted of Returned Checks.

116.    During the same time period, all but $462,293 was disbursed in accordance with the details contained in the spreadsheet:

- 1,357 checks totaling $1,099,754 were disbursed, in average amounts of $754 each, to various recipients, and are represented on the spreadsheet as "Miscellaneous".  I have reviewed those checks and noted that the overwhelming majority of them are made payable to individuals, and that a significant portion of those individuals reside overseas.  In addition, a significant number of these checks are annotated to indicate that they represent commissions.  I conclude that the Secondary Account was primarily used for the purpose of paying commissions to investors;
- Almost $940,000 was disbursed to companies with "Marketing" in their title – SML Marketing (about $290,000), Str Marketing (about $530,000), Top World Marketing (about $110,000) and Wall Street Marketing ($8,145).  In my experience, these sorts of payments usually represent commissions to particularly large bundlers of investors.

- Most of the remaining checks itemized on the spreadsheet resemble the more than 1,300 checks aggregated as "Miscellaneous"; that is, most of them are made payable to individuals, many of whom reside overseas, and a number of them are annotated as commissions.

117.   In the course of my investigation I also reviewed bank records and prepared Excel spreadsheets for the bank accounts of other entities controlled by Chen, including defendants USFIA, Amauction, Ahome, Amkey, Alliance Financial Group, US-China Consultation Association, Quail Ranch Golf Course, Alliance NGN, Aborell Mgmt I, Aborell Advisors I, Aborell REIT II, Apollo REIT I, and Apollo REIT II.  My analysis of these records yielded several findings:  One, they are controlled by Chen.  Attached hereto as Exhibits 49 through 59 are true and correct copies of account opening documents evidencing Chen's control of these accounts and of the entities holding them.  Two, they all share the same office space in Arcadia.  Three, there is extensive commingling of funds, and each entity is a debtor or a creditor of several other Chen-controlled entities.  Four, I have noted that several individuals received paychecks from several different Chen entities, suggesting that, in reality, they worked for Chen, not for any particular entity.  Five, I have noted several instances of what appears to be one Chen entity paying the bills of another Chen entity.  Six, as several investors noted, their investments in USFIA were deposited instead in the accounts of a different Chen-controlled entity – yet they apparently were credited by USFIA for their purported investment.  Seven, one of Amauction's bank accounts received about $16 million in credit card transactions, which is consistent with the manner in which many investors invested in USFIA, and most of those monies were subsequently wired to an account in the Dominican Republic, where USFIA claims to have amber holdings.  For all of these reasons, I have come to the conclusion that all of these entities are players – some in leading roles, others in the chorus – in a single fraudulent scheme orchestrated by Chen.

118.   On September 17, 2015, I was informed by my contact at the FBI that Chen had spoken with the Arcadia Police Department that day about complaints it had received

from outraged USFIA investors, and immediately after doing so, he went directly to Bank of America and attempted to wire overseas the contents of the accounts he controls for USFIA and other related entities.  I am informed that Chen attempted to wire out $7.5 million but was able only to wire out about $3.5 million before the bank imposed its own temporary freeze, and that about $4 million of investor funds remain.  This information precipitated the emergency action taken by the SEC to freeze for the benefit of defrauded investors whatever remains of their hard-earned monies.

119.   To my knowledge, no registration statements are in effect or have been filed with respect to the securities of any of these defendant entities.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 22nd day of September 2015 in Los Angeles, California.

Peter F. Del Greco

EXHIBIT 1

Corporate Records & Business Registrations: USFIA, INC. - WestlawNext          Page 1 of 1

## WestlawNext™

**Corporate Records & Business Registrations: USFIA, INC.**
135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006   *(Approx. 1 page)*

PEOPLE

STEVE CHEN

STEVE CHEN

### Corporate Records & Business Registrations

**Source Information**

| | |
|---|---|
| Information Current Through: | 09/10/2015 |
| Database Last Updated: | 09/14/2015 |
| Update Frequency: | WEEKLY |
| Current Date: | 09/22/2015 |
| Source: | CALIFORNIA SECRETARY OF STATE |

THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

**Company Information**

| | |
|---|---|
| Name: | USFIA, INC. |
| Address: | 135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006 |

**Filing Information**

| | |
|---|---|
| Identification Number: | C3251718 |
| Filing Date: | 09/02/2010 |
| Status: | ACTIVE |
| Corporation Type: | PROFIT |
| Business Type: | CORPORATION |
| Where Filed: | SECRETARY OF STATE/CORPORATIONS DIVISION 1500-11TH STREET SACRAMENTO, CA 95814 |

**Registered Agent Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006 |

**Principal Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006 |

The preceding public record data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

The public record items reported above may have been paid, terminated, vacated or released prior to today's date.

**Order Documents**

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387) for on-site manual retrieval of documents related to this or other matters. Additional charges apply.

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext. © 2015 Thomson Reuters   Privacy Statement   Accessibility   Supplier Terms   Contact Us   1-800-REF-ATTY (1-800-733-2889)
Improve WestlawNext

THOMSON REUTERS

Exhibit 1 Page 31

https://a.next.westlaw.com/Document/Ia83c70c058f511e08b05fdf15589d8e8/View/FullTe...   9/22/2015

EXHIBIT 2

Corporate Records & Business Registrations: AMAUCTION, INC. - WestlawNext          Page 1 of 1

# WestlawNext™

**Corporate Records & Business Registrations: AMAUCTION, INC.**
135 E. LIVE OAK AVENUE, STE #100 ARCADIA, CA 91006  *(Approx. 1 page)*

PEOPLE

STEVE CHEN

STEVE CHEN

### Corporate Records & Business Registrations

**Source Information**

| | |
|---|---|
| Information Current Through: | 09/10/2015 |
| Database Last Updated: | 09/14/2015 |
| Update Frequency: | WEEKLY |
| Current Date: | 09/22/2015 |
| Source: | CALIFORNIA SECRETARY OF STATE |

THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

**Company Information**

| | |
|---|---|
| Name: | AMAUCTION, INC. |
| Address: | 135 E. LIVE OAK AVENUE, STE #100 ARCADIA, CA 91006 |

**Filing Information**

| | |
|---|---|
| Identification Number: | C3442600 |
| Filing Date: | 02/13/2012 |
| Status: | ACTIVE |
| Corporation Type: | PROFIT |
| Business Type: | CORPORATION |
| Where Filed: | SECRETARY OF STATE/CORPORATIONS DIVISION 1500-11TH STREET SACRAMENTO, CA 95814 |

**Registered Agent Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E. LIVE OAK AVENUE, STE #100 ARCADIA, CA 91006 |

**Principal Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E. LIVE OAK AVENUE, STE #100 ARCADIA, CA 91006 |

The preceding public record data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.
The public record items reported above may have been paid, terminated, vacated or released prior to today's date.

**Order Documents**

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387) for on-site manual retrieval of documents related to this or other matters. Additional charges apply.

---

**End of Document**          © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext. © 2015 Thomson Reuters   Privacy Statement   Accessibility   Supplier Terms   Contact Us   1-800-REF-ATTY (1-800-733-2889)
Improve WestlawNext

THOMSON REUTERS

EXHIBIT 3

Corporate Records & Business Registrations: AHOME REAL ESTATE LLC - WestlawN... Page 1 of 1

## WestlawNext™

**Corporate Records & Business Registrations: AHOME REAL ESTATE LLC**
135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006   *(Approx. 1 page)*

PEOPLE

STEVE CHEN

STEVE CHEN

### Corporate Records & Business Registrations

**Source Information**

| | |
|---|---|
| Information Current Through: | 09/10/2015 |
| Database Last Updated: | 09/14/2015 |
| Update Frequency: | WEEKLY |
| Current Date: | 09/22/2015 |
| Source: | CALIFORNIA SECRETARY OF STATE |

THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

**Company Information**

| | |
|---|---|
| Name: | AHOME REAL ESTATE LLC |
| Address: | 135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006 |

**Filing Information**

| | |
|---|---|
| LLC Jurisdiction: | CALIFORNIA |
| LLC Management: | ONE MANAGER |
| LLC Business Type: | REAL ESTATE INVESTMENT, GEMSTONE INVESTM |
| Identification Number: | 201013710043 |
| Filing Date: | 05/12/2010 |
| State of Incorporation: | CALIFORNIA |
| Status: | ACTIVE |
| Business Type: | LIMITED LIABILITY COMPANY |
| Where Filed: | SECRETARY OF STATE/CORPORATIONS DIVISION 1500-11TH STREET SACRAMENTO, CA 95814 |

**Registered Agent Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006 |

**Principal Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006 |

The preceding public record data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

The public record items reported above may have been paid, terminated, vacated or released prior to today's date.

**Order Documents**

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387) for on-site manual retrieval of documents related to this or other matters. Additional charges apply.

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext. © 2015 Thomson Reuters    Privacy Statement    Accessibility    Supplier Terms    Contact Us    1-800-REF-ATTY (1-800-733-2889)
Improve WestlawNext

THOMSON REUTERS

EXHIBIT 4

Corporate Records & Business Registrations: AMKEY, INC. - WestlawNext.            Page 1 of 1

## WestlawNext™

**Corporate Records & Business Registrations: AMKEY, INC.**
135 E. LIVE OAK AVENUE, STE #100 ARCADIA, CA 91006   *(Approx. 1 page)*

PEOPLE

STEVE CHEN

STEVE CHEN

### Corporate Records & Business Registrations

#### Source Information

| | |
|---|---|
| Information Current Through: | 09/10/2015 |
| Database Last Updated: | 09/14/2015 |
| Update Frequency: | WEEKLY |
| Current Date: | 09/22/2015 |
| Source: | CALIFORNIA SECRETARY OF STATE |

THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

#### Company Information

| | |
|---|---|
| Name: | AMKEY, INC. |
| Address: | 135 E. LIVE OAK AVENUE, STE #100 ARCADIA, CA 91006 |

#### Filing Information

| | |
|---|---|
| Identification Number: | C2516794 |
| Filing Date: | 06/03/2003 |
| Status: | ACTIVE |
| Corporation Type: | PROFIT |
| Business Type: | CORPORATION |
| Where Filed: | SECRETARY OF STATE/CORPORATIONS DIVISION 1500-11TH STREET SACRAMENTO, CA 95814 |

#### Registered Agent Information

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E. LIVE OAK AVENUE, STE #100 ARCADIA, CA 91006 |

#### Principal Information

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E. LIVE OAK AVENUE, STE #100 ARCADIA, CA 91006 |

#### Amendment Information

| | |
|---|---|
| Amendments: | 03/01/2005 CERTIFICATE OF AMENDMENT |

The preceding public record data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

The public record items reported above may have been paid, terminated, vacated or released prior to today's date.

#### Order Documents

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387) for on-site manual retrieval of documents related to this or other matters. Additional charges apply.

---

End of Document                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext. © 2015 Thomson Reuters   Privacy Statement   Accessibility   Supplier Terms   Contact Us   1-800-REF-ATTY (1-800-733-2889)
Improve WestlawNext

THOMSON REUTERS

EXHIBIT 5

2011-Jun-30 12:21 PM BANK OF AMERICA 6263051776                    4/31

$\frac{1}{2}$

**Bank of America**　　　Certified Copy of Corporate Resolutions – Opening
BANK OF AMERICA, N.A. (THE "BANK")　and Maintaining Deposit Accounts and Services

Bank Number ___318___

Account Number ▮▮▮▮▮0086          Account Number _____

Name of Corporation    **ALLIANCE FINANCIAL GROUP, INC**

I, the undersigned, hereby certify to    Bank of America

that I am the Secretary/Assistant Secretary and the designated keeper of the records and minutes of    ALLIANCE FINANCIAL GROUP, INC

_____, duly organized and existing under the laws of the

State of    California                    (the "Corporation"); that the following is a true copy of resolutions duly adopted by the Board of

Directors of said Corporation at a meeting duly held on the    23    day of    JUNE, 2011    , at which a quorum was present and acted

throughout or adopted by the unanimous written consent of the Board of Directors; and that such resolutions are in full force and effect and have not been amended
or rescinded.

1.   Resolved, that    Bank of America                                    (the "Bank") is hereby designated
as a depository of this Corporation and that deposit accounts or time deposits (CDs) be opened and maintained in the name of this Corporation with Bank in
accordance with the terms of the Bank's Deposit Agreement and Disclosures and the applicable rules and regulations for such accounts; that any one of the
following officers or employees of the Corporation:

| STEVE CHEN | PRESIDENT |
|---|---|
| Name | Title |
| | |
| Name | Title |
| | |
| Name | Title |

is hereby authorized, on behalf of this Corporation and in its name, to execute and to sign any application, deposit agreement, signature card and any other
documentation required by Bank to open said accounts; to sign checks, drafts, notes, bills of exchange, acceptances, time deposits (CDs) or other orders for payment
of money; to endorse checks, drafts, notes, bills, time deposits (CDs) or other instruments owned or held by this Corporation for deposit with Bank or for collection
or discount by Bank; to accept drafts, acceptances, and other instruments payable at Bank; to place orders with Bank for the purchase and sale of foreign currencies
on behalf of this Corporation; to execute and deliver an electronic fund transfer agreement and to make transfers or withdrawals by electronic transfers on behalf of
the Corporation; to obtain an access device (including but not limited to a card, code, or other means of access to the Corporation's account) that may be used for
the purpose of initiating electronic fund transfers (Corporation agrees and acknowledges that neither the Electronic Funds Transfer Act (15 U.S.C. 1693 et seq.) nor
Regulation E (12 C.F.R. Part 205) are applicable to any such access device); to establish and maintain a night deposit relationship; to execute and deliver any wire
transfer agreement and to request, or to appoint or delegate from time to time such persons who may request, wires of funds; to enter into any agreements with the
Bank for the provision of Bank of various Treasury Management services to this Corporation as such officer or employee may determine, in his or her sole
discretion, and to sign any and all documents and take all actions required by Bank relative to such Treasury Management services or the performance of the
Corporation's obligations thereunder, and that any such Treasury Management agreement(s) shall remain in full force and effect until written notice to terminate
given in accordance with the terms of any such agreement shall have been received by Bank and that such termination shall not affect any action taken by the Bank
prior to such termination; to rent or lease a safe deposit box from Bank, to execute the rental agreement or lease, to enter the safe deposit box and to terminate the
rental agreement or lease; to into whatever other actions or enter in to whatever other agreements relating to the accounts or investment of funds in such accounts
with Bank and to execute, amend, supplement and deliver to Bank such agreements on behalf of the Corporation upon such terms and conditions as such officer or
employee may deem appropriate and to appoint and delegate, from time to time, such person(s) who may be authorized to enter into such agreements and take any
other actions pursuant to such agreements in connection with said accounts that the officer or employee deems necessary; and to waive presentment, demand,
protest, and notice of protest or dishonor of any check, note, bill, draft, or other instrument made, drawn or endorsed by this Corporation; and

2.   Further Resolved, that the Bank be and is hereby authorized to honor, receive, certify, pay or exchange for money orders or other instruments all instruments
signed in accordance with the foregoing resolutions even though such payment may create an overdraft or even though such instruments may be drawn or endorsed to the
order of any officer or employee signing the same or tendered by such officer or employee or a third party for exchange or cashing, or in payment of the individual
obligation of such officer or employee, or for deposit to such officer's or employee's personal account and Bank shall not be required or be under any obligation to
inquire as to the circumstances of the issuance or use of any instrument signed in accordance with the foregoing resolutions or the application or disposition of such
instrument or the proceeds thereof; and, further, that the Bank is authorized to honor any instructions regarding withdrawals, orders for payment or transfer of funds
whether oral, by telephone or electronic means if such withdrawal, orders or transfer are initiated by an above authorized officer or employee; and

90-53-2301NSBW 03-2010                                                          Page 1 of 2

Page 2 of 4

2011-Jun-30 12:21 PM BANK OF AMERICA 6263051776                                    5/11

2/2

Account Number ████0086                    Account Number

3.  **Further Resolved,** that the Bank be and is hereby requested, authorized and directed to honor and to treat as authorized, checks, drafts or other orders for the payment of money drawn in this Corporation's name, including those payable to the individual order of any person whose name appears thereon as signer thereof, when bearing or purporting to bear the facsimile signature of an officer or employee authorized in the foregoing resolutions and Bank shall be entitled to honor, to treat as authorized, and to charge this Corporation for such checks, drafts, or other orders regardless of by whom or by what means the actual or purported facsimile signature thereon may have been affixed thereto, if such signature resembles the facsimile specimen duly certified to or filed with the Bank by the Secretary or Assistant Secretary or other officer of this Corporation or if such facsimile signature resembles any facsimile signature previously affixed to any check, draft, or other order drawn in the Corporation's name, which check, draft, or other order was accepted and paid without timely objection by the Corporation, thereby ratifying the use of such facsimile signature; and the Corporation hereby indemnifies and holds the Bank harmless against any and all loss, cost, damage or expense suffered or incurred by the Bank arising out of or in any way related to the misuse or unlawful or unauthorized use by a person of such facsimile signature; and

4.  **Further Resolved,** that endorsements for deposit may be evidenced by the name of the Corporation being written or stamped on the check or other instrument deposited, without designation of the party making the endorsement, and Bank is authorized to supply any endorsement on any instrument tendered for deposit or collection; and

5.  **Further Resolved,** that the Secretary or Assistant Secretary of this Corporation shall certify to Bank names and signatures of persons authorized to act on behalf of this Corporation under the foregoing resolutions and shall from time to time hereafter, as changes in the identity of said officers and employees are made, immediately report, furnish and certify such changes to Bank and shall submit to Bank a new account signature card reflecting such change(s) in order to make such changes effective and Bank shall be fully protected in relying on such certifications and shall be indemnified and saved harmless from any claims, demands, expenses, losses, or damages resulting from, or growing out of, honoring the signature of any officer or employee so certified, or refusing to honor any signature not so certified; and

6.  **Further Resolved,** the foregoing resolutions shall remain in full force and effect and the authority herein given to all of said persons shall remain irrevocable as far as Bank is concerned until three (3) business days after Bank is notified in writing of the revocation of such authority and that receipt of such notice shall not affect any action taken by said Bank prior thereto; and

7.  **Further Resolved,** that all transactions by any officer or employee of this Corporation on its behalf and in its name with Bank prior to the delivery to Bank of a certified copy of the foregoing resolutions are, in all respects, hereby ratified, confirmed, approved and adopted; and

8.  **Further Resolved,** that the Secretary or Assistant Secretary be and hereby is, authorized and directed to certify these resolutions to said Bank and that the provisions hereof are in conformity with the Charter or Articles of Incorporation and Bylaws of this Corporation and that the Secretary or Assistant Secretary be, and hereby is, authorized and directed to certify, from time to time hereafter, the names of the holder of the above authorized titles and their signatures on any signature card or other documentation required by said Bank.

In Witness Whereof, I have hereunto subscribed my name and affixed the seal of this Corporation, this   23   day of   JUNE, 2011   .

Secretary/Assistant Secretary

(Corporate Seal)           No Seal

_____

**Bank Information**

Date:   06 / 23 / 2011

Banking Center Name:   NORTH ARCADIA 2424

Associate's Name:   ISMAEL MEJIA

Associate's Phone Number:   626 . 305 . 1760

90-53-2301NSBW 03-2010                                    Page 2 of 2

Page 1 of 1

**Bank of America**

☑ CA  ☐ ID  ☐ WA
Business Signature Card
with Substitute Form W-9

Account Number
████0086

Bank Number
318

Account Type: ☑ DDA  ☐ SAV  ☐ CD

Account Title
ALLIANCE FINANCIAL GROUP, INC

☐ Temporary Signature Card

Legal Designation: ☐ Individual/Sole Proprietor  ☑ Corporation  ☐ Partnership  ☐ Association  ☐ Limited Liability Company

Tax Identification Number: ████3432

By signing below, I/we acknowledge and agree that this account is and shall be governed by the terms and conditions set forth in the following documents, as amended from time to time: (1) if this account is a deposit account, the Deposit Agreement and Disclosures, the Business Schedule of Fees, and (2) if this account is a Line of Credit, the applicable Line of Credit Agreement and Disclosures. Furthermore, I/we acknowledge the receipt of these documents. By signing below, I/we acknowledge and agree that the signature(s) will serve as verification for any transactions in connection with this account, and any Line of Credit checks which I/we may sign, and as the certification (set forth below) of the taxpayer identification number to which I/we want interest reported. The Deposit Agreement includes a provision for alternative dispute resolution.

Substitute Form W-9. Certification - Under penalties of perjury, I certify that: (1) The number shown on this form is the correct taxpayer identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because: (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. citizen or other U.S. person (defined in the instructions).

Certification Instructions: You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return. (See also IRS Instructions for Form W-9.)

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

☐ Exempt (check if applicable)
☐ Nonresident Alien Status (if applicable). If all beneficial owners are considered nonresident Aliens under the United States tax law, check here and complete and sign the applicable Form(s) W-8.

| | Name (typed or printed) | Title (if applicable) | Signature | Date |
|---|---|---|---|---|
| 1 | STEVE CHEN | PRESIDENT | | 08/23/11 |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

ATM/Deposit Check Card Request
Provided that the account referenced above is eligible to receive automated teller machine cards and/or Check Cards, I as authorized by the resolution and/or court documents and/or other agreements which authorize this account) hereby request the issuance of such cards to any of the authorized signers on this account.

Signature                                         Title PRESIDENT

**Bank Information**
Customer 1
Name STEVE CHEN

| | | | | |
|---|---|---|---|---|
| CIP Information: ID Type: OADL | ID #: ████ | ID Issuer: CA / USA | Issue Date: 5/13/2010 | Expiration Date: 10/30/2014 |
| CIP Information: ID Type: VISA | ID #: 2318 | ID Issuer: BOFA VTL | Issue Date: NONE | Expiration Date: 6/16/2015 |

Customer 2
Name
CIP Information: ID Type:  ID #:  ID Issuer:  Issue Date:  Expiration Date:
CIP Information: ID Type:  ID #:  ID Issuer:  Issue Date:  Expiration Date:

Customer 3
Name
CIP Information: ID Type:  ID #:  ID Issuer:  Issue Date:  Expiration Date:
CIP Information: ID Type:  ID #:  ID Issuer:  Issue Date:  Expiration Date:

Customer 4
Name
CIP Information: ID Type:  ID #:  ID Issuer:  Issue Date:  Expiration Date:
CIP Information: ID Type:  ID #:  ID Issuer:  Issue Date:  Expiration Date:

**Review Information**
Business Entity/Sole Proprietor ship with EIN Telephone Inquiry:   062311YM1549
WARD: For Sole Proprietors with SSN and General Partners, complete the following:

| Name: | Year: | State: |
|---|---|---|
| Name: | Year: | State: |
| Name: | Year: | State: |
| Name: | Year: | State: |

90-82-2297NSSW  12-2010

7/12

2011-Jun-27 05:33 PM BANK OF AMERICA 6263051776

EXHIBIT 6

WestlawNext™

Corporate Records & Business Registrations: US-CHINA CONSULTATION ASSOCIATION LIAISON/CONSULTING...
135 E. LIVE OAK AVE ARCADIA, CA 91006   *(Approx. 1 page)*

PEOPLE

STEVE CHEN

STEVE CHEN

## Corporate Records & Business Registrations

### Source Information

| | |
|---|---|
| Information Current Through: | 09/10/2015 |
| Database Last Updated: | 09/14/2015 |
| Update Frequency: | WEEKLY |
| Current Date: | 09/22/2015 |
| Source: | CALIFORNIA SECRETARY OF STATE |

THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

### Company Information

| | |
|---|---|
| Name: | US-CHINA CONSULTATION ASSOCIATION LIAISON/CONSULTING SERVICES |
| Address: | 135 E. LIVE OAK AVE ARCADIA, CA 91006 |

### Filing Information

| | |
|---|---|
| Identification Number: | C3583020 |
| Filing Date: | 06/26/2013 |
| Status: | ACTIVE |
| Corporation Type: | PROFIT |
| Business Type: | CORPORATION |
| Where Filed: | SECRETARY OF STATE/CORPORATIONS DIVISION 1500-11TH STREET SACRAMENTO, CA 95814 |

### Registered Agent Information

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E. LIVE OAK AVE ARCADIA, CA 91006 |

### Principal Information

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E. LIVE OAK AVE ARCADIA, CA 91006 |

The preceding public record data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

The public record items reported above may have been paid, terminated, vacated or released prior to today's date.

### Order Documents

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387) for on-site manual retrieval of documents related to this or other matters. Additional charges apply.

---

**End of Document**                                      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext. © 2015 Thomson Reuters   Privacy Statement   Accessibility   Supplier Terms   Contact Us   1-800-REF-ATTY (1-800-733-2889)
Improve WestlawNext                                                                                                        THOMSON REUTERS

EXHIBIT 7

Corporate Records & Business Registrations: QUAIL RANCH GOLF COURSE LLC - ...        Page 1 of 1

WestlawNext™

Corporate Records & Business Registrations: QUAIL RANCH GOLF COURSE LLC
135 EAST LIVE OAK AVE RM 207 ARCADIA, CA 91006   *(Approx. 1 page)*

**PEOPLE**

MR STEVEN CHEN

STEVEN CHEN

YI CHUAN CHEN

### Corporate Records & Business Registrations

**Source Information**

| | |
|---|---|
| Information Current Through: | 09/10/2015 |
| Database Last Updated: | 09/14/2015 |
| Update Frequency: | WEEKLY |
| Current Date: | 09/22/2015 |
| Source: | CALIFORNIA SECRETARY OF STATE |

THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

**Company Information**

| | |
|---|---|
| Name: | QUAIL RANCH GOLF COURSE LLC |
| Address: | 135 EAST LIVE OAK AVE RM 207 ARCADIA, CA 91006 |

**Filing Information**

| | |
|---|---|
| LLC Jurisdiction: | CALIFORNIA |
| LLC Management: | ONE MANAGER |
| Identification Number: | 201233110053 |
| Filing Date: | 11/13/2012 |
| State of Incorporation: | CALIFORNIA |
| Status: | ACTIVE |
| Business Type: | LIMITED LIABILITY COMPANY |
| Where Filed: | SECRETARY OF STATE/CORPORATIONS DIVISION 1500-11TH STREET SACRAMENTO, CA 95814 |

**Registered Agent Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 EAST LIVE OAK AVE ARCADIA, CA 91006 |

The preceding public record data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

The public record items reported above may have been paid, terminated, vacated or released prior to today's date.

**Order Documents**

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387) for on-site manual retrieval of documents related to this or other matters. Additional charges apply.

---

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

---

Exhibit 7 Page 39

https://a.next.westlaw.com/Document/Ia01c48643ced11e28578f7ccc38dcbee/View/FullTe...   9/22/2015

EXHIBIT 8

Corporate Records & Business Registrations: ALLIANCE NGN, INC. - WestlawNext    Page 1 of 1

## WestlawNext

Corporate Records & Business Registrations: ALLIANCE NGN, INC.
135 E. LIVE OAK AVENUE, STE #100 ARCADIA, CA 91006   *(Approx. 1 page)*

**PEOPLE**

STEVE CHEN

STEVE CHEN

### Corporate Records & Business Registrations

**Source Information**

| | |
|---|---|
| Information Current Through: | 09/10/2015 |
| Database Last Updated: | 09/14/2015 |
| Update Frequency: | WEEKLY |
| Current Date: | 09/22/2015 |
| Source: | CALIFORNIA SECRETARY OF STATE |

THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

**Company Information**

| | |
|---|---|
| Name: | ALLIANCE NGN, INC. |
| Address: | 135 E. LIVE OAK AVENUE, STE #100 ARCADIA, CA 91006 |

**Filing Information**

| | |
|---|---|
| Identification Number: | C2501702 |
| Filing Date: | 03/17/2003 |
| State of Incorporation: | DELAWARE |
| Status: | ACTIVE |
| Corporation Type: | PROFIT |
| Business Type: | CORPORATION |
| Where Filed: | SECRETARY OF STATE/CORPORATIONS DIVISION 1500-11TH STREET SACRAMENTO, CA 95814 |

**Registered Agent Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E. LIVE OAK AVENUE, STE #100 ARCADIA, CA 91006 |

**Principal Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E. LIVE OAK AVENUE, STE #100 ARCADIA, CA 91006 |

**Amendment Information**

| | |
|---|---|
| Amendments: | 09/29/2005 SECRETARY OF STATE REVIVER 09/15/2005 SECRETARY OF STATE FORFEITURE |

The preceding public record data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

The public record items reported above may have been paid, terminated, vacated or released prior to today's date.

**Order Documents**

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387) for on-site manual retrieval of documents related to this or other matters. Additional charges apply.

---

End of Document    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext. © 2015 Thomson Reuters    Privacy Statement    Accessibility    Supplier Terms    Contact Us    1-800-REF-ATTY (1-800-733-2889)
Improve WestlawNext

THOMSON REUTERS

EXHIBIT 9

## WestlawNext™

Corporate Records & Business Registrations: ABORELL MGMT I LLC
135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006   (Approx. 1 page)

### Corporate Records & Business Registrations

**Source Information**

| | |
|---|---|
| Information Current Through: | 09/10/2015 |
| Database Last Updated: | 09/14/2015 |
| Update Frequency: | WEEKLY |
| Current Date: | 09/22/2015 |
| Source: | CALIFORNIA SECRETARY OF STATE |

THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

**Company Information**

| | |
|---|---|
| Name: | ABORELL MGMT I LLC |
| Address: | 135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006 |

**Filing Information**

| | |
|---|---|
| LLC Jurisdiction: | CALIFORNIA |
| LLC Management: | ONE MANAGER |
| LLC Business Type: | REAL ESTATE INVESTMENT |
| Identification Number: | 201114410009 |
| Filing Date: | 05/23/2011 |
| State of Incorporation: | CALIFORNIA |
| Status: | ACTIVE |
| Business Type: | LIMITED LIABILITY COMPANY |
| Where Filed: | SECRETARY OF STATE/CORPORATIONS DIVISION 1500-11TH STREET SACRAMENTO, CA 95814 |

**Registered Agent Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006 |

**Principal Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006 |

The preceding public record data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.
The public record items reported above may have been paid, terminated, vacated or released prior to today's date.

**Order Documents**

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387) for on-site manual retrieval of documents related to this or other matters. Additional charges apply.

**PEOPLE**

STEVE CHEN

STEVE CHEN

MR STEVEN CHEN

STEVEN CHEN

YI CHUAN CHEN

---

**End of Document**                          © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext. © 2015 Thomson Reuters   Privacy Statement   Accessibility   Supplier Terms   Contact Us   1-800-REF-ATTY (1-800-733-2889)
Improve WestlawNext

THOMSON REUTERS

EXHIBIT 10

## WestlawNext

**Corporate Records & Business Registrations: ABORELL ADVISORS I LLC**
135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006   *(Approx. 1 page)*

**PEOPLE**

STEVE CHEN

STEVE CHEN

MR STEVEN CHEN

STEVEN CHEN

YI CHUAN CHEN

### Corporate Records & Business Registrations

**Source Information**

| | |
|---|---|
| Information Current Through: | 09/10/2015 |
| Database Last Updated: | 09/14/2015 |
| Update Frequency: | WEEKLY |
| Current Date: | 09/22/2015 |
| Source: | CALIFORNIA SECRETARY OF STATE |

THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

**Company Information**

| | |
|---|---|
| Name: | ABORELL ADVISORS I LLC |
| Address: | 135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006 |

**Filing Information**

| | |
|---|---|
| LLC Jurisdiction: | CALIFORNIA |
| LLC Management: | ONE MANAGER |
| LLC Business Type: | REAL ESTATE INVESTMENT |
| Identification Number: | 201114410010 |
| Filing Date: | 05/23/2011 |
| State of Incorporation: | CALIFORNIA |
| Status: | ACTIVE |
| Business Type: | LIMITED LIABILITY COMPANY |
| Where Filed: | SECRETARY OF STATE/CORPORATIONS DIVISION 1500-11TH STREET SACRAMENTO, CA 95814 |

**Registered Agent Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006 |

**Principal Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006 |

The preceding public record data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

The public record items reported above may have been paid, terminated, vacated or released prior to today's date.

**Order Documents**

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387) for on-site manual retrieval of documents related to this or other matters. Additional charges apply.

---

**End of Document**                     © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext. © 2015 Thomson Reuters.   Privacy Statement   Accessibility   Supplier Terms   Contact Us   1-800-REF-ATTY (1-800-733-2889)
Improve WestlawNext

THOMSON REUTERS

EXHIBIT I

Corporate Records & Business Registrations: ABORELL REIT II LLC - WestlawNext          Page 1 of 1

## WestlawNext

**Corporate Records & Business Registrations: ABORELL REIT II LLC**
135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006   *(Approx. 1 page)*

**PEOPLE**

STEVE CHEN

### Corporate Records & Business Registrations

**Source Information**

| | |
|---|---|
| Information Current Through: | 09/10/2015 |
| Database Last Updated: | 09/14/2015 |
| Update Frequency: | WEEKLY |
| Current Date: | 09/22/2015 |
| Source: | CALIFORNIA SECRETARY OF STATE |

THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

**Company Information**

| | |
|---|---|
| Name: | ABORELL REIT II LLC |
| Address: | 135 E LIVE OAK AVE STE 100 ARCADIA, CA 91006 |

**Filing Information**

| | |
|---|---|
| LLC Jurisdiction: | CALIFORNIA |
| LLC Management: | ONE MANAGER |
| Identification Number: | 201427410043 |
| Filing Date: | 09/30/2014 |
| State of Incorporation: | CALIFORNIA |
| Status: | ACTIVE |
| Business Type: | LIMITED LIABILITY COMPANY |
| Where Filed: | SECRETARY OF STATE/CORPORATIONS DIVISION 1500-11TH STREET SACRAMENTO, CA 95814 |

**Registered Agent Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 849 BALBOA DR ARCADIA, CA 91007 |

The preceding public record data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

The public record items reported above may have been paid, terminated, vacated or released prior to today's date.

**Order Documents**

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387) for on-site manual retrieval of documents related to this or other matters. Additional charges apply.

---

End of Document                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext. © 2015 Thomson Reuters   Privacy Statement   Accessibility   Supplier Terms   Contact Us   1-800-REF-ATTY (1-800-733-2889)
Improve WestlawNext

THOMSON REUTERS

2012-Jul-10 09:32 AM BANK OF AMERICA 6263051776                    31/56

1641 0452 3578                1 of 2

**Bank of America**

BANK OF AMERICA, N.A. (THE "BANK")

Certified Copy of Limited Liability Company Resolutions
Opening and Maintaining Deposit Accounts and Services

Name of Limited Liability Company  ABORELL REIT II LLC

I, the undersigned, hereby certify that  BANK OF AMERICA, N.A.

, that I am the a/the  **Manager**

Title

of the records and minutes of  ABORELL REIT II LLC

a ☑ limited liability Company ☐ professional limited liability company duly organized and existing under the laws of the State of  **CA**

(the "Company"; that I have full authority to manage, represent, sign but vote copy of resolutions duly adopted by a majority of the members/managers of said Company at a meeting duly held on the  **06**  day of  **July**  , **2012**  , at which a quorum was present and acted throughout or adopted by the written consent of a majority of the members/managers, and that such resolutions are in full force and effect and have not been amended or rescinded.

**1. Resolved,** that  BANK OF AMERICA, N.A.                                  (the "Bank")
is hereby designated as a depository of the Company and that deposit accounts and/or time deposits (CDs) be opened and maintained in the name of the Company with the Bank in accordance with the terms of the Bank's Deposit Agreement and Disclosures and the applicable rules and regulations for such accounts; that also one of the following members, managers, or employees of this Company:

**Steve Chen**                                **Manager**

Name                                          Title/Status

_____                       _____

Name                                          Title/Status

_____                       _____

Name                                          Title/Status

is hereby authorized, on behalf of this Company and in name, to execute and sign any application, deposit agreement, signature card and any other documentation required by Bank to open said accounts; to sign checks, drafts, notes, bills of exchange, acceptances, time deposits (CDs) or other orders for payment of money; to endorse checks, drafts, notes, bills, time deposits (CDs) or other instruments owned or held by this company for deposit with Bank or for collection or discount by Bank; to accept, drafts, acceptances, and other instruments payable at Bank; to place orders with Bank for the purchase and sale of foreign currencies on behalf of this Company; to execute and deliver an electronic fund transfer agreement and to make transfers or withdrawals by electronic transfer on behalf of the Company; to obtain an access device (including but not limited to a card, code, or other means of access to the Company's accounts) that may be used for the purpose of initiating electronic fund transfers (Company agrees and acknowledges that neither the Electronic Funds Transfer Act (15 U.S.C. 1693 et seq.) nor Regulation E (12 C.F.R. Part 205) are applicable to any such access device); to establish and maintain a night deposit relationship; to execute and deliver a wire transfer agreement and to request, or to appoint and delegate from time to time such persons who may request, wires of funds; to enter into any agreements with the Bank for the provision by Bank of various Treasury Management services to this Company as such member, manager or employee may determine, in his or her sole discretion, and to sign any and all documents and take all actions required by Bank relative to such Treasury Management services or the performance of the Company's obligations there under, and that any such Treasury Management agreement(s) shall remain in full force and effect until written notice to terminate given in accordance with the terms of any such agreement shall have been received by Bank and that such termination shall not affect any action taken by the Bank prior to such termination; to rent or lease a safe deposit box from Bank, to execute the rental agreement or lease, to enter the safe deposit box and to terminate the rental agreement or lease; to take whatever other actions or enter into whatever other agreements relating to the accounts or investment of funds in such accounts with Bank and to execute, amend, supplement and deliver to Bank such agreements on behalf of the Company upon such terms and conditions as such member, manager or employee may deem appropriate and to appoint and delegate, from time to time, such person(s) who may be authorized to enter into such agreements and take any other actions pursuant to such agreements in such accounts that the member, manager or employee deems necessary; and to waive presentment, demand, protest and notice of protest or dishonor of any check, note, bill, draft, or other instrument made, drawn or endorsed by this Company; and

**2. Further Resolved,** that the Bank be and is hereby authorized to honor, receive, certify, pay or exchange for money orders or other instruments all instruments signed in accordance with the foregoing resolutions even though such payment may create an overdraft or even though such instruments may be drawn or endorsed to the order of any member, manager or employee signing the same or tendered by such member, manager or employee or a third party for exchange or cashing, or in payment of the individual obligation of such member, manager or employee, or for deposit to such member's, manager's or employee's personal account and Bank shall not be required or under any obligation to inquire as to the circumstances of the issuance or use of any instrument signed in accordance with the foregoing resolutions or the application or disposition of such instrument or the proceeds thereof and, further, that the Bank is authorized to honor any instructions regarding withdrawals, orders for payment or transfers of funds whether oral, by telephone or electronic means if such withdrawal, order or transfer are initiated by an above authorized member, manager or employee; and

**3. Further Resolved,** that the Bank be and is hereby requested, authorized and directed to honor and to treat as authorized, checks, drafts or other orders for the payment of money drawn or purportedly drawn in this Company's name, including those payable to the individual order of any person whose name appears thereon as signer thereof, when bearing or purporting to bear the facsimile signature of an member, manager or employee authorized in the foregoing resolution and the Bank shall be entitled to honor, to treat as authorized, and to charge this Company for such checks, drafts, or other orders regardless of by whom or by what means the actual or purported facsimile signature thereon may have been affixed thereto, if such signature resembles the facsimile specimen duly certified to or filed with the Bank by a member/manager of this Company or if such facsimile signature resembles any facsimile signature previously affixed to any check, draft, or other order drawn in the Company's name, which check, draft, or other order was accepted and paid without timely objection by the Company, thereby ratifying the use of such facsimile signature; and the Company hereby indemnifies and holds the Bank harmless against any and all loss, cost, damage or expense suffered or incurred by the Bank arising out of or in any way related to the misuse or unlawful or unauthorized use by a person of such facsimile signature; and

00-14-9253M  06-1999                                                           Page 1 of 2
NCA

2012-Jul-10 09:32 AM BANK OF AMERICA 6263051776                                     32/56

*#_1666   1641 0452 3578*

*2012*

**4. Further Resolved,** that endorsements for deposit may be evidenced by the name of the Company being written or stamped on the check or other instrument deposited, without designation of the party making the endorsement, and the Bank is authorized to supply any endorsement on any instrument tendered for deposit or collection; and

**5. Further Resolved,** that a duly authorized member/manager of this Company shall certify to the Bank names and signatures of persons authorized to act on behalf of this Company under the foregoing resolutions and shall from time to time hereafter, as changes in the identity of said members, managers and employees are made, immediately report, furnish and certify such changes to the Bank and shall submit to the Bank a new account signature card reflecting such change(s) in order to make such changes effective and the Bank shall be fully protected in relying on such certifications and shall be indemnified and saved harmless from any claims, demands, expenses, losses, or damages resulting from, or growing out of, honoring the signature of any member, manager or employee so certified, or refusing to honor any signature not so certified; and

**6. Further Resolved,** that the foregoing resolutions shall remain in full force and effect and the authority herein given to all of said persons shall remain irrevocable as far as the Bank is concerned until three (3) business days after the Bank is notified in writing of the revocation of such authority and that receipt of such notice shall not affect any action taken by said Bank prior thereto; and

**7. Further Resolved,** that all transactions by any member, manager or employee of this Company on its behalf and in its name with the Bank prior to the delivery to the Bank of a certified copy of the foregoing resolutions are, in all respects, hereby ratified, confirmed, approved and adopted; and

**8. Further Resolved,** that any member/manager be and hereby is, authorized and directed to certify these resolutions to the Bank and that the provisions hereof are in conformity with the Articles of Organization and Operating Agreement of this Company.

**In Witness Whereof,** and intending to bind the Company, I have hereunto subscribed my name as a member/manager of this Company, this
__6/6__ day of __July__ , __2012__ .

_____
Member/Manager

| Bank Information | |
|---|---|
| Date | 07/06/2012 |
| Banking Center Name | NORTH ARCADIA |
| Associate's Name | LESLIE PACHECO |
| Associate's Phone Number | 626-305-1760 |

Page 2 of 2

EXHIBIT 12

Corporate Records & Business Registrations: APOLLO REIT I INC - WestlawNext          Page 1 of 1

## WestlawNext™

**Corporate Records & Business Registrations: APOLLO REIT I INC**
12801 SCHABARUM AVE IRWINDALE, CA 91706   *(Approx. 1 page)*

### Corporate Records & Business Registrations

**Source Information**

| | |
|---|---|
| Information Current Through: | 09/10/2015 |
| Database Last Updated: | 09/14/2015 |
| Update Frequency: | WEEKLY |
| Current Date: | 09/22/2015 |
| Source: | CALIFORNIA SECRETARY OF STATE |

THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

**Company Information**

| | |
|---|---|
| Name: | APOLLO REIT I INC |
| Address: | 12801 SCHABARUM AVE IRWINDALE, CA 91706 |

**Filing Information**

| | |
|---|---|
| Identification Number: | C3379885 |
| Filing Date: | 05/23/2011 |
| Status: | DISSOLVED |
| Corporation Type: | PROFIT |
| Business Type: | CORPORATION |
| Where Filed: | SECRETARY OF STATE/CORPORATIONS DIVISION 1500-11TH STREET SACRAMENTO, CA 95814 |

**Registered Agent Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 12801 SCHABARUM AVE IRWINDALE, CA 91706 |

**Principal Information**

| | |
|---|---|
| Name: | STEVE CHEN |
| Address: | 12801 SCHABARUM AVE IRWINDALE, CA 91706 |

**Amendment Information**

| | |
|---|---|
| Amendments: | 09/21/2012 CERTIFICATE OF DISSOLUTION 03/01/2012 CERTIFICATE OF ELECTION TO DISSOLVE |

The preceding public record data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

The public record items reported above may have been paid, terminated, vacated or released prior to today's date.

**Order Documents**

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387) for on-site manual retrieval of documents related to this or other matters. Additional charges apply.

---

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext. © 2015 Thomson Reuters   Privacy Statement   Accessibility   Supplier Terms   Contact Us   1-800-REF-ATTY (1-800-733-2889)                    THOMSON REUTERS
Improve WestlawNext

EXHIBIT 13



**CHASE** ⬧

Multi-Family Lending
Loan Application
(Borrowing Entity and Property Information)

Important Information About Procedures for Opening a New Account: To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your business license, driver's license, or other identifying documents.

### Section 1: Borrowing Entity Information

**Name of Borrower(s)**

Apollo REIT II LLC

**Title will be vested in (name of individual(s), trust, partnership, corporation, LLC)**

Apollo REIT II LLC

A vesting change fee may be assessed if the proposed vesting or structure of the Borrowing Entity is changed after this application is submitted.

**Borrower(s) will be (select type)**

☐ Individual(s)   ☐ General Partnership   ☐ Corporation   ☐ Other _____

☐ Trust   ☐ Limited Partnership   ☑ Limited Liability Company

(If Individual or Trust, proceed to Section 2: Subject Property Information. If Irrevocable Trust please provide Tax ID number.)

List below names of General Partners (Partnership), Managing Members (LLC), and Shareholders (Corporation) with 25% interest or more. Under Title, indicate "General Partner," "Managing Member/Manager," "President/Vice President," "Treasurer," "Stockholder," etc., as appropriate.

|   | Name | Title | Ownership |
|---|------|-------|-----------|
| A | Steve Chen | General Partner | 50 % |
| B | Wei Fang | Shareholder | 10 % |
| C | Ge Gao | " " | 10 % |
| D | Qi Teng | " " | 10 % |
| E | Bingliu Shi | " " | 10 % |
| F | Li Zhao | " " | 10 % |

### Section 2: Subject Property Information

| Street Address | City | County | State | ZIP Code |
|----------------|------|--------|-------|----------|
| 1221 S. Atlantic Blvd. | Alhambra | Los Angeles | CA | 91803 |

| Management Company (if applicable) | Management Company Contact Name | Phone Number |
|---|---|---|
|  |  | (    )        ext. |

| Mailing Address (if different than the borrower's address) | E-Mail Address (if different than the borrower's e-mail address) |
|---|---|
| 849 Balboa Drive, Arcadia CA 91006 |  |

RECEIVED NOV 1 2011 By





**CHASE** 

Multi-Family Lending
Loan Application
(Borrowing Entity and Property Information)

## Section 3: Purpose of Loan

Lien Status: ☒ First ☐ Second

| ☒ Purchase | Purchase Price $ 5,220,000 | Cash Down Payment $ 2,820,000 | Source of Down Payment Savings | Secondary Lien Balance(s) $ N/A | Estimated Closing Date ASAP |
|---|---|---|---|---|---|
| ☐ Refinance | Current Lender | | Purchase Price $ | Date Acquired | Secondary Lien Balance(s) $ |

Purpose of Refinance
☐ Cash Out
☐ Rate and Term

Cash Out Purpose (refinance only)
☐ Capital Improvements     ☐ Payoff Existing Liens     ☐ Other _____
☐ Investments     ☐ Purchase Residential Apartments

## Section 4: Environmental and Structural Questionnaire

If "Yes" is checked for any of the following items, please attach copies of relevant documents, reports, etc.

To the best of your knowledge:

| | Yes | No | Unknown |
|---|---|---|---|
| 1. Does the property suffer from any known deterioration or distress (structural, foundation, or otherwise)? | ☐ | ☒ | ☐ |
| 2. Does the structure have unreinforced masonry walls? | ☐ | ☒ | ☐ |
| 3. Does the building have a brick foundation? | ☐ | ☒ | ☐ |
| If so, has the brick foundation been pinned and capped? (If yes, please provide building permit from city/county and structural engineer report evidencing pinning and capping has been completed per structural engineer's recommendation.) | ☐ | ☐ | ☐ |
| 4. Is there asbestos currently in any of the construction materials of the improvements (e.g., thermal insulation, acoustic ceilings, flooring)? | ☐ | ☒ | ☐ |
| 5. For improvements constructed before 1978, is there lead-based paint on interior or exterior surfaces? | ☐ | ☒ | ☐ |
| 6. Are the improvements constructed over a landfill or other hazardous or municipal waste site? | ☐ | ☒ | ☐ |
| 7. Are there or have there ever been any above or underground gasoline, diesel, fuel oil, or other chemical storage tanks or drums on the subject property? | ☐ | ☒ | ☐ |
| 8. Have the tanks, if any, been registered and inspected/tested for leakage? (If inspected or tested, please attach a copy of the results.) | ☐ | ☒ | ☐ |
| 9. Have tanks been removed or have soil samples been analyzed from the subject property? (If yes, please attach copies of relevant reports.) | ☐ | ☒ | ☐ |
| 10. Has the property ever been the subject of an environmental assessment or audit? (If yes, please attach copies of relevant reports.) | ☐ | ☒ | ☐ |
| 11. Has there ever been any correspondence with federal, state, or local authorities, or any environmental litigation or enforcement action taken concerning the subject property? | ☐ | ☒ | ☐ |
| 12. Has an asbestos or lead-based paint survey ever been conducted to assess the existence, type, location, or condition of asbestos or lead-based paint? | ☐ | ☒ | ☐ |
| 13. Are you aware of any past, present, or contemplated future use of the subject property which may have resulted or may result in the generation or storage of hazardous substances or wastes? | ☐ | ☒ | ☐ |
| 14. Is there any reason why this property is not currently in compliance with federal, state, or local environmental laws and regulations? | ☐ | ☒ | ☐ |
| 15. Is heat provided by a steam boiler for the subject property? | ☐ | ☒ | ☐ |

200.MFL
07/15/11

Exhibit 13 Page 48

 

# CHASE ◆

Multi-Family Lending
**Loan Application**
(Borrowing Entity and Property Information)

## Section 4: Environmental and Structural Questionnaire (cont'd)

Does the subject property contain, or is it affected by, the following:

| | Yes | No | Unknown |
|---|:---:|:---:|:---:|
| 16. Polychlorinated Biphenyls (PCBS) used in electrical transformers, etc.? | ☐ | ☒ | ☐ |
| 17. Formaldehyde gas, especially urea-formaldehyde foam insulation? | ☐ | ☒ | ☐ |
| 18. Soil settling, slipping, sliding, or other building foundation problems? | ☐ | ☒ | ☐ |
| 19. Flooding, grading, or drainage problems? | ☐ | ☒ | ☐ |
| 20. Traces of concrete, asphalt, or other evidence indicating prior commercial use? | ☐ | ☒ | ☐ |
| 21. Ravines, earthen embankments, or other evidence indicating former dumping? | ☐ | ☒ | ☐ |
| 22. Discolored soil, stressed vegetation, or other evidence of spills? | ☐ | ☒ | ☐ |
| 23. Oil sheen in wet areas? | ☐ | ☒ | ☐ |
| 24. Contamination of domestic water well or other water supply? | ☐ | ☒ | ☐ |
| 25. Proximity of property to former or current commercial or industrial facilities? | ☐ | ☒ | ☐ |
| 26. Elevated levels of radon gas in the structure or in the neighborhood? | ☐ | ☒ | ☐ |
| 27. Pipelines carrying oil, gas, or chemicals underneath or adjacent to the subject property? | ☐ | ☒ | ☐ |
| 28. Water intrusion resulting in mold growth on building improvements? | ☐ | ☒ | ☐ |
| 29. Any other potential condition of an environmental nature? | ☐ | ☒ | ☐ |
| If yes, please describe: | | | |

## Section 5: Acknowledgment and Agreement

The undersigned specifically acknowledges and agrees that JPMorgan Chase Bank, N.A., including its agents, successors, and assigns, ("Bank") will rely on the information contained in and provided in connection with this application and all such information is given for the purposes of obtaining the loan indicated above.

The undersigned certifies that the information provided in and given in connection with this application is true and correct as of the date set forth opposite the signature(s) on this application. The undersigned acknowledges that any intentional or negligent misrepresentations of such information may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both, under the provisions of Title 18, United States Code, Section 1014 and liability for monetary damages to the Bank and any other person or entity who may suffer any loss due to reliance upon any misrepresentation which have been made in connection with this application.

| Signature | Date | Signature | Date |
|---|---|---|---|
| X | 11/2/2011 | X | |
| **Title** | | **Title** | |

| Signature | Date | Signature | Date |
|---|---|---|---|
| X | | X | |
| **Title** | | **Title** | |

☐ Check this box if the Loan Application – Additional Signatures Page (219 CTL) is attached.

EXHIBIT 14



**Whois** Identity for everyone

WHOIS

DOMAINS      HOSTING      WEBSITES      EMAIL      SECURITY      WHOIS      SUPPORT                    LOGIN            0

### usfiainc.com registry whois

Updated 1 second ago - Refresh

Domain Name: USFIAINC.COM
Registrar: GODADDY.COM, LLC
Sponsoring Registrar IANA ID: 146
Whois Server: whois.godaddy.com
Referral URL: http://registrar.godaddy.com
Name Server: NS01.DOMAINCONTROL.COM
Name Server: NS02.DOMAINCONTROL.COM
Status: clientDeleteProhibited http://www.icann.org/epp#clientDeleteProhibited
Status: clientRenewProhibited http://www.icann.org/epp#clientRenewProhibited
Status: clientTransferProhibited http://www.icann.org/epp#clientTransferProhibited
Status: clientUpdateProhibited http://www.icann.org/epp#clientUpdateProhibited
Updated Date: 02-may-2015
Creation Date: 19-jul-2013
Expiration Date: 19-jul-2021

### usfiainc.com registrar whois

Updated 1 second ago

Domain Name: USFIAINC.COM
Registry Domain ID: 1816075508_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.godaddy.com
Update Date: 2015-04-23T23:40:36Z
Creation Date: 2013-07-19T01:10:50Z
Registrar Registration Expiration Date: 2021-07-19T01:10:50Z
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Domain Status: clientTransferProhibited http://www.icann.org/epp#clientTransferProhibited
Domain Status: clientUpdateProhibited http://www.icann.org/epp#clientUpdateProhibited
Domain Status: clientRenewProhibited http://www.icann.org/epp#clientRenewProhibited
Domain Status: clientDeleteProhibited http://www.icann.org/epp#clientDeleteProhibited
Registry Registrant ID:
Registrant Name: Steve Chen
Registrant Organization: Alliance Financial Group Inc.
Registrant Street: 135 E Live Oak
Registrant City: Arcadia
Registrant State/Province: California
Registrant Postal Code: 91006
Registrant Country: United States
Registrant Phone: +1.6268519988
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: wendyliu@amkey.net
Registry Admin ID:
Admin Name: Steve Chen
Admin Organization: Alliance Financial Group Inc.
Admin Street: 135 E Live Oak
Admin City: Arcadia
Admin State/Province: California
Admin Postal Code: 91006
Admin Country: United States
Admin Phone: +1.6268519988
Admin Phone Ext:
Admin Fax:
Admin Fax Ext:
Admin Email: wendyliu@amkey.net
Registry Tech ID:
Tech Name: Steve Chen
Tech Organization: Alliance Financial Group Inc.
Tech Street: 135 E Live Oak
Tech City: Arcadia
Tech State/Province: California
Tech Postal Code: 91006
Tech Country: United States
Tech Phone: +1.6268519988
Tech Phone Ext:
Tech Fax:
Tech Fax Ext:
Tech Email: wendyliu@amkey.net
Name Server: NS01.DOMAINCONTROL.COM
Name Server: NS02.DOMAINCONTROL.COM
DNSSEC: unsigned
URL of the ICANN WHOIS Data Problem Reporting System: http://wdprs.internic.net/

Hot Deals!



.biz

.BIZ @ $4.88 $10.88

**Web Hosting**

Easy. Reliable. Affordable.

- Unlimited Disk Space
- Unlimited Data Transfer
- Unlimited Databases
- Unlimited Email Accounts
- 30 Day Money Back Guarantee

**View Plans**

Starts @ $3.88/mo

Exhibit 14 Page 50
9/11/2015

EXHIBIT 15



| Home 首页 | Products 产品 | About Us 关于我们 | News 新闻 | Queen 珠宝女王 | My Account 会员专页 |

## About Us（关于我们）



USFIA INC. is founded and owned by the US China Consultation Association, specialized in gem mining and processing, headquartered in Los Angeles, California. Through e-commerce and franchising, we provide our global consumers and operators with genuine AMN amber products.

USFIA is a global company who owns several large mines in the world including amber mine, Blue Larimar mine and Rhodochrosite mine in Dominica and Argentina. We also have branch and jewelry processing center in Dominica.

Our Jewelry Design Center is located in Los Angeles; we will work with the world-class jewelry designers for our jewelry collection AMN to create stylish, upscale, classy jewelry products.

USFIA will always focus on meeting our customers' needs. To our customers, AMN collections are not just high quality jewelries but also good investment.

美国富豪集团公司由中美政治协商促进会发起并组织，是集专业化的宝石开采和加工的综合性企业，总部设于美国洛杉矶。通过电子商务、连锁加盟方式为全球的消费者和经营者提供货真价实的AMN琥珀系列产品。

美国富豪集团公司是拥有多个矿产的大型国际化企业，在矿产丰富的南美拥有多处琥珀以及同根运拥有琥珀矿、蓝宝石矿——个的拉长石矿、红纹石矿、在纳品矿产在地多美尼加没有分公司以及珠宝加工中心。

美国富豪集团公司的珠宝设计中心设在洛杉矶总部，其首饰是聘文术品的与世界一流的珠宝设计团队合作，为全世界珠宝收藏、投资者打造款式多样、制备一流、最质高端的珠宝系列产品。

美国富豪集团公司将秉持以满足消费者需求为导向，以保障经营者合法权益为己任，建立全方位多功能的服务管理系统。让消费者与经营者在拥有高品质珠宝产品、珠宝事业的同时，获得快乐、获得健康、获得财富！

© 2013-2015 USFIA, Inc  |  TERMS & CONDITIONS  |  RETURN POLICY  |  PRIVACY POLICY  |  CONTACT US



Home  | Select Language ∨ | 🔒 Security Guarantee

## Member Login Back Office

Member ID# :                          Password :

*pp7s*   Login

Not a member yet? Please click here          Forgot your Password? Please Contact Us

© 2013-2015 USFIA, Inc | Privacy Policy | Contact US

Exhibit 15 Page 52
9/11/2015



Welcome Back                                      Log Out   Select Language ▽

Home

# Announcement

Happy City                          Announcement

Redemption                          Gemcoin reward points are during the process of converting into
Records                             cryptocurrency. According with the law, the current Gemcoin reward points
                                    system will be replaced by Gemcoin reward points cryptocurrency and
Redemption Chart                    online wallet service system. The previous Gemcoin reward points
                                    redemption process will be terminated. All members are required to log in
Gemcoin Reward                      the USFIA home page and read and sign the agreement of the conversion.
Points Account                      Members will also be asked to upload their ID information.

CryptoCurrency
Exchange Platform

GC Wallet

Password

© 2013-2015 Gemcoin Reward Points   |   TERMS & CONDITIONS   |   PRIVACY POLICY   |   CONTACT US

 **Inc.**
US Fine Investment Arts

**Home**
首页

**Products**
产品

**About Us**
关于我们

**News**
新闻

**Queen**
珠宝女王

**My Account**
会员专页

## News（新聞）

- 公司活动
- 珍宝币宣传视频
- 加勒比海寻宝之旅
- 视频下载

- 美国富豪集团活动（优酷）
- 美国富豪集团活动（YouTube）
- 珍宝币宣传视频（优酷）
- 珍宝币宣传视频（YouTube）
- 加勒比海寻宝之旅(上)
- 加勒比海寻宝之旅(下)
- 加勒比寻宝之旅(上) 中国大陆地区浏览
- 加勒比寻宝之旅(下) 中国大陆地区浏览
- 如何下载YouTube视频
- 如何下载优酷视频
- 下载美国富豪介绍片 (按右键，另存为)
- 下载加勒比寻宝之旅(上集上半部) (按右键，另存为)
- 下载加勒比寻宝之旅(上集下半部) (按右键，另存为)
- 下载加勒比寻宝之旅(下集上半部) (按右键，另存为)
- 下载加勒比寻宝之旅(下集下半部) (按右键，另存为)

© 2013-2015 USFIA, Inc | TERMS & CONDITIONS | RETURN POLICY | PRIVACY POLICY | CONTACT US

EXHIBIT 16



**Whois** Identity for everyone

WHOIS

DOMAINS    HOSTING    WEBSITES    EMAIL    SECURITY    WHOIS    SUPPORT    LOGIN    0

### alliancefinancialgroupusa.com registry whois
Updated 1 second ago - Refresh

Domain Name: ALLIANCEFINANCIALGROUPUSA.COM
Registrar: GODADDY.COM, LLC
Sponsoring Registrar IANA ID: 146
Whois Server: whois.godaddy.com
Referral URL: http://registrar.godaddy.com
Name Server: NS47.DOMAINCONTROL.COM
Name Server: NS48.DOMAINCONTROL.COM
Status: clientDeleteProhibited http://www.icann.org/epp#clientDeleteProhibited
Status: clientRenewProhibited http://www.icann.org/epp#clientRenewProhibited
Status: clientTransferProhibited http://www.icann.org/epp#clientTransferProhibited
Status: clientUpdateProhibited http://www.icann.org/epp#clientUpdateProhibited
Updated Date: 23-jan-2015
Creation Date: 23-apr-2010
Expiration Date: 23-apr-2017

Hot Deals!



.biz

.BIZ @ $4.88 $10.88

**Web Hosting**
Easy. Reliable. Affordable.
- Unlimited Disk Space
- Unlimited Data Transfer
- Unlimited Databases
- Unlimited Email Accounts
- 30 Day Money Back Guarantee

View Plans

Starts @ $3.88/mo

### alliancefinancialgroupusa.com registrar whois
Updated 1 second ago

Domain Name: ALLIANCEFINANCIALGROUPUSA.COM
Registry Domain ID: 1594001612_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.godaddy.com
Update Date: 2015-01-23T23:13:07Z
Creation Date: 2010-04-23T01:47:59Z
Registrar Registration Expiration Date: 2017-04-23T01:47:59Z
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Domain Status: clientTransferProhibited http://www.icann.org/epp#clientTransferProhibited
Domain Status: clientUpdateProhibited http://www.icann.org/epp#clientUpdateProhibited
Domain Status: clientRenewProhibited http://www.icann.org/epp#clientRenewProhibited
Domain Status: clientDeleteProhibited http://www.icann.org/epp#clientDeleteProhibited
Registry Registrant ID:
Registrant Name: Wendy Liu
Registrant Organization: Alliance Financial Group Inc.
Registrant Street: 12801 Schabarum Avenue
Registrant City: Irwindale
Registrant State/Province: California
Registrant Postal Code: 91706
Registrant Country: United States
Registrant Phone: +1.6268519988
Registrant Phone Ext:
Registrant Fax: +1.6269601773
Registrant Fax Ext:
Registrant Email: wendyliu@amkey.net
Registry Admin ID:
Admin Name: Wendy Liu
Admin Organization: Alliance Financial Group Inc.
Admin Street: 12801 Schabarum Avenue
Admin City: Irwindale
Admin State/Province: California
Admin Postal Code: 91706
Admin Country: United States
Admin Phone: +1.6268519988
Admin Phone Ext:
Admin Fax: +1.6269601773
Admin Fax Ext:
Admin Email: wendyliu@amkey.net
Registry Tech ID:
Tech Name: Wendy Liu
Tech Organization: Alliance Financial Group Inc.
Tech Street: 12801 Schabarum Avenue
Tech City: Irwindale
Tech State/Province: California
Tech Postal Code: 91706
Tech Country: United States
Tech Phone: +1.6268519988
Tech Phone Ext:
Tech Fax: +1.6269601773
Tech Fax Ext:
Tech Email: wendyliu@amkey.net
Name Server: NS47.DOMAINCONTROL.COM
Name Server: NS48.DOMAINCONTROL.COM
DNSSEC: unsigned
URL of the ICANN WHOIS Data Problem Reporting System: http://wdprs.internic.net/

EXHIBIT 17

AFG                                                                    Page 1 of 1



Home        About Us        Company        News        Career        Contact Us

English  中文

## About AFG

Incorporated in the State of Delaware, USA in 2002,
Alliance Financial Group (AFG) is a multinational
private equity investment company with its
headquarters in Los Angeles, California. In the past
10 years, the company has accomplished several
milestones; some of the areas are as follows: Real
Estate Development, Real Estate Investment Trusts,
Precious Metals and Gemstone Mining, a
professional Auction House, a Telecommunications
and Networking Company, an Aeronautical Supplies
company as well as a Biotechnological firm. With a
global footprint, the company has branch offices in
over 18 countries and regions with more than 2000
full time employees.



AFG and its affiliated companies are not depository institutions and are not open for investment by members of the public.
2011-2015 AFG Intellectual Property. All rights reserved. AFG, logo and all other AFG, marks contained herein are trademarks of AFG Intellectual Property and for AFG affiliated companies.



English 中文

Home        About Us        Company        News        Career        Contact Us

## About AFG

AFG's Global vision and "International Integration Platform" has allowed senior management to gain invaluable insight to make a long term plans for the future development of the company, these plans were established at the beginning stages of the company's creation, it is this formula that has enable the company to grow progressively pursuant to the company's defined strategy.

The company's philosophy is to view a world full of opportunities, and to always take a more in-depth look at a particular business venture. AFG strives to "Raise the Bar" and establish exemplary achievements in all of its endeavors.

1   2   3

AFG and its affiliated companies are not depository institutions and are not open for investment by members of the public.
2011-2015 AFG Intellectual Property. All rights reserved. AFG, logo and all other AFG, marks contained herein are trademarks of AFG Intellectual Property and for AFG affiliated companies.

AFG                                                                   Page 1 of 1



English 中文

Home        About Us        Company        News        Career        Contact Us

## About AFG

The "Cornerstone" of AFG is the senior
management, as a company with over a decade of
operational experience; AFG is positioning itself to
continue its expansion into the full spectrum of
investments around the world.

1  2  3

AFG and its affiliated companies are not depository institutions and are not open for investment by members of the public.
2011-2015 AFG Intellectual Property. All rights reserved. AFG, logo and all other AFG. marks contained herein are trademarks of AFG Intellectual Property and for AFG affiliated companies.

Exhibit 17 Page 58
9/11/2015

EXHIBIT 18



**Whois**
Identity for everyone

WHOIS

DOMAINS    HOSTING    WEBSITES    EMAIL    SECURITY    WHOIS    SUPPORT    LOGIN    0

## gemcoin-usfia.com registry whois

*Updated 1 second ago - Refresh*

```
Domain Name: GEMCOIN-USFIA.COM
Registrar: GODADDY.COM, LLC
Sponsoring Registrar IANA ID: 146
Whois Server: whois.godaddy.com
Referral URL: http://registrar.godaddy.com
Name Server: NS73.DOMAINCONTROL.COM
Name Server: NS74.DOMAINCONTROL.COM
Status: clientDeleteProhibited http://www.icann.org/epp#clientDeleteProhibited
Status: clientRenewProhibited http://www.icann.org/epp#clientRenewProhibited
Status: clientTransferProhibited http://www.icann.org/epp#clientTransferProhibited
Status: clientUpdateProhibited http://www.icann.org/epp#clientUpdateProhibited
Updated Date: 16-apr-2015
Creation Date: 01-feb-2015
Expiration Date: 01-feb-2016
```

## gemcoin-usfia.com registrar whois

*Updated 1 second ago*

```
Domain Name: GEMCOIN-USFIA.COM
Registry Domain ID: 1900041255_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.godaddy.com
Update Date: 2015-02-01T20:12:14Z
Creation Date: 2015-02-01T20:12:14Z
Registrar Registration Expiration Date: 2016-02-01T20:12:14Z
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Domain Status: clientTransferProhibited http://www.icann.org/epp#clientTransferProhibited
Domain Status: clientUpdateProhibited http://www.icann.org/epp#clientUpdateProhibited
Domain Status: clientRenewProhibited http://www.icann.org/epp#clientRenewProhibited
Domain Status: clientDeleteProhibited http://www.icann.org/epp#clientDeleteProhibited
Registry Registrant ID:
Registrant Name: Richard Mertz
Registrant Organization: Numora Intl. Inc
Registrant Street: 23622 Hardwood Ct.
Registrant City: Lutz
Registrant State/Province: Florida
Registrant Postal Code: 33559
Registrant Country: United States
Registrant Phone: +1.8134649511
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: ronertz@verizon.net
Registry Admin ID:
Admin Name: Richard Mertz
Admin Organization: Numora Intl, Inc
Admin Street: 23622 Hardwood Ct.
Admin City: Lutz
Admin State/Province: Florida
Admin Postal Code: 33559
Admin Country: United States
Admin Phone: +1.8134649511
Admin Phone Ext:
Admin Fax:
Admin Fax Ext:
Admin Email: ronertz@verizon.net
Registry Tech ID:
Tech Name: Richard Mertz
Tech Organization: Numora Intl, Inc
Tech Street: 23622 Hardwood Ct.
Tech City: Lutz
Tech State/Province: Florida
Tech Postal Code: 33559
Tech Country: United States
Tech Phone: +1.8134649511
Tech Phone Ext:
Tech Fax:
Tech Fax Ext:
Tech Email: ronertz@verizon.net
Name Server: NS73.DOMAINCONTROL.COM
Name Server: NS74.DOMAINCONTROL.COM
DNSSEC: unsigned
URL of the ICANN WHOIS Data Problem Reporting System: http://wdprs.internic.net/
```



Hot Deals!

.biz

.BIZ @ $4.88 ~~$10.88~~

**Web Hosting**

Easy. Reliable. Affordable.

- Unlimited Disk Space
- Unlimited Data Transfer
- Unlimited Databases
- Unlimited Email Accounts
- 30 Day Money Back Guarantee

**View Plans**

Starts @ $3.88/mo

http://www.whois.com/whois/gemcoin-usfia.com

Exhibit 18 Page 59
9/11/2015

EXHIBIT 19