ZACCARO MORGAN LLP
THOMAS A. ZACCARO (CA SBN 183241)
tzaccaro@zaccaromorgan.com
JENIFER Q. DOAN (CA SBN 271571)
jdoan@zaccaromorgan.com
888 South Figueroa Street, Suite 400
Los Angeles, CA  90071-2228
Telephone:  (213) 406-0710
Facsimile:  (213) 265-3141

Attorneys for Non-Parties and Intervenors
JENNIFER LI ZHAO and ALLY
INVESTORS LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>STEVE CHEN, USFIA, INC., *et al.*<br><br>　　　　　Defendants. | Case No.: 15-07425-RGK-GJSX<br><br>*Assigned to the Hon. R. Gary Klausner*<br><br>**NON-PARTIES JENNIFER LI ZHAO AND ALLY INVESTORS LLC'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE, TO DIRECT THE RECEIVER TO RELEASE ASSETS, AND TO CLARIFY ORDERS**<br><br>Hearing Date: December 21, 2015<br>Hearing Time: 9:00 a.m.<br>Courtroom: 850 |

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................. 1

II. BACKGROUND .................................................................................................... 3

    A.  The Zhao Parties and Zhao Accounts. ........................................................ 3

    B.  The SEC and the Receiver Refuse To Assist the Zhao Parties in Obtaining Relief From Bank of America's Improper Action. ............................... 5

    C.  The Receiver's Report and Recommendations. ......................................... 7

III. INTERVENTION AS OF RIGHT SHOULD BE GRANTED .................. 7

    A.  The Motion to Intervene is Timely. ........................................................... 8

    B.  The Zhao Parties Have Significantly Protectable Interests In This Case... 9

    C.  Disposition of This Case May Affect the Zhao Parties' Interests. ............. 9

    D.  The Existing Parties Do Not Adequately Represent the Zhao Parties. ..... 10

IV. THE RECEIVER SHOULD BE DIRECTED TO RETURN THE FUNDS IN THE ALLY ACCOUNTS TO THE ZHAO PARTIES. .................. 11

V.  THE ORDERS SHOULD BE CLARIFIED TO EXCLUDE THE ZHAO ACCOUNTS. ............................................................................................................. 13

    A.  The Zhao Accounts Are Not Contemplated By the Orders. .................... 13

    B.  The SEC Has Not Met Its Burden to Obtain Relief Against the Zhao Parties. ......................................................................................................... 14

VI. CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (2003) ................................................. 10

*California v. Tahoe Reg'l Planning Agency,* 792 F.2d 775, 778 (9th Cir. 1986) .... 10

*Donnelly v. Glickman,* 159 F.3d 405, 410 (9th Cir. 1998) ......................................... 9

*Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) .................................... 14

*SEC v. Cavanagh*, 155 F.3d 129 (2nd Cir. 1998) ..................................................... 14

*Smith v. SEC*, 653 F.3d 121, 128 (2d Cir. 2011) ...................................................... 14

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001) ..... 8, 10

*Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972) ............. 10

*United Farm Workers v. Adm'r, U.S. E.P.A.*, No. C 07-3950, 2008 WL 3929140, at *1 (N.D. Cal. Aug. 26, 2008) ................................................................................ 6

*United States v. Alisal Water Corp.,* 370 F.3d 915, 921 (9th Cir. 2004) ............... 8, 9

*United States v. Oregon,* 745 F.2d 550, 552 (9th Cir. 1984) ..................................... 8

**Secondary Sources**

Charles Alan Wright & Arthur R. Miller, Federal Practice & Proc., § 1916 (1972)) ................................................................................................................... 8

## I. INTRODUCTION

In his First Report and Recommendation filed November 13, 2015 ("Report"), Dkt. No. 19, the Receiver Thomas A. Seaman ("Receiver") stated that Bank of America has frozen certain bank accounts of Non-Parties Jennifer Li Zhao and Ally Investors LLC ("Ally") (collectively, "Zhao Parties") and that the Receiver seized approximately $3.1 million of Ally's assets. The Zhao Parties bring this Motion to reverse these unlawful and unconstitutional actions. Without providing Ms. Zhao or Ally any notice or opportunity to be heard, or seeking an order from the Court, the SEC and the Receiver wrongfully seized approximately $3.1 million of the Ally's funds and unilaterally transferred the funds to the Receiver's own accounts. Another $200,000 of Ms. Zhao's funds have been improperly frozen at the direction of the Receiver, despite not being the subject to any outstanding asset freeze order.

In early October, Bank of America informed Ally and Ms. Zhao that it had frozen several of their accounts pursuant to the Court's Orders in this case.[1] Five of those accounts were not listed in those Orders ("Zhao Accounts"). When counsel for Ally and Ms. Zhao asked the SEC and the Receiver whether they had requested Bank of America to freeze the Zhao Accounts, they denied responsibility for the freeze. When once again asked at an in-person meeting on November 12 about the freezing of the Zhao Accounts, both the SEC and the Receiver disavowed any responsibility and contended that Bank of America acted on its own. However,

---

[1] On September 28, 2015, the Court entered an Order Granting *Ex Parte* Application For Temporary Restraining Order and Orders (1) Freezing Assets; (2) Appointing a Receiver; (3) Prohibiting the Destruction of Documents; (4) Expedited Discovery; and (5) Requiring Accounting. *See* Dkt. No. 8. On October 6, 2015, the Court entered a Preliminary Injunction and
 Orders (1) Freezing Assets; (2) Appointing a Permanent Receiver; (3) Prohibiting the Destruction of Documents; and (4) Requiring Accountings. *See* Dkt. No. 13.

only *one day later*, the Receiver filed the Report with this Court stating that approximately $3.1 million of Ally's frozen funds "were *turned over* to the Receiver in response to a *request by the Receiver* that Bank of America turn over all balances in the accounts of the Receivership Entities." Dkt. No. 19 at 6:11-13. The Receiver seized those funds, according to the Report, on October 7, 2015, but the SEC and Receiver failed to disclose that fact to the Zhao Parties until the Receiver filed the Report six weeks later.

If the SEC or the Receiver believed it was entitled to an order freezing the Zhao Accounts, then they had the burden of moving this Court for such an order and meeting its burden of proof. If Ally were an affiliate of one of the Defendants, as the Report contends, then the Receiver was required to file such a claim and prevail against Ally, after a full hearing, before it could seize any of Ally's funds to satisfy a judgment. The Report demonstrates that the Receiver understands that he must first bring claims against third parties in order for *this Court, and not the Receiver*, to determine whether those parties are affiliates of the Defendants. *See* Dkt. No. 19 at 10:12-13 ("If necessary, the Receiver will seek an order clarifying their [referring to Ally and other purported "affiliates"] status as subsidiaries or affiliates, and therefore Receivership Entities.") Having unilaterally seized Ally's assets and frozen Ms. Zhao's assets merely by convincing Bank of America to do so without an order from this Court, the SEC and the Receiver disregarded these well-established procedures and violated Ally's and Ms. Zhao's constitutional due process rights.

The Receiver has refused Ally's request that the wrongfully seized funds be returned to Bank of America to preserve the status quo. He has also refused to provide assurance to Ally that he would segregate those funds from other Receivership assets and preserve them until the final adjudication of this application. Similarly, the SEC and the Receiver have refused to agree to direct

Bank of America to release Ms. Zhao's accounts, even though neither the SEC nor the Receiver has made a showing that such accounts should be frozen.  Given these refusals, and the SEC's and Receiver's unwillingness to seek a ruling from the Court regarding the freezing of the Accounts or the seizure of Ally's funds, Ms. Zhao and Ally are compelled to bring this Motion and respectfully request that this Court direct the Receiver to return the Ally's funds back to their original accounts, and to clarify its orders to exclude Ally and Ms. Zhao's accounts from the asset freeze unless and until the SEC or the Receiver meets their burden of proof that the accounts should be frozen.

## II.   BACKGROUND

### A.   The Zhao Parties and Zhao Accounts.

Ms. Zhao was born in Zhejing, China, grew up in Beijing, China, and immigrated to the United States in or around January 1996.  *See* Declaration of Jennifer Li Zhao ("Zhao Decl."), ¶ 2.  Her son[2] was born in 2002 and is 13 years old.  *Id*. Defendant Steve Chen is her son's father.[3]  *Id*.  Ms. Zhao is the sole member of Ally, which was formed in approximately 2011.  *Id.*, ¶ 3.  Ally's original business purpose was to invest in Californian real estate, though it does engage in other business opportunities from time to time.  *Id.*  Yanhong Wu and Qi Chen are Ms. Zhao's investment partners in Ally and have helped to fund the business.  *Id.*  They are unrelated to Steve Chen or any other defendant in this case. *Id.*

Ms. Zhao is the sole signatory and/or custodian for all five of the Zhao Accounts listed below, which are all currently held at Bank of America:

---

[2] Ms. Zhao's son's name has been intentionally omitted from this Motion as he is a minor.

[3] Contrary to the Receiver's assertions, Ms. Zhao has never been married to Steve Chen.  Zhao Decl., ¶ 2.

- 3 -
MEMORANDUM OF P&AS IN SUPPORT OF MOTION TO INTERVENE, TO DIRECT THE RECEIVER TO RELEASE FUNDS, AND TO CLARIFY ORDERS

| Account No. | Account Holder | Opening Date |
|---|---|---|
| 000153374232 ("UTMA Account") | UTMA Account for Li Zhao's son (Custodian: Ms. Zhao) | Mid-2000s |
| 000153467748 ("Account 7748") | Ally Investors LLC (Checking) | 2011 |
| 000153968387 ("Account 8387") | Ally Investors LLC (Savings) | 2011 |
| 325058386448 ("Account 6448") | Ally Investors LLC (Checking) | Sept. 2015 |
| ********65G9 ("Account 65G9") | Safe deposit box (held by Ms. Zhao) | Sept. 2015 |

Zhao Decl., ¶ 4.

The UTMA Account was opened in approximately the mid-2000s by Ms. Zhao on behalf of her son and funded by Ms. Zhao with the help of her parents.[4] Zhao Decl., ¶ 5. It contains approximately $100,000. *Id.* Account 65G9 is a safety deposit box owned solely by Ms. Zhao. *Id.*, ¶ 7. Accounts 7748, 8387 and 6448 are Ally accounts, which include Ms. Zhao as the sole custodian and signatory on the accounts, and contain approximately $3.2 million. *Id.*, ¶ 6. These accounts are funded in part by Ms. Wu and Ms. Chen. *Id.* Just before the Ally accounts were frozen, Ms. Wu and Ms. Chen invested approximately $2.1 million into these accounts—funds that are plainly unrelated to the SEC's allegations. *Id.*

Despite the SEC's unrestricted ability to investigate this case before filing, neither the Zhao Parties nor these accounts were mentioned in the SEC's *Ex Parte* Application For Temporary Restraining Order. *See* Dkt. No. 5. Additionally, the Zhao Accounts are not specifically enumerated on the Temporary Restraining

---

[4] UTMA Accounts are tax-free trust accounts that can be opened by an adult on behalf of a minor child.

Order dated September 28, 2015 ("TRO"), or the Preliminary Injunction and Order dated October 5, 2015 ("PI"). *See* Dkt. No. 13. None of the Zhao Accounts are held in the name of, for the benefit of, or over which account authority is held by any Defendant. Zhao Decl., ¶ 4.

Despite the foregoing, the Zhao Accounts were frozen by Bank of America on or around September 29, 2015. Zhao Decl., ¶ 9. The Receiver seized Ally's accounts on or about October 7, 2015. Dkt. No. 19, at 6:7-13; Exhibit A (Bank Turnover) at 17; Exhibit B (General Ledger) at 28. The Zhao Parties had no prior notice that the Accounts would be inaccessible, or that the Receiver would seize Ally's accounts. Declaration of Thomas A. Zaccaro ("Zaccaro Decl."), ¶ 2; Zhao Decl., ¶ 9. Ms. Zhao's relies on assets in these accounts for her business expenses and her and her son's living expenses, and her inability to access the Zhao Accounts is causing her financial hardship. Zhao Decl., ¶ 9.

**B.    The SEC and the Receiver Refused To Assist the Zhao Parties in Obtaining Relief From Bank of America's Actions.**

Once Ms. Zhao became aware that she was unable to access any of the Zhao Accounts, counsel for the Zhao Parties promptly informed the SEC and the Receiver that the Accounts were improperly frozen, requesting that they take the steps necessary to inform Bank of America that the Accounts were not subject to the TRO or the PI asset freezes. *See* October 19, 2015 Letter, Ex. A to Zaccaro Decl. The SEC and the Receiver, however, both refused to take any steps in response to the letter. *Id.*, ¶ 8. On October 28, counsel for the Zhao Parties wrote to Bank of America, informing it that the Zhao Accounts are not subject to the Court's asset freeze, and requested that the Zhao Accounts be unfrozen. *See* October 28, 2015 Letter, Ex. F to Zaccaro Decl. Alternatively, the Zhao Parties' counsel asked Bank of America to justify the freezing of the accounts. *Id.*, ¶ 9.

Despite failing to provide any response to the Zhao Parties and rather than

cooperating in the proper enforcement of the Court's Orders, counsel for the Receiver sent Bank of America a letter on November 4, 2015, requesting that Bank of America maintain a freeze on the Zhao Accounts. *See* November 4, 2015 Letter, Ex. G to Zaccaro Decl. Notably, in the letter, the Receiver did not take the position that the Zhao Accounts were specifically included in the TRO or the PI or that the Zhao Accounts are held in the name of, for the benefit of, or over which account authority is held by any of the Defendants. *See id.*

On November 12, 2015, counsel for the Zhao Parties conducted an in-person conference of counsel pursuant to Local Rule 7-3 in connection with this Motion. Zaccaro Decl., ¶ 11. During the conference, neither the SEC nor the Receiver took the position that the Zhao Accounts were specifically included in the TRO or the PI, or that the Zhao Accounts are held in the name of, for the benefit of, or over which account authority is held by any Defendant. *Id.* They even claimed that they were unaware of why Bank of America had frozen the Accounts and disclaimed responsibility for Bank of America's actions. *Id.* At the same time, the SEC and the Receiver failed to disclose that Bank of America transferred to the Receiver $3.1 million from Ally's accounts ***six weeks earlier*** in response to the Receiver's request. *Id.*, ¶ 12. The SEC and the Receiver would not agree to instruct Bank of America to release the funds contained in the Zhao Accounts. *Id.*, ¶ 11.

Shortly thereafter, counsel for the Zhao Parties requested by letter that the SEC or the Receiver stipulate to the release of $250,000 from Accounts 7748, 8387 or 6448 to help defray Ms. Zhao's living expenses and her attorneys' fees in this Action. *See* November 16 Letter, Ex. H to Zaccaro Decl. The SEC and the Receiver refused this request. *Id.*, ¶ 16. Additionally, despite sending a follow-up letter to Bank of America on November 16, the Zhao Parties still have not received any response from Bank of America. *Id.*, ¶ 14. At no point has the SEC or the Receiver ever identified to the Zhao Parties' counsel the transfers from Chen or any

of the Receivership Entities to the Zhao Parties, let alone asked for an explanation of the nature and purposes of the transfers. *Id.*, ¶ 17.

### C. The Receiver's Report and Recommendations.

On November 13, 2015, the Receiver filed his Report. *See* Dkt. No. 19. The Report states that Bank of America has frozen the UTMA Account and Account 65G9. *Id.* at 6:11-13. In addition, the Report states that the balances of Ally Accounts 7748 and 6448 ($3,034,930.10) were "turned over to the Receiver in response to a request by the Receiver that Bank of America turn over all balances in accounts of the Receivership Entities." *Id.* The Report also contends that Ms. Zhao is "believed to be the wife of Steve Chen" and that Ally's accounting records and bank records allegedly show that the Zhao Parties received "large sums" from the Receivership Entities. *Id.* The Report argues that Ally "should be considered an affiliate and therefore within the scope of the receivership pursuant to Section XI of the PI Order." *Id.*

The Report reveals the Receiver's understanding of the proper, legal method for asserting claims against third parties. In the section of the Report titled "Affiliates," the Receiver lists entities, including Ally, that "appear to be affiliated with Chen and/or the Receivership Entities." Report, 8:21-23. At the conclusion of that section, the Report states that [i]f necessary, the Receiver will seek an order clarifying their status as subsidiaries or affiliates, and therefore Receivership entities." *Id.* at 10:12-13. Despite his acknowledgement of the need to seek the Court's determination of the status of parties like Ally, the Receiver apparently concluded the Court's involvement was unnecessary because Bank of America surprisingly acceded to his request to transfer the funds contained in Ally's accounts without a court order. In doing so, the Receiver caused Ally's due process rights to be violated.

## III. INTERVENTION AS OF RIGHT SHOULD BE GRANTED

Under Federal Rule of Civil Procedure 24(a)(2), a third party is entitled to intervene as of right in a case if four conditions are met: (1) the motion for intervention is timely; (2) the third party claims an identifiable, "significantly protectable interest" relating to the property or transaction that is the subject of the action; (3) disposition of the action may impair or impede the third party's ability to protect that interest; and (4) the existing parties to the action may inadequately represent the third party's interest. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). This four-part test is to be construed "liberally in favor of applicants for intervention." *United Farm Workers v. Adm'r, U.S. E.P.A.*, No. C 07-3950, 2008 WL 3929140, at *1 (N.D. Cal. Aug. 26, 2008). The Zhao Parties readily satisfy all four conditions and should be granted intervention as of right in this case.

### A. The Motion to Intervene is Timely.

The submission of this Motion is timely. In determining whether a motion is timely, District Courts in the Ninth Circuit look to the following three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.,* 370 F.3d 915, 921 (9th Cir. 2004). Of the three factors, the issue of prejudice to the original parties is generally considered the most important. *See United States v. Oregon,* 745 F.2d 550, 552 (9th Cir. 1984) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice & Proc., § 1916 (1972)).

The instant Action is in an early stage of litigation. The Complaint and the TRO were filed on September 28, 2015, and the PI was entered on October 6, 2015. *See* Dkt. Nos. 3, 5, 8, and 13. The Zhao Parties' assets were frozen shortly thereafter. Zhao Decl., ¶ 9. The Report, which informed Ally that its assets had

MEMORANDUM OF P&AS IN SUPPORT OF MOTION TO INTERVENE, TO DIRECT THE RECEIVER TO RELEASE FUNDS, AND TO CLARIFY ORDERS

been seized, was filed a little more than one week ago. Considering these circumstances, the Zhao Parties' Motion, which is being filed less than two months after the original Complaint was filed, is timely. Additionally, there is no reason for the SEC or the Receiver to claim that they are being prejudiced by the Zhao Parties' prompt (and proper) request for relief.

### B. The Zhao Parties Have Significantly Protectable Interests in This Case.

The Zhao Parties have a significantly protectable interest relating to the property or subject of this Action. A proposed intervenor claims a significantly protectable interest within the meaning of Rule 24(a)(2) if the interest asserted is protected by law and related to the plaintiff's claims. *Alisal Water Corp.,* 370 F.3d at 919. "To trigger a right to intervene…an economic interest must be concrete and related to the underlying subject matter of the action. *Id.* The "relationship" requirement is satisfied when the applicant will be or already is affected by the resolution of the plaintiff's claims. *Donnelly v. Glickman,* 159 F.3d 405, 410 (9th Cir. 1998).

Here, it is evident that the Zhao Parties have a concrete, economic interest related to the underlying subject matter of the action. The Zhao Parties are the sole owners of the Accounts. Approximately $3.1 million of the Zhao Accounts has been seized by the Receiver, and the remaining $200,000 is frozen and inaccessible. These assets are related to the underlying subject matter of the action by virtue of the Receiver's allegations that certain of these assets are transfers from Defendants and/or "within the scope of the receivership." The Zhao Parties' ownership of the seized and/or frozen accounts totaling approximately $3.3 million thus satisfies this element.

### C. Disposition of This Case May Affect the Zhao Parties' Interests.

The disposition of this Action clearly will impair or impede—and already has

impaired or impeded—the Zhao Parties' ability to protect their interests in the Zhao Accounts.  The Zhao Parties no longer have the ability to access any of their funds in any of their accounts.  Ms. Zhao relies on the assets in these accounts for her and her son's living expenses.  Zhao Decl., ¶ 9.

Additionally, the Receiver has already commingled Ally's funds with other Receivership assets and, if the Court allows those funds to remain in the hands of the Receiver, neither the Court nor Ally has any assurance that the Receiver will not use these funds to pay his own fees or other professional fees, run the Receivership Entities, and pay down any debt.  The Receiver has refused Ally's request that the wrongfully seized $3.1 million be segregated from his other assets and preserved until the final adjudication of this application.  Zaccaro Decl., at ¶ 16.  Put simply, the fate of the Zhao Accounts will certainly affect the Zhao Parties.  As such, the third element of the four-part test for intervention of right is satisfied.

### D. The Existing Parties Do Not Adequately Represent the Zhao Parties.

The final condition for intervention as of right is that the representation of a proposed intervenor's interests by the existing parties "may be" inadequate.  *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003).  The Supreme Court has stated that the burden of making a showing of inadequacy should be treated as "minimal." *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972); *see also Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d at 823.  This Court considers three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.  *California v. Tahoe Reg'l Planning Agency,* 792 F.2d 775, 778 (9th

- 10 -
MEMORANDUM OF P&AS IN SUPPORT OF MOTION TO INTERVENE, TO DIRECT THE RECEIVER TO RELEASE FUNDS, AND TO CLARIFY ORDERS

Cir. 1986).

All three elements are met here. The first two elements are satisfied because it is impractical to assume that the Defendants "undoubtedly" will make all of the Zhao Parties' arguments, or that they have the desire or economic ability to do so. The Zhao Parties are not affiliated with any Defendant, are not named in this Action, and have not been accused of any wrongdoing. Thus, the Zhao Parties have separate and independent arguments from the remaining Defendants as to why they are the rightful owners of the funds in the Zhao Accounts. This leads to the third, related element. The Zhao Parties are the only entities and individuals with access to the documentary evidence relevant to rebutting any claim the SEC or the Receiver asserts against them. Thus, the third prong is met because the Zhao Parties will necessarily offer elements to the defense of themselves that the other parties *cannot* address.

Because the Zhao Parties can clearly meet the four-part intervention test, the Court should grant their Motion and allow them to intervene here to defend their proper right to the Zhao Accounts. Only intervention will allow the Zhao Parties to appropriately defend themselves against the Receiver's unfounded allegations and unlawful taking of their property.

### IV. THE RECEIVER SHOULD BE DIRECTED TO RETURN THE FUNDS IN THE ALLY ACCOUNTS TO THE ZHAO PARTIES.

The funds in the Ally Accounts improperly seized by the Receiver should be returned to the Ally Accounts as the Receiver has failed to demonstrate that he should be entitled to seize these funds. In his Report, the Receiver contends that Ally "should be considered an affiliate and therefore within the scope of the receivership…" Dkt. No. 19 at 6. However, the Receiver cannot simply declare Ally to be an "affiliate" and seize its assets without first filing a claim before this Court, and, after providing proper notice to Ally, meeting its burden of proof.

Indeed, an examination of the underlying law demonstrates that the Receiver cannot meet the standard to demonstrate that Ally is an affiliate of any Defendant. In receivership proceedings, affiliates have been defined as entities "controlled directly or indirectly by, or under common control with" the Defendants. *See SEC v. Better Life Club of Am., Inc.*, No. CIV. 95-1679 (TFH), 1998 WL 101727, at *1 (D.D.C. Feb. 27, 1998) (addressing "affiliates" of defendants who violated 15 U.S.C. § 77e in a preliminary injunction).

The SEC and the Receiver have not met their burden to prove that Ally is an affiliate of any Defendant under this standard. In the Report, the Receiver offers only three allegations, without any evidence in support, to prove that Ally is an affiliate of the Defendants. First, the Receiver contends that Ms. Zhao is "believed to be the wife" of Steve Chen and is the mother of his son. *See* Dkt. No. 19 at 6. It is unclear how the Receiver came to that conclusion as Ms. Zhao has never been married to Chen. Zhao Decl., ¶ 2. Moreover, being the mother of Chen's son does not prove in any way whether Ally is an affiliate of any Defendant or that Ms. Zhao's accounts should be frozen.

Second, the Receiver contends that company accounting records and bank records demonstrate that Ally and Zhao received sums of money from the Receivership Entities. Dkt. No. 19, at 6:14-19. Yet, the Receiver has refused to provide a list of these purported transfers to Ally's and Ms. Zhao's counsel so they can respond. In any even, these allegations themselves are offered without evidentiary support and do not support that Ally is an affiliate of the Receivership Entities.[5]

Third, the Receiver alleges that the records demonstrate that cashier's checks were drawn from one of the Ally accounts and cashed at a casino by Steve Chen.

---

[5] One of the Receivership Entities (Ahome Real Estate, LLC) invested $1.3 million into Ally, Zhao Decl., ¶ 8, and Ally does not contest that such amount may remain frozen, pending further determination from the Court.

Again, the Receiver has failed to offer evidence to support this claim and cannot seek to brand Ally as an affiliate of any Defendant with so little proof. Indeed, none of these three allegations demonstrate one way or another whether Ally is directly or indirectly controlled by any Defendant.

Returning Ally's funds to their original accounts at Bank of America is the proper remedy to preserve the status quo. The funds were in those accounts when this case was filed and should remain there. Once the status quo is restored, the Receiver can determine whether it has any claims against Ally or Ms. Zhao and file those claims before this Court for full adjudication.

## V. THE ORDERS SHOULD BE CLARIFIED TO EXCLUDE THE ZHAO ACCOUNTS.

The Court should clarify its Orders that the Zhao Accounts are excluded from any asset freeze. The Zhao Accounts should be specifically excluded from the Orders because: (1) they are not contemplated by the Orders; 2) the SEC has not met its burden to obtain preliminary injunctive relief over the Zhao Parties; and 3) depriving them of access to these accounts would unfairly infringe on the Zhao Parties' due process rights.

### A. The Zhao Accounts Are Not Contemplated by the Orders.

Section VII of the TRO provides that "an immediate freeze shall be placed on all monies and assets…in all accounts… held in the name of, for the benefit of, or over which account authority is held by [Defendants], including but not limited to the accounts listed below." Dkt. No. 8 at 7. Similarly, Section VII of the PI provides that "the freeze, previously ordered by the TRO, shall remain in place on all monies and assets… in all accounts…held in the name of, for the benefit of, or over which account authority is held by [Defendants], including but not limited to the accounts listed below." Dkt. No. 13 at 5-6. The Zhao Accounts do not fall into any of these categories.

As an initial matter, it is undisputed that the Zhao Accounts are not included in the accounts specifically listed in the Orders.[6] *See* Dkt. No. 8 at 7-11; Dkt No. 13 at 6-10. Moreover, the Zhao Accounts are clearly not "held in the name of, for the benefit of, or over which account authority is held by Defendants. *Id.* The Zhao Accounts are held in the name of Ally, Ms. Zhao or Ms. Zhao's son. *See* Zhao Decl., ¶¶ 5, 6. Additionally, Ms. Zhao is the sole signatory and/or custodian for all of the Zhao Accounts; thus, no Defendant holds account authority over any of the Zhao Accounts. *Id.*, ¶ 4. Indeed, despite the SEC and the Receiver's refusal to instruct Bank of America to release the funds contained in the Zhao Accounts, neither the SEC nor the Receiver has ever taken the position that the Zhao Accounts are specifically identified in the Orders, or that the Zhao Accounts are "held in the name of, for the benefit of, or over which account authority is held by" any Defendant. *See* Zaccaro Decl., ¶¶ 10, 11. As the Zhao Accounts are plainly not envisioned by the Orders, the Court should move to clarify that the Zhao Accounts are excluded from any court-ordered asset freeze.

### B. The SEC Has Not Met Its Burden to Obtain Relief Against the Zhao Parties.

The SEC has never met its burden to demonstrate that it is entitled to any preliminary injunctive relief as to the Zhao Parties, who are non-parties to this Action. Under *SEC v. Cavanagh*, 155 F.3d 129 (2nd Cir. 1998), a court "may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." *Id.* at 136. "The burden rests with the Commission to show that the funds in the possession of the [relief defendant] are ill-gotten." *Smith v. SEC*, 653 F.3d 121, 128 (2d Cir. 2011).

---

[6] Bank of America has also frozen one other account (Account 01534-02299) that is jointly held by Defendant Steve Chen and Ms. Zhao, but the Zhao Parties do not request that this account be unfrozen at this time.

Moreover, the SEC must "show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages if relief is not granted." Dkt. No. 6 at 22 (citing *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009)). The SEC never even attempted to meet its burden with respect to the Zhao Parties. No evidence has been offered relating to the Zhao Parties or any of the funds in the Zhao Accounts, other than the few facts mentioned in the Receiver's Report. Moreover, these few facts are only offered with respect to the Ally accounts; the SEC has not offered any facts or evidence specific to Ms. Zhao's safety deposit box or her son's UTMA Account. Zaccaro Decl., ¶ 17. At a minimum, Ms. Zhao and her son's accounts should be unfrozen as there are no facts or evidence demonstrating that either of their accounts ever received any transfers from Defendants. Until the SEC and the Receiver abide by the proper procedures to obtain preliminary injunctive relief, the Zhao Parties should be afforded their right to access their accounts freely. The Orders should thus be clarified to exclude the Zhao Accounts from any asset freeze.

## VI.   CONCLUSION

For the foregoing reasons, the Zhao Parties respectfully request the Court to grant their Motion to Intervene, direct the Receiver to return Ally's funds, and clarify its Orders to exclude the Zhao Accounts from any asset freeze.

DATED:  November 23, 2015      ZACCARO MORGAN LLP
                               THOMAS A. ZACCARO
                               JENIFER Q. DOAN

                               By: /s/ Thomas A. Zaccaro
                                   THOMAS A. ZACCARO
                               Attorneys for Non-Parties and Intervenors
                               JENNIFER LI ZHAO and ALLY INVESTORS LLC