ZACCARO MORGAN LLP
THOMAS A. ZACCARO (CA SBN 183241)
tzaccaro@zaccaromorgan.com
JENIFER Q. DOAN (CA SBN 271571)
jdoan@zaccaromorgan.com
888 South Figueroa Street, Suite 400
Los Angeles, CA 90071-2228
Telephone: (213) 406-0710
Facsimile: (213) 265-3141

Attorneys for Non-Parties and Intervenors
JENNIFER LI ZHAO and
ALLY INVESTORS LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>STEVE CHEN, USFIA, INC., *et al.*<br><br>　　　　　Defendants. | Case No.: 15-07425-RGK-GJSX<br><br>*Assigned to the Hon. R. Gary Klausner*<br><br>**DECLARATION OF THOMAS A. ZACCARO IN SUPPORT OF NON-PARTIES JENNIFER LI ZHAO AND ALLY INVESTORS LLC'S MOTION TO INTERVENE, TO DIRECT THE RECEIVER TO RETURN FUNDS, AND TO CLARIFY ORDERS**<br><br>Hearing Date: December 21, 2015<br>Hearing Time: 9:00 a.m.<br>Courtroom: 850 |

---

1

DECLARATION OF ZACCARO IN SUPPORT OF MOTION TO INTERVENE, TO DIRECT THE RECEIVER TO RETURN FUNDS, AND TO CLARIFY ORDERS

I, Thomas A. Zaccaro, declare as follows:

1. I am a partner at Zaccaro Morgan LLP, and counsel for Non-Parties Jennifer Li Zhao and Ally Partners LLC ("Ally") (collectively, the "Zhao Parties"). This Declaration is submitted in support of Ms. Zhao and Ally's Motion to Intervene, to Direct the Receiver to Return Funds, and to Clarify Orders ("Motion"). This Declaration is based on my personal knowledge and if called as a witness, I would testify truthfully to the information and events described below.

2. In or around October 19, 2015, I learned that Bank of America froze five accounts held by Ms. Zhao or Ally (the "Zhao Accounts"). Neither the Zhao Parties nor their counsel had any notice or indication that their accounts would be inaccessible.

3. I immediately contacted counsel for Plaintiff Securities and Exchange Commission ("SEC") and the Receiver Thomas A. Seaman ("Receiver") to inform them that the Zhao Accounts were improperly frozen by Bank of America, and requested that they take the steps necessary to inform Bank of America that these accounts are not subject to the asset freeze. Attached hereto as Exhibit A is a true and correct copy of my October 19, 2015 letter to the SEC and the Receiver.

4. On October 23, 2015, I followed up with David Zaro, counsel for the Receiver, and requested that he advise us on the status of the Zhao Parties' accounts. Mr. Zaro informed me that the Receiver's records purportedly reflected transfers of cash to Ally and Ms. Zhao and asked that they explain those transfers. In return, I asked Mr. Zaro to send us any bank records or other documents that support their claims that Ally and Ms. Zhao received transfers so that we could respond to his request. I also explained that even if it were true, neither the SEC nor the Receiver had any court order that would entitle them to have those accounts frozen. Attached hereto as Exhibit B is a true and correct copy of our email exchange dated October 23, 2015. In his email, Mr. Zaro did not inform me that

1  the Receiver had already seized $3.1 million from Ally's Bank of America accounts
2  on October 7, 2015.

3    5.    On October 26, 2015, Mr. Zaro informed me that the Receiver was
4  requesting additional information about the accounts from the SEC, the Bank of
5  America, and the books and records of the Receivership Entities to determine why
6  the Bank of America froze the accounts.  Mr. Zaro also informed me that the Bank
7  acted on its own and that Receiver did not freeze the accounts.  Mr. Zaro requested
8  that the Zhao Parties submit signature cards for the accounts, bank account records,
9  and accounting information to allow the Receiver to evaluate the accounts.  I
10 concluded from these statements that the Receiver lacked sufficient evidence to
11 determine whether the Zhao Parties Accounts should be frozen.  I replied to Mr.
12 Zaro's email later that day and reiterated my initial request that Mr. Zaro provide
13 evidence that the accounts should be subject to the asset freeze.  Attached hereto as
14 Exhibit C is a true and correct copy of our email correspondence dated October 26,
15 2015.

16    6.    On October 27, 2015, I asked counsel for the SEC and the Receiver
17 again to confirm whether the SEC directed Bank of America to freeze the Zhao
18 Parties' accounts or whether Bank of America acted on its own.  Attached hereto as
19 Exhibit D is a true and correct copy of my email dated October 27, 2015.

20   7.    Later that day, I spoke with Mr. Zaro about the Zhao Parties' accounts.
21 He confirmed to me that the Receiver did not request the accounts be frozen and
22 was unsure why Bank of America froze them.  Attached hereto as Exhibit E is a
23 true and correct copy of my email correspondence confirming our conversation
24 dated October 27, 2015.  Mr. Zaro still did not inform me that the Receiver had
25 already seized $3.1 million from Ally's Bank of America accounts.

26   8.    On October 28, 2015, I spoke with counsel for the SEC and the
27 Receiver on the phone.  Both counsel for the SEC and the Receiver said they did
28 not know why Bank of America froze the Zhao Accounts but still refused to assist

the Zhao Parties in unfreezing those accounts.  I reiterated my request that counsel for the SEC and the Receiver provide evidence that the accounts should be subject to the asset freeze.  I informed the SEC and the Receiver that Ms. Zhao had attempted to get information from Bank of America, including signature cards, but Bank of America refused to provide her the information because the accounts are frozen.  I also offered to provide the SEC and the Receiver with bank records for the frozen accounts that Ms. Zhao was able to obtain from Bank of America, but Mr. Zaro responded that our providing the account records was not necessary because the Receiver would obtain a complete set of account records from the Bank.  During this conversation, neither the SEC nor counsel for the Receiver informed me that the Receiver had already seized $3.1 million from Ally's Bank of America accounts.

9.    That same day, I sent a letter to Bank of America on behalf of the Zhao Parties informing it that the Zhao Accounts are not subject to the Court's asset freeze and requested that the Zhao Accounts be unfrozen.  Alternatively, I asked Bank of America to justify the freezing of the accounts.  Attached hereto as <u>Exhibit F</u> is a true and correct copy of my October 28, 2015 letter to Bank of America.

10.   On November 4, 2015, I was carbon copied on a letter sent by counsel for the Receiver to Bank of America.  The Receiver's counsel did not take the position that the Zhao Accounts were specifically included in the Court's asset freeze orders or that the Zhao Accounts were held in the name of, for the benefit of, or over which account authority is held by any of the Defendants.  Despite this, the Receiver requested that Bank of America maintain its freeze over the Zhao Accounts.  Attached hereto as <u>Exhibit G</u> is a true and correct copy of the Receiver's November 4, 2015 letter to Bank of America.

11.   On November 12, 2015, counsel for the Zhao Parties conducted an in-person conference of counsel pursuant to Local Rule 7-3 in connection with the Zhao Parties' anticipated Motion.  During the conference, counsel for the SEC and

1  the Receiver refused to respond when counsel for the Zhao Parties specifically
2  asked whether the SEC or the Receiver took the position that the Zhao Accounts
3  were specifically covered by the asset freeze orders.  Instead, the SEC and the
4  Receiver represented that Bank of America had acted on its own and that neither
5  the Receiver nor the SEC were responsible for the Bank's action.  Even though they
6  declined to assert that the Court's asset freeze orders applied to the Zhao Accounts,
7  the SEC and the Receiver still would not agree to instruct Bank of America to
8  release the funds contained in the Zhao Accounts.  Neither the SEC nor counsel for
9  the Receiver informed me that the Receiver had already seized $3.1 million from
10 Ally's Bank of America accounts.

11     12.   The Receiver filed its First Report and Recommendation ("Report"),
12 Dkt. No. 19, on November 13, 2015.  When I read the Report, I learned for the first
13 time that the Receiver had seized $3.1 million from Ally's Bank of America
14 accounts on October 7, 2015.

15     13.   On November 16, 2015, I sent a letter to the SEC and the Receiver on
16 behalf of the Zhao Parties requesting that they stipulate to the release of $250,000
17 from the Zhao Accounts to help defray Ms. Zhao's living expenses and her
18 attorneys' fees in this case.  I asked again for the SEC or the Receiver to provide
19 evidence to support freezing the accounts.  Attached hereto as Exhibit H is a true
20 and correct copy of my November 16, 2015 letter to the SEC and the Receiver.

21     14.   That same day, I sent a follow-up letter to Bank of America requesting
22 that it respond to my correspondence dated October 28, 2015.  To date, we have not
23 received any response from Bank of America.

24     15.   On November 20, 2015, I sent a letter to counsel for the SEC and the
25 Receiver on behalf of the Zhao Parties, objecting to the Receiver's improper seizure
26 of Ally's assets without notice to Ally or a determination by the Court that the
27 assets should be frozen or seized.  I demanded that the $3.1 million improperly
28 seized from Ally's accounts be segregated from the Receiver's other accounts and

returned to Bank of America pending determination of Ms. Zhao and Ally's Motion. Attached hereto as <u>Exhibit I</u> is a true and correct copy of my November 20, 2015 letter to the SEC and the Receiver.

16. On November 23, 2015, I spoke with Donald Searles, counsel for the SEC, and Ted Fates, counsel for the Receiver. I reiterated my request for Ally's funds to be segregated from the Receiver's accounts and returned to Bank of America pending a determination of the Motion. Counsel for the SEC and the Receiver refused this request. They also refused to assure me that the Receiver would not dissipate Ally's funds before the final adjudication of the Motion. They also refused the Zhao Parties' request to release $250,000 to help defray their business and living expenses and pay attorneys' fees.

17. At no point has the SEC or the Receiver ever identified to the Zhao Parties' counsel any specific transfers from Steve Chen or any of the Receivership Entities to Ally or Ms. Zhao. Additionally, the SEC and the Receiver have never alleged that Ms. Zhao's accounts (the UTMA Account and Account 65G9) have received any transfers from any Defendant.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 23, 2015

*Thomas A. Zaccaro*
Thomas A. Zaccaro