1   ALLEN MATKINS LECK GAMBLE
        MALLORY & NATSIS LLP
2   DAVID R. ZARO (BAR NO. 124334)
    TIM C. HSU (BAR NO. 279220)
3   865 South Figueroa Street, Suite 2800
    Los Angeles, California 90017-2543
4   Phone: (213) 622-5555
    Fax: (213) 620-8816
5   E-Mail: dzaro@allenmatkins.com
            thsu@allenmatkins.com
6
    EDWARD G. FATES (BAR NO. 227809)
7   501 West Broadway, 15th Floor
    San Diego, California 92101-3541
8   Phone: (619) 233-1155
    Fax: (619) 233-1158
9   E-Mail: tfates@allenmatkins.com

10  Attorneys for Receiver
    THOMAS A. SEAMAN
11

12              **UNITED STATES DISTRICT COURT**

13             **CENTRAL DISTRICT OF CALIFORNIA**

14                    **WESTERN DIVISION**

| | |
|---|---|
| 15  SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:15-CV-07425-RGK-PLA |
| 16 | **RECEIVER'S FORENSIC** |
| Plaintiff, | **ACCOUNTING REPORT** |
| 17 | |
| v. | |
| 18 | |
| 19  STEVE CHEN, USFIA, INC., ALLIANCE FINANCIAL | |
| GROUP, INC., AMAUCTION, INC., | |
| 20  ABORELL MGMT I, LLC, ABORELL ADVISORS I, LLC, ABORELL | |
| 21  REIT II, LLC, AHOME REAL ESTATE, LLC, ALLIANCE | |
| 22  NGN, INC., APOLLO REIT I, INC., APOLLO REIT II, LLC, AMKEY, INC., | |
| 23  US CHINA CONSULTATION ASSOCIATION, and QUAIL RANCH | |
| 24  GOLF COURSE, LLC, | |
| 25  Defendants. | |
| 26 | |

27

28

# **TABLE OF CONTENTS**

**Page**

I.   OBJECTIVES, TIMEFRAME, METHODOLOGY AND LIMITATIONS ......................................................................1

II.   EXECUTIVE SUMMARY .....................................................3

III.   ANALYSIS AND CONCLUSIONS ........................................4

    A.   Summary level sources and uses of investor funds ...........4

    B.   Funds Raised by Entity ...................................................5

    C.   Use of Funds ...................................................................6

        1.   Payments to Insiders ($49.4 million)..........................7

        2.   Other Recipients of Ill-Gotten Gains......................10

        3.   Payments to Overseas or Attenuated Corporate Entities ..................................................................10

        4.   Summary of Real Estate Purchases .........................12

        5.   Operating Expenses ...............................................13

        6.   Commissions and Awards .......................................13

        7.   Ornamental and Semi-Precious Jewelry..................14

        8.   Amber ...................................................................14

        9.   Vecast Stock .........................................................14

        10.   Precious Gems .......................................................15

        11.   Cost of Goods Sold ...............................................15

        12.   Real Property Operating Expenses .........................15

        13.   Funds Returned to Investors ($1.7 million).............15

        14.   Credit Card Payments ($.306 million).....................15

        15.   Mortgage Principal Paid ($.169 million).................16

    D.   Intercompany Transfers and Commingling .....................16

IV.   CONCLUSION ...................................................................17

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1189688.01/LA

(i)

1   Thomas A. Seaman ("Receiver"), was appointed Permanent Receiver for
2   Court-appointed receiver for Defendants USFIA, Inc. ("USFIA"), Alliance Financial
3   Group, Inc., Amauction, Inc., Aborell Mgmt I, LLC, Aborell Advisors I, LLC,
4   Aborell REIT II, LLC, Ahome Real Estate, LLC, Alliance NGN, Inc., Apollo
5   REIT I, Inc., Apollo REIT II, LLC, Amkey, Inc., US China Consultation
6   Association, Quail Ranch Golf Course, LLC, and their subsidiaries and affiliates
7   (collectively, "Receivership Entities").  The Receiver hereby provides his Forensic
8   Accounting Report (the "Report") of the receipts and disbursements of the
9   Receivership Entities for the period from January 1, 2010 to the entry of the TRO on
10  September 28, 2015.

11  **I.     OBJECTIVES, TIMEFRAME, METHODOLOGY AND LIMITATIONS**

12  The objectives of the Forensic Accounting Report are to: 1) identify assets of
13  the Receivership Estate; 2) identify potential recipients of ill-gotten gains and
14  fraudulent transfers; 3) determine the amount received for the personal benefit of the
15  Defendant, Steve Chen ("Chen"); 4) quantify investor losses; 5) establish the cost
16  basis of assets; 6) provide input for income tax returns; and 7) provide a basis for
17  distribution of funds recovered by the Receiver.

18  The starting point of this report is January 1, 2010.  While it appears that the
19  Defendant's enterprises pre-date 2010, this date was selected as the starting point
20  because defendant USFIA was incorporated that year, and at the time, the
21  Receivership Entities only held cash of $157,207, a comparatively low balance when
22  compared with the over $197,000,000 received from investors over the next 5 years.
23  Importantly, and as a practical matter, banking records were available for that period
24  allowing for more accurate tracing of transactions.  Finally, the choice of 2010 as a
25  starting point also makes sense because it is the year when the Receivership Entities
26  commenced procuring the assets that were ultimately recovered by the Receiver.

27  In order to achieve the objectives of the Forensic Accounting Report, a
28  Quickbooks file was created using a Chart of Accounts designed to collect cash

receipts and disbursements in a framework that matches the objectives of the report. The Quickbooks file combines all cash receipts and disbursements into a relational data base that allows the user to extract sources and uses of funds relative to: timing, recipient, category, asset, and other attributes.  Each and every deposit and withdrawal was entered into a bank account in the Quickbooks file wherein it was assigned to an account, a class, a subclass, and noted with a memo providing additional pertinent information.

A Chart of Accounts designed to collect costs in logical categories is attached as Exhibit A.  Accounts were established to determine revenue, expenses, assets and liabilities, disbursements, and transfers between the entities.  The accounting encompasses 17 entities that used 91 banks accounts.  Each account was reconciled by month and balances to the beginning balance in the account and the ending balance in the account as of the date it was seized by the Receiver.

Classes for each entity were established to isolate activity for each corporate entity that received investor funds.  Sub-classes were established based on the purpose of the financial transaction.  For example, sub-classes were created to reflect money raising, use of the investor proceeds, intercompany transfers where funds were used for expenses of the enterprise, and transfers which appear to have been solely for the personal benefit of Chen, his relatives and other insiders.  The sub-classes are thus referred to as: Money Raising, Money Investing, and Intercompany Uses.

The Receiver had no access to the Defendant or to the employees that assisted him in operating the enterprise.  Therefore the Report is limited to facts and conclusions that are either based on what is stated in the business records and bank records, or that can logically be deduced from the data.  As such, in some instances, the Receiver may not be able to fully characterize the nature or reason for certain transactions that are reflected in the books and records.  Notwithstanding these

1  limitations, all receipts and disbursements have been accounted for and reconciled to

2  the bank records.

3       In addition, the Receiver discovered evidence that funds were being raised

4  from oversees investors and that these funds were not collected in the U.S. accounts.

5  Thus, to the extent that funds were raised and spent outside the United States, the

6  true extent of Chen's fraudulent scheme cannot be fully known.  The Receiver also

7  faced significant issues with regard to both multiple languages and overseas financial

8  institutions.  The lack of cooperation from these institutions and the language issues

9  posed additional limitations on the Receiver's full understanding of the scope of this

10  scheme.

11  ## II.  EXECUTIVE SUMMARY

12       This receivership involves a complex and wide-ranging group of enterprises

13  and assets funded with the fruits of the fundraising scheme at the heart of the action

14  filed by the Securities and Exchange Commission ("Commission") against defendant

15  Chen.  In its Order re Plaintiff's Motion for Summary Judgment, the Court found that

16  Chen operated a pyramid scheme in violation of federal securities laws.  [Dkt. 167]

17  From January 1, 2010 and through the date of the Receiver's Appointment on

18  September 28, 2015, the Defendants raised approximately $197 million from

19  investors.  Of that amount, $49.4 million was used to fund lavish lifestyles of Steve

20  Chen, his dependents and others including but not limited to $1.1 million that was

21  used to purchase expensive vehicles.  In addition, $45.5 million was spent on real

22  estate, including 11 single family homes, some of which were occupied by insiders

23  or dependents of Chen.  In addition, Chen purchased a hotel, an apartment building,

24  and several tracts and parcels of undeveloped land.

25       The cost of raising funds from the investors is reflected in the $15.6 million

26  paid in commissions and expenses of the employees and other sales people who

27  raised funds from investors.  In addition, the Defendants spent $27.5 million to

28  operate the enterprise.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

Remarkably, despite raising $197 million from investors, Chen and the Receivership Entities only returned $1.7 million to the investors.  Moreover, there was only approximately $27.4 million on hand when the Receivership Entities' assets were frozen and taken over by the Receiver.  The following report details how the Receivership Entities used these extraordinary sums of money.

## III.   ANALYSIS AND CONCLUSIONS

A.   Summary level sources and uses of investor funds.

Exhibit B provides a Profit & Loss Statement and Balance Sheet which form the basis for the following sources and uses of cash analysis.

| Sources | $ millions |
|---|---|
| Beginning cash | 0.1 |
| Investor Funds | 197.0 |
| Operating Revenue | 8.2 |
| Rental Revenue | 2.1 |
| Dividends and Interest | 0.3 |
| Mortgage proceeds | 2.4 |
| Credit card charges | 0.3 |
| Total Cash Inflows | 210.3 |
| | |
| **Uses** | |
| Payment to insiders | 49.4 |
| Real Estate Purchases | 45.5 |
| Operating Expenses | 27.5 |
| Commissions | 15.6 |
| Ornamental Jewelry | 11.6 |
| Amber | 8.3 |

| | | |
|---|---|---:|
| 1 | Vecast stock purchase | 6.0 |
| 2 | Precious Gems | 5.4 |
| 3 | Cost of Goods sold (Amkey and Amauction) | 5.2 |
| 4 | Real Property Expenses | 3.3 |
| 5 | Ammine Expenses | 2.4 |
| 6 | Funds returned to investors | 1.8 |
| 7 | Vehicles | 0.4 |
| 8 | Credit card payments | 0.3 |
| 9 | Mortgage principal paid | 0.2 |
| 10 | Jewelry supplies | 0.1 |
| 11 | Total Cash Out | 183.0 |
| 13 | **Ending cash to Receiver** | 27.4 |

B.    Funds Raised by Entity.

   The Receivership Entities raised $197 million from investors representing the vast majority of funds coming into the enterprise.  Based upon the timing of investments, the marketing materials being used during that the relevant time period and other such indicators, the Receiver believes that approximately $147 million was raised from investors who were pursuing an investment in USFIA investment packages and later, the Gemcoin related enterprise (collectively "USFIA Package Investors").  These USFIA Package Investors accounted for nearly 75% of the total funds raised from all investors.  It is notable that the USFIA Package Investors' funds were deposited into accounts of various Receivership Entities without any apparent concern over the source of the money, the representations made to investors, or the commingling of funds.  The amounts invested by USFIA Package Investors were paid to the following entities:

| USFIA Package Investors | $ millions |
|---|---|
| Ahome | $46.8 |
| Amauction | $18.2 |
| Amkey | $48.4 |
| USFIA | $33.6 |
| Total USFIA Package Investors | $147.0 |
| Non- USFIA Package Investors | |
| Aborell | $0.1 |
| Ahome | $2.1 |
| Alliance | $11.2 |
| Ally | $4.4 |
| Amkey | $20.6 |
| Apollo REIT | $6.9 |
| Steamfont | $4.6 |
| Total Non-USFIA Package Investors | $50.0 |
| Total investor funds | $197.0 |

In addition to funds raised from investors, the Receivership Entities generated revenue from Amkey and Amkey related entities which sold purported health and beauty products using a multi-level marketing structure. Amkey product sales were $7.6 million over the nearly six-year period. Amauction generated revenue of $.6 million and the various real estate assets generated $2.1 million in rental revenue. Overall, when compared to the over $197 million raised from investors, there was no significant revenue generating activity other than raising funds from investors.

C.    Use of Funds.

The total investor funds and revenue from other sources reflect total revenue of $210.3 million. The Receiver took possession of $27.4 million at the time of his appointment. The balance of $183 million was spent as follows:

1.      Payments to Insiders ($49.4 million).

a.      Steve Chen.  Chen received direct cash payments of $4,039,393 from investor funds.  Chen also used investor proceeds to pay his personal expenses of $1,165,034.  These amounts do not include significant payments to and on behalf of numerous Chen dependents including but not limited to his spouse, former spouses, girlfriends, and the mothers of his children.  For example, the accounting reflects payments to Gymboree, tuition for private middle and high schools, and tuition for University of California at Irvine.  Payments to and on behalf of Chen's dependents and relatives are discussed in further detail below.

b.      Yan Chen.  Yan Chen is reportedly the brother of Chen.  Yan Chen received a minimum of $9,100,792 from the Receivership Entities.

Yan Chen shared control over Amauction with Chen.  Amauction received $18,233,872 of USFIA Package Investor funds.  Amauction also benefitted from the commingling of $1,631,727 of additional investor money as discussed below.

Yan Chen appears to have also controlled Ammine SRL, a Dominican Republic entity.  The Receivership Entities gave Ammine SRL $425,285, purportedly for the purchase of land by Ammine SRL in Dominican Republic.  The land was to purportedly be purchased for the purpose of mining amber.  Unfortunately, USFIA never held title to the land.  Instead, the land was vested in the name of Yan Chen or Ammine SRL.  Ammine SRL also received $12,810,000 in intercompany transfers discussed in further detail below.  Of these funds, $8,816,000 was spent on raw amber, larimar and shells.  $2.363 million was used for operating expenses consisting of payroll, equipment, supplies, and freight expenses.  Mary Oliva Alvarez Lam, who apparently operated the Dominican Republic operations, received $220,568, leaving $1,162,270 unaccounted for.

Yan Chen operates Chenne Corporation, an active California Corporation that is a reseller of jewelry.  Recently Chenne Corporation listed its

business as real estate investment on its registration with the California Secretary of State.  Yan Chen's wife, Yaqin Jiao, is the sole officer of Chenne Corporation.  Early in the receivership, deliveries of ornamental jewelry materials addressed to 351 E. Foothill Boulevard, Arcadia, California, were erroneously delivered by private delivery services to 135 E. Live Oak in Arcadia, the location of Chen's business operations.

The Receiver did not immediately assume possession of Chenne Corporation.  As the accounting work unfolded, it became clear that Chenne Corporation received significant sums from Receivership Entities.  More specifically, Chenne received $3,598,239.80.  It was also learned that the Receivership Entities paid over $11 million for large quantities of ornamental and jewelry materials such as turquoise, larimar and agate.  However, no corresponding sales revenue to the Receivership Entities was identified and it appears the Receivership Entities were funding material purchases of jewelry for companies controlled by Yan Chen and Yaqin Jiao.  For example, Shiny Stones, a company controlled Yaqin Jaio, received $3,910,600.  The Receiver could discern no consideration for these payments to Shiny Stones.

c.    <u>Wei He</u>.  Wei He is reportedly a former spouse of Chen and mother of his son Steven Chen.  Wei was also a principal of Amkey, Inc.  Ms. He received $1,538,427 in direct payments and personal expenses from the Receivership Entities.  The Receivership Entities also paid $5,334,000 toward the purchase of two residential properties which were held by entities controlled by Wei He.  Specifically, the Receivership Entities paid $4,424,000 to purchase the property located at 363 Monterey Pines in Arcadia, CA, and $910,000 to purchase the property located at 5088 Scholarship in Irvine, CA.  Both properties have been recovered by the Receiver as part of the Court-approved settlement with Wei He and are currently under contract to sell pending Court approval.

1          d.     <u>Li Zhao</u>.  Li Zhao and Chen are the parents of David Chen.

2 Li Zhao received direct payments and payments of her expenses in the amount of

3 $3,875,492.52.  Among the payments were monthly lease payments on a Porsche of

4 $3,100, the purchase of a Cadillac costing $114,000, David Chen's tuition, and

5 countless payments to support Li Zhao's lifestyle (i.e., casinos, department stores,

6 etc.).  Many of these payments were made beyond the statute of limitations.

7            Li Zhao claims to have owned Ally Investments whose accounts in the

8 amount of approximately $3.1 million were frozen at the time of the TRO.  Ally also

9 held a safety deposit box that contained $100,000 that was frozen.  Through a series

10 of arcane transactions among Ally, Li Zhao and the Receivership Entities, Li Zhao

11 received title to a property on Gainsboro Drive in San Marino, California costing

12 $2,345,303.75.

13            The Receiver sought authority to pursue claims against Li Zhou.  Before

14 commencing the litigation, the Receiver entered into a settlement with Li Zhao and

15 as a result took possession of the Gainsboro residence, the frozen funds and the

16 safety deposit box cash.

17          e.     <u>Luyang Li</u>.  Luyang Li is reportedly the current spouse of Chen

18 and mother of his two young children.  Luyang Li received $295,722 by way of

19 payroll checks and debit card withdrawals on Receivership Entity bank accounts.

20 The Receiver could not find any evidence that she was an employee or worked at the

21 enterprise.

22          f.     <u>Mo Chen</u>.  Mo Chen is Steve Chen's son.  Mo Chen received

23 $379,170 in direct payments, and $179,171 in personal expenses paid on his behalf.

24 Steamfont Investment Group, a subsidiary and affiliate controlled by Mo Chen

25 received $29,668.  Mo Chen was also a principal of Amkey, Inc. and Amkey Global

26 as discussed in further detail below.  Mo Chen directed the payment of $200,000 of

27 funds into a real estate venture known as CMP Capital Investment, an asset that

28 Receiver was unable to recover.

g.    Qun Yang.  Qun Yang is reportedly a friend (and perhaps a former spouse) of Chen.  Qun Yang received direct payments of $1,302,098.  In addition, Ahome, Inc. purchased a single-family residence at 1261 N. Vosburg in Arcadia from Qun Yang and vested title in the name of Steamfont.  The receivership entities also funded the purchase of a property located at 42 Alta Street, Unit A, which was placed in Qun Yang's name for no apparent consideration.  On the basis of these transactions the Receiver demanded turnover of the 42 Alta St. and 1261 N. Vosburg properties.  The 42 Alta St. property was sold by Qun Yang and a portion of the proceeds was paid to the Receiver.  The 1261 N. Vosburg property was similarly sold by the Receiver and the proceeds were retained for the benefit of the estate.

2.    Other Recipients of Ill-Gotten Gains.

Eiji Sakurada, also known as Solomon Yang and Solomon Sakurada ("Sakurada"), reportedly a business associate of Steve Chen, received $3.019 million from the Receivership Entities.  Chen had entered into agreement with Sakurada wherein Ahome Real Estate, LLC would invest $10,000,000 for a 50% interest in J.A.C. Window, which owned land upon which J.A.C. Window would develop a hotel to be known as the Huntington Palace.  It does not appear that the venture ever went forward, nor could the Receiver find evidence that the funds were returned to the Receivership Entities.

John Wuo, who was a City of Arcadia councilmen and entities controlled by him, received $1.805 million from the Receivership Entities.  The Receiver could not ascertain why the money was paid to Mr. Wuo.

3.    Payments to Overseas or Attenuated Corporate Entities.

Significant payments were made to corporate entities with only tenuous connections to the Receivership Entities.  Many of these entities were located in foreign countries which limited the Receiver's ability to trace or recover proceeds.  A discussion of what is known and not known about these payments follows:

a.      <u>American Immigration Consultant, Ltd. ($4,075,000)</u>.  While the Receiver does not have a complete understanding of the purpose or nature of the disbursements made to American Immigration Consultant, Ltd., bank statements and ledgers for an American Immigration Consultant, Ltd. were maintained in the Receivership Entities' in-house accountant's office.  The records reflect wires to an HSBC Bank account in Hong Kong and were initiated by Chen or Yan Chen from either USFIA or Amauction accounts.  Moreover, just prior to the appointment of the Receiver, Chen attempted to wire funds from an Amkey, Inc. bank account in the amount of $3,500,000 to American Immigration Consultant, Ltd.  The bank's compliance department would not allow the large transfer oversees.  The Receiver could not discern a valid business purpose for any of these transfers.  Based upon the Receiver's investigation and analysis, it is believed that Chen and his brother were able to control these funds once they had been transferred overseas.  American Immigration Consultant, Ltd. shared an address with AMN, Ltd. which was an affiliate of the Receivership Entities.

b.      <u>AMN, Ltd. ($3,130,000)</u>.  The Receiver was not able to determine the nature or purpose of payments made to AMN, Ltd.  The payments of $3,130,000 were comprised of two wire transfers to Hong Kong banks from Amkey and Amauction bank accounts.  The Receiver was able to determine that AMN, Ltd. was an affiliate based upon a review of the records and Chen's and/or Receivership Entities' use of the AMN, Ltd. name on marketing materials, jewelry boxes and jewelry bags.  It is also described in records as the "group's jewelry brand" and held the USFIA Jewelry Queen Pageants that were part of promotional events held for Gemcoin investors.  AMN, Ltd also shares an address with American Immigration Consultant, Ltd.

c.      <u>Amkey International Entities ($4,648,886)</u>.  The Receivership Entities disbursed $4,648,886.55 to various Amkey entities operating in Korea, Taiwan, Viet Nam, and Malaysia.  Amkey and Amkey Global appear to have

1  operated businesses that sold health and beauty products using a multi-level
2  marketing structure.  The Receiver believes that these payments were for the
3  operating expense of the overseas Amkey operations and their local executives.

4  The Receiver also notes that Amkey had product sales of $7,579,382.33 and
5  spent $4,469,922 for health and beauty products.  However, after payment of payroll
6  and operating expenses, Amkey appears to have operated at a loss.  At the time of the
7  Receiver's appointment, Amkey Global, which appeared to be a successor to Amkey,
8  was being managed by Mo Chen who had discussed potentially continuing to operate
9  Amkey Global after the Receiver's appointment.  The financial terms, including
10  release of certain funds frozen by the Court, were not something the Receiver could
11  recommend to Court.

12  4.  Summary of Real Estate Purchases.

13  Over $45.5 million of the investor funds was spent on the purchase of real
14  estate.  Most of the properties have been liquidated by the Receiver for the benefit of
15  the investors.  A list of real estate assets purchased by the Defendants is as follows:

| | |
|---|---|
| 345 Oak Mountain, Bradbury | 6,132,311.55 |
| Hills Garden Hotel – Ostrems | 5,862,328.85 |
| 409 Deodar | 5,300,000.00 |
| 1221 S. Atlantic Blvd | 5,232,273.03 |
| 363 Monterey Pines Dr Arcadia | 4,424,000.00 |
| 135 E. Live Oak, Arcadia | 3,999,851.87 |
| Quail Ranch Golf Course | 3,967,093.44 |
| 2857 Gainsborough | 2,345,303.75 |
| 849 Balboa Dr. Arcadia | 1,255,463.56 |
| Almond St., Rancho Cucamonga | 1,200,000.00 |
| 919 Fairview Ave, B Arcadia | 921,754.01 |
| 5088 Scholarship, Irvine | 910,000.00 |
| 42 Alta St, Unit A Arcadia | 769,900.00 |

| | | |
|---|---|---|
| 1 | 1261 N Vosburg Dr Azusa | 734,462.16 |
| 2 | 2315 Club Vista Dr, Glendora | 631,647.10 |
| 3 | 4116 Lynd Avenue | 483,784.83 |
| 4 | Dominican Republic Land | 425,285.27 |
| 5 | 4050 Lynd Avenue | 372,649.99 |
| 6 | 8280 Utica Avenue | 353,364.03 |
| 7 | CMP Capital Investment | 200,000.00 |
| 8 | Total Real Estate | 45,521,473.44 |

9  With the exception of the Dominican Republic land, which the Receiver abandoned,
10 and the CMP Capital Investment, the Receiver took possession and disposed of all of
11 the foregoing properties.

12          5.      Operating Expenses.

13          Approximately 14%, or $27.5 million of the amount raised from investors was
14 spent operating the enterprise.  Of this amount, payroll expenses were $8.922
15 million.  Merchant account fees paid to credit card processors that allowed the
16 Receivership Entities to take investor funds via credit card were $3.239 million.  The
17 operating expenses also include $4.146 million in sales and marketing expenses,
18 including $3.399 million spent on lavish conferences used to solicit funds from
19 investors.  $4.921 million was spent on travel expenses which included $2.979
20 million for investor prospects and the $1.943 million for the travel expenses of
21 distributors and sales personnel.  $2.446 million was spent on rent, office equipment
22 and office expenses.  The remaining operating expenses are as set forth in various
23 smaller categories on the Profit & Loss Statement found in Exhibit B.

24          6.      Commissions and Awards.

25          Commissions of $14.404 million were paid to approximately 2,100 recipients.
26 In addition, certain individuals received gifts of ipads, cell phones, retail gift cards,
27 expensive designer bags, sporting event tickets and other awards valued in total at
28 $1.201 million.

7.     <u>Ornamental and Semi-Precious Jewelry</u>.

The Receivership Entities spent $11.561 million on ornamental and semi-precious jewelry.  A portion of this amount was spent on hundreds of thousands of simple rings made of silver and a material appearing to look like turquoise at a cost of less than $20 each.  The Defendant's marketing materials represented that these $20 rings were worth $10,000 each and were part of the tangible backing for Gemcoins.  The cost category also includes inventory purchases for the benefit of companies controlled by Yan Chen and Yaqin Jaio.

8.     <u>Amber</u>.

The heart of Chen's scheme was that the investors' Gemcoins would be backed by and fluctuate with the value of amber.  To further demonstrate this aspect of the program, Gemcoin investors were given a small amount of amber of very little pecuniary value in return for their Gemcoin investment.  The Receivership Entities spent $8.312 million to purchase amber.

9.     <u>Vecast Stock</u>.

In May, 2010, Alliance NGN, a receivership entity, bought $6,000,000 in Vecast, Inc., common stock.  Vecast, Inc. was controlled by George Wu and purported to develop and sell cable television equipment in China.  The company is now defunct.

The Receiver learned from company business records, and from investors, that as early as 2004 Chen had issued stock in Amkey, Inc.  In 2010, Chen sent notice that the shares were being recalled and investors would receive shares in Vecast, Inc.  Some of these investors also bought more Vecast shares.  In this manner, Chen raised $11.2 million from investors to support his Vecast investment.  These funds are reflected as *Investor Funds Alliance* on the Profit & Loss statement found in <u>Exhibit B</u>.

10.     <u>Precious Gems</u>.

The Receivership Entities spent $5.4 million on precious stones including diamonds, rubies and emeralds.  Other than six one carat loose diamonds found in Chen's desk, the Receiver was not able to recover any of the precious gems.

11.     <u>Cost of Goods Sold</u>.

The Receivership Entities purchased certain goods for resale.  Amkey product sales were $7.579 million and there were corresponding purchases of health and beauty products of $4.470 million.  In addition, while the exact nature of Amauction's business in not entirely understood, it appears to have had revenue from a few auctions of goods that generated revenue of $596,000 with corresponding product purchases of approximately $289,000.

12.     <u>Real Property Operating Expenses</u>.

As noted above, the Receivership Entities purchased over $45 million in real estate they spent $3.2 million maintaining the properties including but not limited to paying for repairs and maintenance, insurance, and property taxes.

13.     <u>Funds Returned to Investors ($1.7 million)</u>.

As noted previously, only a small amount of money was returned to investors. According to the records, the Receiver could only find payments to 37 investors who received $1.437 million in the return of their principal.  In addition, 19 investors received a total of $302,408 in interest and purported dividend payments.  It appears that most, if not all of these payments were to Non-USFIA Package Investors and many of the payments pre-date USFIA.

14.     <u>Credit Card Payments ($.306 million)</u>.

The enterprise used credit cards to make certain expenditures.  In total $350,585 was charged on credit cards.  Payments of $306,452 were made, and credit card companies were owed $44,133 at the time the Receiver was appointed.

15.   Mortgage Principal Paid ($.169 million).

The Receivership Entities borrowed $2.4 million on a mortgage to finance the purchase of an apartment building located at 1221 S. Atlantic in Alhambra, California.  Payments of $169,080.91 had been made on the loan at the time the Receiver was appointed.

D.   Intercompany Transfers and Commingling.

Commingling of funds among the various Receivership Entities was substantial.  Funds in the amount of $95,509,646 were transferred between and among the Receivership Entities as indicated by the following schedule of amounts received from and paid to separate Receivership Entities and the net amount by which commingling benefitted or hurt that entity.

| Entity | Payments from Affiliates | Payments to Affiliates | Net benefit/ (contributor) |
|---|---|---|---|
| Aborell Advisors | 359,017 | 346,990 | 12,027 |
| Aborell Invesment Assoc. | 8,819 | 6,254 | 2,565 |
| Aborell Investors LP | 8,816 | 6,316 | 2,500 |
| Aborell Mgmt. 1, LLC | 576,356 | 944,000 | (367,644) |
| Aborell REIT | 500,000 | 400,000 | 100,000 |
| Aborell REIT II, LLC | 2,733,199 | 1,690,500 | 1,042,699 |
| Ahome Real Estate | 10,308,674 | 15,093,280 | (4,784,606) |
| Alliance Financial Group | 937,089 | 515,900 | 421,189 |
| Alliance NGN | 12,496,591 | 8,224,964 | 4,271,627 |
| Ally Investors, LLC | 1,521,492 | 100,000 | 1,421,492 |
| Amauction, Inc. | 21,555,027 | 19,953,300 | 1,601,727 |
| Ameritra | 20,000 | 49,984 | (29,984) |
| Amkey, Inc. | 3,160,046 | 29,389,540 | (26,229,494) |
| Ammine SRL | 12,810,000 | - | 12,810,000 |
| Apollo Advisers I | 693,595 | 683,342 | 10,253 |

| | | | | |
|---|---|---|---|---|
| 1 | Apollo Investment Assoc. | 10,000 | 8,819 | 1,181 |
| 2 | Apollo Investors LP | 130,000 | 128,816 | 1,184 |
| 3 | Apollo Mgmt, I, LLC | 110,750 | 294,366 | (183,616) |
| 4 | Apollo REIT I | 5,236,279 | 2,796,361 | 2,439,918 |
| 5 | Apollo REIT II | 6,516,681 | 1,929,273 | 4,587,408 |
| 6 | L'Be Group | 3,104,000 | 2,681,687 | 422,313 |
| 7 | One World Currency | 100,000 | | 100,000 |
| 8 | Quail Ranch Gold Course | 504,946 | 426,874 | 78,072 |
| 9 | Steamfont Capital Inv Grp | 2,100,000 | 4,500,000 | (2,400,000) |
| 10 | Steamfont Invest Group | 1,402,000 | 400,000 | 1,002,000 |
| 11 | Hills Garden | 500,000 | - | 500,000 |
| 12 | US China Consulation | 200,000 | 174,525 | 25,475 |
| 13 | USFIA, Inc. | 7,906,268 | 4,764,555 | 3,141,713 |
| 14 | Total | 95,509,646 | 95,509,646 | - |

15

16    Ammine SRL, Ltd. was the largest beneficiary of commingling and received

17  $12,810,000 in intercompany transfers.  Amkey, Inc. was the largest contributor and

18  made net intercompany transfers of $28.375 million.  It appears from the foregoing

19  analysis of intercompany transfers that nearly half the amount collected from

20  investors was commingled amongst the Receivership Entities.

21                          **IV.    CONCLUSION**

22    Chen established an arcane network of entities and bank accounts to facilitate

23  the flow of funds from the investors to himself and then commingled cash and assets

24  without any regard to corporate formalities whatsoever.  The financial records of the

25  Receivership Entities indicate Chen's scheme to defraud purported investors of

26  nearly $200 million was vast, and remarkably, it appears that aside from a few

27  people, none of the investors received any return on their investment.  Nor could

28  investors have earned a return because their capital was never deployed for so-called

1  Gemcoins or any other crypto-currency.  Instead, Chen and his dependents, relatives

2  and associates, misappropriated virtually all of the money to support their lavish

3  lifestyles as well as for their personal real estate and other assorted ventures.  Chen

4  never created a crypto-currency backed the value of vast quantities of amber and

5  other precious stones.  This, like the entire enterprise, was simply a sales pitch

6  directed to unwitting investors both in the United States and abroad.

7

8

9

10  Dated:  December 16, 2019

THOMAS A. SEAMAN
Receiver

11

12

13

14  Dated:  December 16, 2019

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

15

16

By:     /s/ David R. Zaro

17

DAVID R. ZARO
Attorneys for Receiver
THOMAS SEAMAN

18

19

20

21

22

23

24

25

26

27

28

# USFIA Forensic Accounting
# Balance Sheet
### As of Sept. 28, 2015

**ASSETS**

  **Current Assets**

    **Checking/Savings**

| | |
|---|---:|
| Amkey- Propay Meta Bank xx6584 | 86,739.28 |
| USFIA - First Data | 448,255.00 |
| USFIA -Woodforest National Bank | 107,959.78 |
| Aborell Mgmt- BofA xx3688 | 38,792.77 |
| Aborell REIT-Torrey Pns xx6620 | 101,122.17 |
| Aborell REIT II -BofA xx3578 | 59,878.79 |
| Aborell REIT II -Chase xx7101 | 7,552.43 |
| Ahome Real Estate-BofA xx7811 | 3,199,031.12 |
| Ahome Real Estate-BofA xx9668 | 100.00 |
| Alliance Finl Group-BofA xx0086 | 1,246.87 |
| Alliance NGN-First Ctzns xx6527 | 238.92 |
| Alliance NGN, Inc -BofA xx0450 | 226,180.54 |
| Aborell Advisors I- BofA xx3675 | 7,223.96 |
| Alliance NGN, Inc -HSBC xx1938 | 155.27 |
| Alliance NGN, Inc -HSBC xx5488 | 10.94 |
| Alliance NGN, Inc -HSBC xx9610 | 58.70 |
| Alliance NGN, Inc.-BofA xx9564 | 223,013.88 |
| Ally Investors LLC -BofA xx6448 | 100,743.34 |
| Ally Investors LLC -BofA xx7748 | 2,934,186.76 |
| Amauction, Inc.-BofA xx7980 | 1,021,610.98 |
| Ameritra, Inc.- BofA xx1564 | 13,672.74 |
| Amkey-Nat'l Bank of Cal xx3589 | 4,122,380.92 |
| Amkey Global Corp.-BofA 9167 | 1,818,341.49 |
| Amkey Global Corp.-BofA 9277 | 100.00 |
| Amkey, Inc.-BofA xx7970 | 719,543.70 |
| Amkey, Inc.-BofA xx8413 | 3,757,476.71 |
| Amkey, Inc.-BofA xx8465 | 20,000.00 |
| Amkey, Inc.-BofA xx8517 | 2,525.00 |
| Amkey, Inc.-Far East xx0567 | 2,093.47 |
| Amkey, Inc.-Far East xx5135 | 999,843.20 |
| Hills Garden Hotel -BofA xx8868 | 394,373.73 |
| One Wrld Crrncy Fnd-BofA xx9058 | 85,000.00 |
| Steamfont Investmt -BofA xx1235 | 495,305.57 |
| Steamfont Investmt -BofA xx8477 | 5,953.49 |
| Steamfont Invt-Scttrd/TDAxx7057 | 1,253,944.98 |
| Steamfont Invt-Scttrd/TDAxx7058 | 43,084.99 |
| US-China Cons.-BofA xx5788 | 0.09 |
| US-China Cons.-BofA xx6580 | 9,479.12 |
| USFIA - Bank of America xx0123 | 3,834,664.69 |
| USFIA, Inc.-Far East xx4198 | 1,000,000.00 |
| USFIA, Inc.-Far East xx4228 | 18,242.36 |
| USFIA, Inc.-Wells Fargo xx0883 | 69,544.09 |
| USFIA, Inc.-Wells Fargo xx7978 | 1,522.96 |

**Exhibit A**
**Page 19**

# USFIA Forensic Accounting
# Balance Sheet
### As of Sept. 28, 2015

| | |
|---|---:|
| USFIA, Inc. -BofA xx5882 | 100.00 |
| USFIA, Inc. -BofA xx6182 | 76.00 |
| USFIA, Inc. -BofA xx7578 | 193,207.65 |
| USFIA, Inc. -First Bank xx3685 | 9,919.00 |
| **Total Checking/Savings** | 27,434,497.45 |
| | |
| **Other Current Assets** | |
| Payments to Affiliates | 95,509,646.08 |
| **Total Other Current Assets** | 95,509,646.08 |
| | |
| **Total Current Assets** | 122,944,143.53 |
| | |
| **Fixed Assets** | |
| 1221 S. Atlantic Blvd | 5,232,273.03 |
| 1261 N Vosburg Dr Azusa | 734,462.16 |
| 135 E. Live Oak, Arcadia | 3,999,851.87 |
| 2315 Club Vista Dr, Glendora | 631,647.10 |
| 2857 Gainsborough | 2,345,303.75 |
| 345 Oak Mountain, Bradbury | 6,132,311.55 |
| 363 Monterey Pines Dr Arcadia | 4,424,000.00 |
| 4050 Lynd Avenue | 372,649.99 |
| 409 Deodar | 5,300,000.00 |
| 4116 Lynd Avenue | 483,784.83 |
| 42 Alta St, Unit A Arcadia | 769,900.00 |
| 5088 Scholarship, Irvine | 910,000.00 |
| 8280 Utica Avenue | 353,364.03 |
| 849 Balboa Dr. Arcadia | 1,255,463.56 |
| 919 Fairview Ave, B Arcadia | 921,754.01 |
| Almond St., Rancho Cucamonga | 1,200,000.00 |
| CMP Capital Investment | 200,000.00 |
| Dominican Republic Land | 425,285.27 |
| Hills Garden Hotel - Ostrems | 5,862,328.85 |
| Quail Ranch Golf Course | 3,967,093.44 |
| Vecast, Inc. stock | 6,000,000.00 |
| **Total Fixed Assets** | 51,521,473.44 |
| | |
| **Other Assets** | |
| Company Vechicles | 421,296.53 |
| **Total Other Assets** | 421,296.53 |
| | |
| **TOTAL ASSETS** | **174,886,913.50** |

**LIABILITIES & EQUITY**

    Liabilities

        Current Liabilities

            Credit Cards

# USFIA Forensic Accounting
# Balance Sheet
### As of Sept. 28, 2015

| | |
|---|---:|
| **Amauction BOFA CC XX6233** | 7,519.16 |
| **USFIA Bank of America Card 5429** | 36,613.10 |
| **Total Credit Cards** | 44,132.26 |
| | |
| **Other Current Liabilities** | |
| **Payments from Affiliates** | 95,509,646.08 |
| **Total Other Current Liabilities** | 95,509,646.08 |
| | |
| **Total Current Liabilities** | 95,553,778.34 |
| | |
| **Long Term Liabilities** | |
| **Notes Payable** | |
| **JP Morgan Chase - Alhambra** | 2,230,919.09 |
| **Total Notes Payable** | 2,230,919.09 |
| | |
| **Total Long Term Liabilities** | 2,230,919.09 |
| | |
| **Total Liabilities** | 97,784,697.43 |
| | |
| **Equity** | |
| **Opening Balance Equity** | 157,207.18 |
| **Retained Earnings** | 76,945,008.89 |
| **Total Equity** | 77,102,216.07 |
| | |
| **TOTAL LIABILITIES & EQUITY** | **174,886,913.50** |

# USFIA Forensic Accounting
## Profit & Loss
### All Transactions

| | Sept. 28, 2015 |
|---|---|
| **Income** | |
| Amauction Revenue | 596,035.40 |
| Amkey Product Sales | 7,579,382.33 |
| Dividend and Interest income | 301,875.91 |
| **Gemcoin Investor Funds** | |
| Ahome for USFIA | 46,755,104.60 |
| Amauction for USFIA | 18,233,871.81 |
| Amkey for USFIA | 48,420,896.81 |
| Investor Funds USFIA | 33,559,397.83 |
| **Total Gemcoin Investor Funds** | 146,969,271.05 |
| | |
| **Other Money Raising** | |
| Investor Funds Aborell | 101,582.10 |
| Investor Funds Ahome | 2,124,970.42 |
| Investor Funds Alliance | 11,211,753.99 |
| Investor Funds Ally | 4,448,009.69 |
| Investor Funds Amkey | 20,587,910.43 |
| Investor Funds Apollo REIT | 6,914,499.75 |
| Investor Funds Steamfont | 4,625,274.98 |
| **Total Other Money Raising** | 50,014,001.36 |
| | |
| **Rental Income** | |
| Alhambra Gardens | 1,511,808.40 |
| Commercial | 401,335.24 |
| Hills Garden Hotel Revenue | 181,771.92 |
| **Total Rental Income** | 2,094,915.56 |
| | |
| **Total Income** | 207,555,481.61 |
| | |
| **Gross Profit** | 207,555,481.61 |
| | |
| **Expense** | |
| Amauction Purchases | 288,955.53 |
| Ammine Operatng Expenses | 2,365,263.81 |
| Ammine Travel Expenses | 10,779.50 |
| Ammine Unspecified Disbursement | 1,165,875.05 |
| Bank service charges | 72,682.57 |
| Consignor Payments | 12,001.75 |
| **Defendants and Insiders** | |
| AMN, Ltd. | 3,130,000.00 |
| American Immigration Consultant | 4,075,000.00 |
| Amkey International Entities | 4,477,120.38 |
| Ammine BHD account | 446,826.14 |
| Eiji Sakurada | 3,019,403.41 |
| John Wuo, and entities | 1,805,000.00 |

**Exhibit A
Page 22**

# USFIA Forensic Accounting
# Profit & Loss
## All Transactions

|  | Sept. 28, 2015 |
|---|---|
| L'BE Commodity Co, LTD | 400,523.30 |
| Li (Jennfier) Zhao | 3,875,492.52 |
| Luyang Li | 295,722.12 |
| Mary Oliva Alvarez Lam | 220,568.46 |
| **Mo Chen** | |
|     Mo Chen Direct | 379,170.57 |
|     Payments on behalf of Mo Chen | 179,182.16 |
|     Steamfont Investment Group | 29,667.85 |
| **Total Mo Chen** | 588,020.58 |
|  | |
| Offshore Entities - Use unknown | 3,148,740.28 |
| On behalf of Steve Chen | 1,165,034.36 |
| Other Insiders | 3,871,035.45 |
| Personal Expenses of insiders | 2,923,979.17 |
| Political Contributions | 14,000.00 |
| Qun Yang | 1,302,098.26 |
| Steve Chen | 4,039,392.87 |
| Wei (Grace) He | 1,538,427.12 |
| **Yan Chen** | |
|     Chenne Corp | 3,598,239.80 |
|     Shiny Stones | 3,910,600.00 |
|     Yan Chen Direct | 814,945.78 |
|     Yan Chen Mercedes | 166,735.87 |
|     Yan Chen personal expenses | 545,389.22 |
|     YaQin Jiao - Yan Chen's Wife | 64,881.58 |
| **Total Yan Chen** | 9,100,792.25 |
|  | |
| **Total Defendants and Insiders** | 49,437,176.67 |
|  | |
| Employee expense reimbursements | 15,431.44 |
| Guns and Ammunition | 28,265.72 |
| Immigration related | 12,553.95 |
| **Insurance** | |
|     Auto | 34,839.21 |
|     Liability | 20,353.48 |
|     Wokers comp | 21,354.73 |
| **Total Insurance** | 76,547.42 |
|  | |
| Interest Expense | 14,887.14 |
| **Investors & Distributors** | |
|     Awards to distributors | 1,200,903.94 |
|     Distributor Commissions & Bonus | 14,404,018.63 |
|     Interest/gain paid to investors | 302,408.01 |
|     Payments on behalf of investors | 104,767.40 |
|     Principal Returned to Investors | 1,437,256.73 |

Exhibit A
Page 23

# USFIA Forensic Accounting
# Profit & Loss
### All Transactions

| | Sept. 28, 2015 |
|---|---|
| **Total Investors & Distributors** | 17,449,354.71 |
| | |
| **Legal Settlements** | 80,410.00 |
| **Licenses and Fees** | 62,714.87 |
| **Merchant Acct Fees and Discount** | 3,239,137.77 |
| **Mortgage Interest Expense** | 308,082.70 |
| **Office Equipment** | 384,794.31 |
| **Office expense** | 1,313,598.31 |
| **Payroll and Related** | |
| **Payroll- Employee Benefits** | 910,641.42 |
| **Payroll Expense** | 7,825,213.80 |
| **Weiwen Zhao** | 186,745.34 |
| **Total Payroll and Related** | 8,922,600.56 |
| | |
| **Professional Fees** | |
| **Accounting fees** | 146,338.60 |
| **Consulting Fees** | 71,745.00 |
| **Legal** | 515,503.21 |
| **Total Professional Fees** | 733,586.81 |
| | |
| **Purchases** | |
| **Health/Beauty Products** | 4,469,922.34 |
| **Jewelry/ Materials** | |
| Amber | 8,311,846.48 |
| Gems Precious | 5,423,311.85 |
| Ornmtl & semi-precious jewelry | 11,561,286.56 |
| Supplies/Jewelry Equipment | 61,902.98 |
| **Total Jewelry/ Materials** | 25,358,347.87 |
| | |
| **Shipping & Freight** | 476,827.30 |
| **Total Purchases** | 30,305,097.51 |
| | |
| **Real Property Expenses** | |
| **Hotel Operating Expenses** | 163,404.34 |
| **Improvements** | 413,289.96 |
| **Insurance** | 74,940.86 |
| **Outside Services** | 929,339.11 |
| **Property Taxes** | 941,278.24 |
| **Repairs & Maintenance** | 603,195.77 |
| **Utilities** | 174,083.15 |
| **Total Real Property Expenses** | 3,299,531.43 |
| | |
| **Rent Expense** | 747,570.64 |
| **Sales & Marketing Expense** | |
| **Advertising** | 472,746.04 |

**Exhibit A**
**Page 24**

**USFIA Forensic Accounting**

# Profit & Loss

### All Transactions

|  | Sept. 28, 2015 |
|---|---|
| **Conferences** | 3,399,045.01 |
| **EB5 Related Expenses** | 29,125.67 |
| **Printing and Sales Materials** | 245,706.42 |
| **Total Sales & Marketing Expense** | 4,146,623.14 |
|  |  |
| **Taxes** |  |
| Income | 179,421.68 |
| Sales Tax | 345,428.44 |
| Unsecured Property Tax | 28,469.56 |
| **Total Taxes** | 553,319.68 |
|  |  |
| **Travel & Entertainment** |  |
| Meals & Entertainment | 298,560.74 |
| Mileage | 82,400.72 |
| Travel expense |  |
| Distributors & Employees | 1,942,716.01 |
| Investor propsect | 2,978,885.17 |
| Travel expense - Other | 169.52 |
| **Total Travel expense** | 4,921,770.70 |
|  |  |
| **Total Travel & Entertainment** | 5,302,732.16 |
|  |  |
| **Unspecified expense** | 260,897.57 |
| **Total Expense** | 130,610,472.72 |
|  |  |
| **Net Income** | **76,945,008.89** |

**Exhibit A**
**Page 25**

# USFIA Forensic Accounting

## Profit & Loss

### All Transactions

| | Sept. 28, 2015 |
|---|---|
| **Income** | |
|     **Amauction Revenue** | 596,035.40 |
|     **Amkey Product Sales** | 7,579,382.33 |
|     **Dividend and Interest income** | 301,875.91 |
|     **Gemcoin Investor Funds** | |
|         **Ahome for USFIA** | 46,755,104.60 |
|         **Amauction for USFIA** | 18,233,871.81 |
|         **Amkey for USFIA** | 48,420,896.81 |
|         **Investor Funds USFIA** | 33,559,397.83 |
|     **Total Gemcoin Investor Funds** | 146,969,271.05 |
| | |
|     **Other Money Raising** | |
|         **Investor Funds Aborell** | 101,582.10 |
|         **Investor Funds Ahome** | 2,124,970.42 |
|         **Investor Funds Alliance** | 11,211,753.99 |
|         **Investor Funds Ally** | 4,448,009.69 |
|         **Investor Funds Amkey** | 20,587,910.43 |
|         **Investor Funds Apollo REIT** | 6,914,499.75 |
|         **Investor Funds Steamfont** | 4,625,274.98 |
|     **Total Other Money Raising** | 50,014,001.36 |
| | |
|     **Rental Income** | |
|         **Alhambra Gardens** | 1,511,808.40 |
|         **Commercial** | 401,335.24 |
|         **Hills Garden Hotel Revenue** | 181,771.92 |
|     **Total Rental Income** | 2,094,915.56 |
| | |
|   **Total Income** | 207,555,481.61 |
| | |
| **Gross Profit** | 207,555,481.61 |
| | |
|   **Expense** | |
|     **Amauction Purchases** | 288,955.53 |
|     **Ammine Operatng Expenses** | 2,365,263.81 |
|     **Ammine Travel Expenses** | 10,779.50 |
|     **Ammine Unspecified Disbursement** | 1,165,875.05 |
|     **Bank service charges** | 72,682.57 |
|     **Consignor Payments** | 12,001.75 |
|     **Defendants and Insiders** | |
|         **AMN, Ltd.** | 3,130,000.00 |
|         **American Immigration Consultant** | 4,075,000.00 |
|         **Amkey International Entities** | 4,477,120.38 |
|         **Ammine BHD account** | 446,826.14 |
|         **Eiji Sakurada** | 3,019,403.41 |
|         **John Wuo, and entities** | 1,805,000.00 |

# USFIA Forensic Accounting
## Profit & Loss
### All Transactions

| | Sept. 28, 2015 |
|---|---|
| L'BE Commodity Co, LTD | 400,523.30 |
| Li (Jennfier) Zhao | 3,875,492.52 |
| Luyang Li | 295,722.12 |
| Mary Oliva Alvarez Lam | 220,568.46 |
| Mo Chen | |
|     Mo Chen Direct | 379,170.57 |
|     Payments on behalf of Mo Chen | 179,182.16 |
|     Steamfont Investment Group | 29,667.85 |
| **Total Mo Chen** | 588,020.58 |
| | |
| Offshore Entities - Use unknown | 3,148,740.28 |
| On behalf of Steve Chen | 1,165,034.36 |
| Other Insiders | 3,871,035.45 |
| Personal Expenses of insiders | 2,923,979.17 |
| Political Contributions | 14,000.00 |
| Qun Yang | 1,302,098.26 |
| Steve Chen | 4,039,392.87 |
| Wei (Grace) He | 1,538,427.12 |
| Yan Chen | |
|     Chenne Corp | 3,598,239.80 |
|     Shiny Stones | 3,910,600.00 |
|     Yan Chen Direct | 814,945.78 |
|     Yan Chen Mercedes | 166,735.87 |
|     Yan Chen personal expenses | 545,389.22 |
|     YaQin Jiao - Yan Chen's Wife | 64,881.58 |
| **Total Yan Chen** | 9,100,792.25 |
| | |
| **Total Defendants and Insiders** | 49,437,176.67 |
| | |
| Employee expense reimbursements | 15,431.44 |
| Guns and Ammunition | 28,265.72 |
| Immigration related | 12,553.95 |
| Insurance | |
|     Auto | 34,839.21 |
|     Liability | 20,353.48 |
|     Wokers comp | 21,354.73 |
| **Total Insurance** | 76,547.42 |
| | |
| Interest Expense | 14,887.14 |
| Investors & Distributors | |
|     Awards to distributors | 1,200,903.94 |
|     Distributor Commissions & Bonus | 14,404,018.63 |
|     Interest/gain paid to investors | 302,408.01 |
|     Payments on behalf of investors | 104,767.40 |
|     Principal Returned to Investors | 1,437,256.73 |

Exhibit B
Page 27

# USFIA Forensic Accounting
## Profit & Loss
### All Transactions

|  | Sept. 28, 2015 |
|---|---|
| **Total Investors & Distributors** | 17,449,354.71 |
|  |  |
| **Legal Settlements** | 80,410.00 |
| **Licenses and Fees** | 62,714.87 |
| **Merchant Acct Fees and Discount** | 3,239,137.77 |
| **Mortgage Interest Expense** | 308,082.70 |
| **Office Equipment** | 384,794.31 |
| **Office expense** | 1,313,598.31 |
| **Payroll and Related** |  |
|     **Payroll- Employee Benefits** | 910,641.42 |
|     **Payroll Expense** | 7,825,213.80 |
|     **Weiwen Zhao** | 186,745.34 |
| **Total Payroll and Related** | 8,922,600.56 |
|  |  |
| **Professional Fees** |  |
|     **Accounting fees** | 146,338.60 |
|     **Consulting Fees** | 71,745.00 |
|     **Legal** | 515,503.21 |
| **Total Professional Fees** | 733,586.81 |
|  |  |
| **Purchases** |  |
|     **Health/Beauty Products** | 4,469,922.34 |
|     **Jewelry/ Materials** |  |
|         **Amber** | 8,311,846.48 |
|         **Gems Precious** | 5,423,311.85 |
|         **Ornmtl & semi-precious jewelry** | 11,561,286.56 |
|         **Supplies/Jewelry Equipment** | 61,902.98 |
|     **Total Jewelry/ Materials** | 25,358,347.87 |
|  |  |
|     **Shipping & Freight** | 476,827.30 |
| **Total Purchases** | 30,305,097.51 |
|  |  |
| **Real Property Expenses** |  |
|     **Hotel Operating Expenses** | 163,404.34 |
|     **Improvements** | 413,289.96 |
|     **Insurance** | 74,940.86 |
|     **Outside Services** | 929,339.11 |
|     **Property Taxes** | 941,278.24 |
|     **Repairs & Maintenance** | 603,195.77 |
|     **Utilities** | 174,083.15 |
| **Total Real Property Expenses** | 3,299,531.43 |
|  |  |
| **Rent Expense** | 747,570.64 |
| **Sales & Marketing Expense** |  |
|     **Advertising** | 472,746.04 |

**Exhibit B**
**Page 28**

# USFIA Forensic Accounting

# Profit & Loss

### All Transactions

| | Sept. 28, 2015 |
|---|---|
| **Conferences** | 3,399,045.01 |
| **EB5 Related Expenses** | 29,125.67 |
| **Printing and Sales Materials** | 245,706.42 |
| **Total Sales & Marketing Expense** | 4,146,623.14 |
| | |
| **Taxes** | |
| **Income** | 179,421.68 |
| **Sales Tax** | 345,428.44 |
| **Unsecured Property Tax** | 28,469.56 |
| **Total Taxes** | 553,319.68 |
| | |
| **Travel & Entertainment** | |
| **Meals & Entertainment** | 298,560.74 |
| **Mileage** | 82,400.72 |
| **Travel expense** | |
| **Distributors & Employees** | 1,942,716.01 |
| **Investor propsect** | 2,978,885.17 |
| **Travel expense - Other** | 169.52 |
| **Total Travel expense** | 4,921,770.70 |
| | |
| **Total Travel & Entertainment** | 5,302,732.16 |
| | |
| **Unspecified expense** | 260,897.57 |
| **Total Expense** | 130,610,472.72 |
| | |
| **Net Income** | **76,945,008.89** |

# PROOF OF SERVICE

*Securities and Exchange Commission v. Steve Chen, USFIA, Inc., et al.,*
USDC, Central District of California – Case No. 2:15-cv-07425-RGK-PLA

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 865 S. Figueroa Street, Suite 2800, Los Angeles, California 90017-2543.

On **December 19, 2019**, I caused to be served on all the parties to this action addressed as stated on the attached service list, the document entitled:

## RECEIVER'S FORENSIC ACCOUNTING REPORT

☐ **OFFICE MAIL**:  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with the firm's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **OVERNIGHT DELIVERY**:   I deposited in a box or other facility regularly maintained by express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document(s) in sealed envelope(s) or package(s) designed by the express service carrier, addressed as indicated on the attached service list, with fees for overnight delivery paid or provided for.

☐ **HAND DELIVERY**:    I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **ELECTRONIC MAIL**:  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING**:  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX**:  By transmitting the document by facsimile transmission.   The transmission was reported as complete and without error.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on **December 19, 2019** at Los Angeles, California.

/s/ *Martha Diaz*
Martha Diaz