DAVID R. ZARO (BAR NO. 124334)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
THOMAS A. SEAMAN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>STEVE CHEN, USFIA, INC., ALLIANCE FINANCIAL GROUP, INC., AMAUCTION, INC., ABORELL MGMT I, LLC, ABORELL ADVISORSI, LLC, ABORELL REIT II, LLC, AHOME REAL ESTATE, LLC, ALLIANCE NGN, INC., APOLLO REIT I, INC., APOLLO REIT II, LLC, AMKEY, INC., US CHINA CONSULTATION ASSOCIATION, AND QUAIL RANCHO GOLF COURSE, LLC,,<br><br>    Defendants. | Action No. 2:15-CV-07425-RGK-PLA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RECEIVER THOMAS A. SEAMAN, FOR ORDER: (1) APPROVING FINAL REPORT AND ACCOUNTING; (2) AUTHORIZING PAYMENT OF FINAL FEE APPLICATIONS OF RECEIVER AND PROFESSIONALS; (3) AUTHORIZING CORRECTIVE DISTRIBUTIONS ON ALLOWED CLAIMS; (4) AUTHORIZING FILING FINAL TAX RETURNS; (5) AUTHORIZING ABANDONMENT OR DESTRUCTION OF RECORDS; AND (6) CLOSING RECEIVERSHIP CASE AND DISCHARGING RECEIVER**<br><br>Date: June 17, 2024<br>Time: 9:00 a.m.<br>Ctrm: 850, 8th Floor |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. RELEVANT FACTUAL BACKGROUND ..................................................... 3

III. PROCEDURE FOR CLOSING RECEIVERSHIP AND DISCHARGING RECEIVER ........................................................................ 5

    A. Receivership Final Closing Tasks ........................................................ 5

        1. Approval of the Receiver's Final Report ................................... 5

        2. Payment of Fees and Expenses of Receiver and his Professionals and Holdback Amounts ...................................... 6

        3. Corrective Distribution .............................................................. 7

        4. Submission of Appropriate Tax Returns ................................... 8

        5. Abandonment or Destruction of Records ................................. 8

        6. Completing Outstanding Closing Tasks for the Receivership and Discharging and Releasing Receiver ........... 8

IV. ARGUMENT .................................................................................................. 9

    A. The Proposed Final Closing Tasks Should Be Authorized And The Receiver Discharged And Released ..................................... 9

    B. The Final Fee Applications Are Reasonable And Appropriate, And Payment Of All Outstanding Fees and Expenses Should Be Authorized At This Time ................................ 10

        1. The Fees and Expenses Requested in the Final Fee Applications are Reasonable ..................................................... 11

        2. The Fees and Expenses Incurred in the Receivership Satisfy the Ninth Circuit Standard for Presumptive Reasonableness ......................................................................... 11

        3. The Fees and Expenses Requested in the Final Fee Applications have been Submitted to the Commission, Without Objection .................................................................... 13

        4. The Receiver Should be Authorized to Pay Allowed Fees and Expenses from Cash on Hand ..................................... 14

V. CONCLUSION ............................................................................................. 15

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4858-6886-7745.2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bennett v. Williams,
   892 F.2d 822 (9th Cir. 1989) .................................................................................9

Blum v. Stenson,
   465 U.S. 886 (1984) ............................................................................................12

CFTC v. Topworth Int'l,
   205 F.3d 1107 (9th Cir. 1999) ...............................................................................9

Finn v. Childs Co.,
   181 F.2d 431 (2d Cir. 1950) ................................................................................13

Fleet Nat'l Bank v. H&D Entm't,
   926 F.Supp. 226 (D. Mass. 1996) .........................................................................9

Gaskill v. Gordon,
   27 F.3d 248 (7th Cir. 1994) ................................................................................10

In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,
   109 F.3d 602 (9th Cir. 1997) ........................................................................11, 12

In re Philadelphia & Reading Coal & Iron Co.,
   61 F. Supp. 120 (D.C. Pa. 1945) ...................................................................13, 14

In re San Vicente Medical Partners, Ltd.,
   962 F.2d 1402 (9th Cir. 1992) .............................................................................12

In re Thinking Machines Corp.,
   182 B.R. 365 (D. Mass. 1995) rev'd on other grounds, 67 F.3d
   1021 (1st Cir. 1995) ..............................................................................................9

Powers v. Eichen,
   229 F.3d 1249 (9th Cir. 2000) ......................................................................11, 12

SEC v. Am. Capital Invs.,
   98 F.3d 1133 (9th Cir. 1996) .................................................................................9

SEC v. Basic Energy & Affiliated Resources,
   273 F.3d 657 (6th Cir. 2001) .................................................................................9

SEC v. Elliot,
   953 F.2d 1560 (11th Cir. 1992) ........................................................................9, 10

SEC v. Fifth Avenue Coach Lines, Inc.,
   364 F.Supp. 1220 (S.D.N.Y. 1973) ...............................................................11, 13

SEC v. Forex Asset Mgmt., LLC,
   242 F.3d 325 (5th Cir. 2001) .................................................................................9

**Page(s)**

SEC v. Hardy,
   803 F.2d 1034 (9th Cir. 1986) .................................................................................. 9

SEC v. Health Maintenance Ctrs., Inc.,
   2002 WL 34388014 (W.D. Wash. 2002) .................................................................. 9

SEC v. Wang,
   944 F.2d 80 (2d Cir. 1991) ....................................................................................... 9

Southwestern Media, Inc. v. Rau,
   708 F.2d 419 (9th Cir. 1983) .................................................................................... 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

Thomas A. Seaman (the "Receiver") was appointed as the permanent receiver for Defendants USFIA, Inc., Alliance Financial Group, Inc., Amauction, Inc., Aborell Mgmt I, LLC, Aborell Advisors I, LLC, Aborell REIT II, LLC, Ahome Real Estate, LLC, Alliance NGN, Inc., Apollo REIT I, Inc., Apollo REIT II, LLC, Amkey, Inc., US China Consultation Association, Quail Ranch Golf Course, LLC, and their subsidiaries and affiliates(collectively, the "Receivership Entities" or "Entities") pursuant to this Court's October 6, 2015 Preliminary Injunction and Orders (1) Freezing Assets, and (2) Appointing A Permanent Receiver; (3) Prohibiting Destruction of Documents; and (4) Requiring Accountings (the "Appointment Order") (ECF No. 14). As of the date this Motion of Receiver for Order: (1) Approving Final Report and Accounting; (2) Authorizing Payment of Final Fee Applications of Receiver and Professionals; (3) Authorizing Corrective Distributions to Claimants; (4) Authorizing Submission of Appropriate Tax Returns; (5) Authorizing Abandonment or Destruction of Records; and (6) Closing Receivership Case and Discharging Receiver (the "Motion"), the Receiver believes he has – with the assistance of his Professionals[1] – fulfilled each of his responsibilities to the fullest extent possible, and that further efforts to administer the receivership would not yield a net benefit to the receivership estate or the entities' investors or creditors.

As set forth in further detail in the Receiver's Final Account and Report filed concurrently herewith, some of the Receiver's most significant accomplishments during the pendency of the receivership include:

---

[1] For the purposes of this Motion, the Receiver's "Professionals" are his attorneys of record for the instant receivership, Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins").

1. Marshaling and preserving all receivership assets ("Receivership Assets" or "Assets"). Ultimately, the Receiver recovered and collected a total of more than $80 million in gross recoveries. After payment of operating expenses for the Assets (i.e. mortgage payments, hotel operations, property taxes, etc.), the Receiver distributed approximately $64 million to investors and creditors, as reflected in his concurrently filed Final Report and Accounting (the "Final Report");

2. Disposing of Assets, including via the sale or abandonment of the Entities' real and personal property Assets, including 17 real property assets, comprised of single family homes owned by defendant Steve Chen and his relatives and acquaintances, as well as a hotel, an apartment building, and vacant land purchased;

3. Completing a detailed Forensic Accounting Report regarding the financial activities and condition of the Receivership Entities (ECF No. 406), a monumental undertaking that accounted for over $207 million in funds that flowed into and out of the Receivership Entities;

4. Fulfilling the tax obligations of the Receivership Entities including obtaining the agreement of the Internal Revenue Service (the "IRS") to subordinate its claims and prospective claims in accordance with Department of Justice, Tax Division Directive 137 (which enabled the Receiver to distribute the receivership proceeds to the investor victims instead of the IRS);

5. Proposing and securing Court approval for a claims process and plan for distribution of Receivership Assets to investors and creditors;

6. Making two distributions to 6,872 investors and creditors of the Receivership Entities with allowed claims, in the aggregate amount of approximately $63,385,939.22;

7. Preparing and submitting 27 periodic reports to the Court regarding the status and results of the Receiver's administration of the estate of the Receivership Entities (the "Receivership Estate" or "Estate").

The specific accomplishments of the Receiver and his Professionals are summarized herein, and in the Receiver's Final Report, submitted concurrently with the instant Motion.

Having completed his work, the Receiver has determined, in his reasonable business judgment, that each of his responsibilities under the Appointment Order and other Court orders governing the instant receivership has been satisfied, and that the costs of continuing the present receivership now outweigh any potential benefit. On that basis, the Receiver believes that it is now appropriate to pay administrative fees and expenses, file final tax returns, close the receivership case, and discharge and release the Receiver. As detailed below, the Receiver also requests authority to distribute $58,061.38 to 24 investors to correct errors or other inequities in the original distributions on their Allowed Claims.

Accordingly, the Receiver respectfully requests that this Court enter an order: (1) approving the Receiver's Final Report; (2) authorizing payment of the fees and expenses presented in the Final Application for Payment of Fees and Reimbursement of Expenses of Receiver and his Professionals, filed concurrently herewith (the "Final Fee Applications"); (3) authorizing the Receiver to make a corrective distribution to a claimant; (4) authorizing the Receiver to submit any necessary and appropriate tax returns for the Entities or the Estate; (5) authorizing the Receiver to abandon or destroy, as necessary, Receivership Entity records in connection with the wind-down procedures presented herein; and (6) authorizing the Receiver to complete any outstanding tasks necessary to wind-down and close the receivership, and thereafter closing the receivership and discharging and releasing the Receiver.

## II. RELEVANT FACTUAL BACKGROUND.

A full recitation of the procedural history of the above-captioned action is reflected in Receiver's concurrently submitted Final Report and Receiver's 27

Interim Receiver Reports filed herein. As to this Motion, the relevant facts are as follows:

The above-captioned enforcement action was commenced by the Plaintiff Securities and Exchange Commission (the "Commission") on September 28, 2015. (ECF No. 1.) The Receiver was subsequently appointed on October 6, 2015. Since his appointment, the Receiver has administered the Estate and all Receivership Assets in accordance with the Court's instructions, including specifically: (1) marshaling and preserving Receivership Assets; (2) completing the disposition of real and personal property Assets; (3) performing accountings and analysis of the Receivership Entities' financial activities and condition; (4) eliminating and addressing the Entities' liabilities; (5) recommending the claims process, appropriate treatment of claims, and making a distribution; (6) negotiating with tax agencies to subordinate their claims; and (7) preparing reports for this Court. (See concurrently filed Declaration of Thomas A. Seaman ("Seaman Decl."] ¶ 2-3.) The specific actions undertaken to-date are identified in the Receiver's 27 Interim Reports, and the Receiver's Final Report, filed herewith. As reflected in the Final Report, the successfully recovered approximately $80 million. After payment of the cost of operating the recovered Assets, such as apartments and a hotel, as well as the administrative expenses for the receivership, the Receiver distributed $63,385,939.22 to investor claimants.

The Receiver has concluded, in his reasonable business judgment, that continued administration of the receivership case will not result in the recovery of additional Receivership Assets and will not increase the amount of Assets available to the Receivership Estate. (Seaman Decl. ¶¶ 5-6.) Thus, the costs of continuing the receivership now outweigh the benefits. (Id.) Given this determination, and having fulfilled his responsibilities under the Appointment Order and other Court orders in this action, the Receiver believes it is now time to close the receivership case and discharge and release the Receiver. (Id. at ¶ 6.) To that end, the Receiver

respectfully requests that this Court enter an Order approving the Receiver's Final Report; authorizing payment of the fees and expenses requested in the Final Fee Applications; authorizing the Receiver to make the corrective distributions to the affected claimants; authorizing the Receiver to file appropriate final QSF tax returns; authorizing the Receiver to abandon or destroy remaining books and records (which were not previously destroyed); and closing the receivership and discharging and releasing the Receiver upon the Receiver's completion of these tasks.  (Id.)  As is customary in these matters, the Receiver proposes to submit a Final Declaration to the Court reflecting the completion of all closing tasks when completed (the "Final Declaration"), and respectfully requests that the receivership be terminated, without further Court order, upon the Receiver's filing of the Final Declaration.  (Id. at ¶ 5-6.)

### III.   PROCEDURE FOR CLOSING RECEIVERSHIP AND DISCHARGING RECEIVER.

**A.   Receivership Final Closing Tasks.**

By this Motion, the Receiver respectfully requests Court approval of, and authorization to complete, the final closing tasks detailed below in connection with closing the instant receivership and discharging the Receiver:

1. Approval of the Receiver's Final Report.

The Receiver's Final Report (which also appends his final accounting for the Estate) has been submitted to the Court concurrently with this Motion.  (Id. at ¶ 6; see also, Receiver's Final Report, submitted concurrently herewith.)  The Final Report summarizes the actions of the Receiver and his Professionals during the pendency of the receivership case, and provides summary descriptions of his work, asset preservation and recovery, claims administration, and reporting efforts.  A copy of the Receiver's final accounting summary, reflecting receipts and disbursements for the receivership through May 3, 2024 is attached as **Exhibit "A"**

to the Final Report. The Receiver respectfully requests that the Court approve his Final Report.

       2.      <u>Payment of Fees and Expenses of Receiver and his Professionals and Holdback Amounts.</u>

Concurrently with this Motion, the Receiver and his Professionals have submitted their Final Fee Applications, requesting payment of their respective fees and expenses incurred from October 1, 2023 – May 3, 2024, a reserve of up to $50,000 to cover costs to prepare the 2023 and 2024 income tax returns and the Receiver's and Professional's anticipated and unforeseen fees and costs after the termination of the receivership, which amount will be turned over to the SEC if not needed, and payment of sums held back (the "Holdbacks") over the past 8 years from previously approved fee applications. (<u>See</u> Final Fee Applications filed concurrently herewith.). The Court previously approved the Receiver's and his Professionals' administrative and professional fees through September 30, 2023 in the amount of $5,085,758 for the Receiver, $1,824,232.95 for his counsel, and $268,520.05 for Berkeley Research Group ("BRG") who provided the Receiver forensic digital assistance.

However, 10% of the Receiver's fees, 20% of his counsel's fees and 10% of BRG's fees were not paid and were held back pending the conclusion of the case. These holdbacks are as follows:

| | |
|---|---|
| Thomas Seaman Company | $508,575.80 |
| Allen Matkins | $364,685.92 |
| <u>Berkeley Research Group</u> | <u>$26,852.00</u> |
| Total | $900,113.72 |

Therefore, the Receiver respectfully requests authorization at this time to pay the Professionals' and Receiver's: (1) unpaid holdbacks in the aggregate amount of $900,113,72; (2) outstanding administrative and professional fees and expenses, from October 1, 2023 – May 3, 2024 in the amount of $179,128.85; and (3) the

anticipated fees and expenses of the Receiver and his Professionals to file tax returns and complete the wind-down and termination of the instant receivership, in the aggregate amount of not more than $50,000, to pay for the cost to wind up the receivership (i.e., addressing these closing motions, preparation of final tax returns, destruction of records, closing bank accounts, and related closing tasks.), as set forth in further detail in the Final Fee Applications. The amount of the Closing Reserve that is not used will be reflected in the Receiver's Final Declaration and turned over to the SEC.

### 3. Corrective Distribution.

The Receiver has made two distributions to those claimants with Allowed Claims. Through this process, the Receiver has learned that several investor claimants with Allowed Claims did not receive a payment or the amount that they received was incorrect, either due to an error of the investor or the Receiver. (Id. at ¶7.) In addition, several investors who did not negotiate their first distribution check and who were later deemed by the Court to have their claim extinguished, later surfaced. Given that there is a surplus in the receivership that will otherwise be turned over to SEC for payment to the United States Treasury, the Receiver believes it is fair and appropriate to correct these issues. There are three categories of corrective distributions: 1) 18 investors who did not negotiate their first distribution check and who were later deemed by the Court to have their claim extinguished, $30,089.54; 2) three investors with stale dated Second Distribution Payments, $253.89; and three corrections to claims that were made after the Court's prior cut-off dates and therefore deemed rejected, $27,717.95. (Id.) The Receiver recommends that, as part of the termination of the instant receivership, the Court authorize him to make the corrective distributions of $58,061.38 to these 24 investors.

Any remaining funds available after payment of approved Administrative Expenses will be turned over to the SEC for payment to the United States Treasury

c/o the Commission as set for the Final Account and Report filed concurrently herewith.

### 4. Submission of Appropriate Tax Returns.

The Receiver is required to submit appropriate tax returns for each calendar year of the pendency of the receivership. Accordingly, the Receiver anticipates submitting any necessary and appropriate tax returns before they are due, and requests Court authorization to do so.

### 5. Abandonment or Destruction of Records.

The Receiver previously received authority to destroy the bulk of documents and records obtained during his administration of the Estate. However, the Receiver still maintains some physical and electronic records which were held pending the final distributions and the closing of the case. Some of these documents contain private financial information or other sensitive information of the Receivership Entities' investors. Certain personal property, primarily amber and costume jewelry with little to no pecuniary value was also returned by the FBI last week that the Receiver will need to dispose of. Accordingly, the Receiver proposes that, within ninety (90) days after the entry of an order approving this Motion and the Final Report, the Receiver be authorized to abandon any documents containing non-private information, and destroy any documents containing private information, except for those records, if any, that are necessary for tax returns, and to dispose of the personal property.

### 6. Completing Outstanding Closing Tasks for the Receivership and Discharging and Releasing Receiver.

The Receiver respectfully requests that, once he has completed the above-identified closing tasks, this Court thereafter close the receivership case and discharge and release the Receiver, effective immediately upon the Receiver's submission of the Final Declaration regarding his completion of the final closing tasks.

## IV. ARGUMENT.

### A. The Proposed Final Closing Tasks Should Be Authorized And The Receiver Discharged And Released.

A court's power to administer an equity receivership is extremely broad. SEC v. Hardy, 803 F.2d 1034, 1037 (9th Cir. 1986); SEC v. Forex Asset Mgmt., LLC, 242 F.3d 325, 331 (5th Cir. 2001); SEC v. Basic Energy & Affiliated Res., 273 F.3d 657, 668 (6th Cir. 2001); SEC v. Elliot, 953 F.2d 1560, 1566 (11th Cir. 1992); SEC v. Wang, 944 F.2d 80, 85 (2d Cir. 1991). In the absence of controlling authority, and where applicable, district courts supervising equity receiverships routinely look to bankruptcy law for guidance. SEC v. Am. Capital Invs., 98 F.3d 1133,1140 (9th Cir. 1996); CFTC v. Topworth Int'l, 205 F.3d 1107, 1116 (9th Cir. 1999) (Central District local rules, for instance, "direct receivers, unless otherwise ordered … to 'administer the estate as nearly as possible in accordance with … the administration of estates in bankruptcy.'"); Fleet Nat'l Bank v. H&D Entm't, 926 F.Supp. 226, 240 n. 56 (D. Mass. 1996) ("[W]hat is permitted under the Bankruptcy Code, generally is, a fortiori, permissible under receivership law.").

In the case administration context, courts are deferential to the business judgment of bankruptcy trustees, receivers, and similar estate custodians. See, e.g., Bennett v. Williams, 892 F.2d 822, 824 (9th Cir. 1989) ("[W]e are deferential to the business management decisions of a bankruptcy trustee."); Sw. Media, Inc. v. Rau, 708 F.2d 419, 425 (9th Cir. 1983) ("The decision concerning the form of … [estate administration] … rested with the business judgment of the trustee."); see also SEC v. Health Maint. Ctrs., Inc., 2002 WL 34388014 (W.D. Wash. 2002) (Equating bankruptcy trustees with receivers and finding that "the courts have overwhelmingly applied a 'business judgment' test" to estate administration.); In re Thinking Machs. Corp., 182 B.R. 365, 368 (D. Mass. 1995) ("The application of the business judgment rule … and the high degree of deference usually afforded purely economic

decisions of trustees, makes court refusal unlikely.") (rev'd on other grounds, 67 F.3d 1021 (1st Cir. 1995)).

As reported herein and in the concurrently submitted Final Report, the Receiver has made all reasonable and necessary efforts to recover, review, and analyze Receivership Entity business records and documents, to assemble a forensic accounting report reflecting the Receivership Entities' financial activities, to recover available Receivership Assets, and to develop and administer an equitable claims and distribution process for the Entities' investors and creditors, resulting in distributions to those with Allowed Claims of $63,385,939.22

The Receiver has concluded, in his reasonable business judgment, that continued administration of the instant receivership will not result in the recovery of any meaningful additional Receivership Assets and will not increase the amount of Assets available to the Receivership Estate. Accordingly, the Receiver has concluded that it is now appropriate to close the receivership, and discharge and release the Receiver. (Seaman Decl. ¶ ¶ 5-6.)

**B.    The Final Fee Applications Are Reasonable And Appropriate, And Payment Of All Outstanding Fees and Expenses Should Be Authorized At This Time.**

"As a general rule, the expenses and fees of a receivership are a charge upon the property administered." Gaskill v. Gordon, 27 F.3d 248, 251 (7th Cir. 1994). These expenses include the fees and expenses of the Receiver and his Professionals. Decisions regarding the timing and amount of an award of fees and expenses to the Receiver and his Professionals are committed to the sound discretion of the Court. SEC v. Elliot, 953 F.2d 1560, 1577 (11th Cir. 1992) (rev'd in part on other grounds, 998 F.2d 922 (11th Cir. 1993)).

### 1. The Fees and Expenses Requested in the Final Fee Applications are Reasonable.

In determining the reasonableness of fees and expenses requested in this context, the Court should consider the time records presented, the quality of the work performed, the complexity of the problems faced, and the benefit of the services rendered to the receivership estate. <u>SEC v. Fifth Ave. Coach Lines, Inc.</u>, 364 F.Supp. 1220, 1222 (S.D.N.Y. 1973).

Here, the Final Fee Applications describe the nature of the services that have been rendered, and where appropriate, the identity and billing rate of the individuals performing each task. The Receiver and his Professionals have endeavored to staff matters as efficiently as possible in light of the level of experience required and the complexity of the issues presented. In general, the Final Fee Applications reflect the Receiver's and his Professionals' customary billing rates and the rates charged for comparable services in other matters, less any discounts or reductions specifically identified therein. The total Receiver's and Professional's fees, if approved, will be approximately 10% of the amounts recovered by the Receiver.

The Receiver has reviewed the Final Fee Applications, and believes the hourly rates charged were appropriate, given the requirements of the instant receivership, and that the total fees for which the Receiver seeks authorization for payment are fair and reasonable. (Seaman Decl. ¶ 8.) The Receiver likewise believes that the Estate has benefited from the services identified. (<u>Id.</u>)

### 2. The Fees and Expenses Incurred in the Receivership Satisfy the Ninth Circuit Standard for Presumptive Reasonableness.

Courts in the Ninth Circuit use either the "percentage of fund" calculus or apply the "lodestar" method to determine whether a fiduciary fee request is appropriate. <u>See</u>, e.g., <u>Powers v. Eichen</u>, 229 F.3d 1249, 1256 (9th Cir. 2000); <u>In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.</u>, 109 F.3d 602, 609 (9th Cir. 1997). The "percentage of fund" determines an appropriate fee as a

1   percentage of funds recovered.  Powers, 229 F.3d at 1256.  In evaluating the
2   propriety of a fee request with reference to the total funds recovered, the Ninth
3   Circuit has established a benchmark of 25% as presumptively reasonable.  See, e.g.,
4   Powers, 229 F.3d at 1256-57; see also Petroleum Prods., 109 F.3d at 607 (25%
5   determined to be an appropriate benchmark in common fund matters).

6        An application of the "lodestar" method requires multiplying the number of
7   hours reasonably required for the services performed by the movant's reasonable
8   hourly fee to arrive at the so-called lodestar amount.  See, e.g., Blum v. Stenson, 465
9   U.S. 886, 888 (1984).  Once the lodestar amount is calculated, a court can then
10  adjust fees up or down depending on context and relevant factors, including the
11  expertise of counsel, complexities of litigation and risks involved, the relation of
12  fees to total recovery (essentially, a "percentage of fund" correction), and other
13  factors.  In re San Vicente Med. Partners, Ltd., 962 F.2d 1402, 1410 (9th Cir. 1992).

14       Here, as reflected in the Receiver's Final Report, the Receiver's total gross
15  recoveries before payment of operating and administrative expenses is nearly $80
16  million.  As of the date of the Final Fee Applications, and *including* all fees and
17  expenses incurred and submitted for payment authorization to the Court, including
18  the fees and expenses requested for approval and payment via the Final Fee
19  Applications, the Court has approved (or should approve) a total of approximately
20  $8,104,917.94 million in administrative fees in this matter, *inclusive* of all holdback
21  amounts and fees and expenses paid to-date.  In other words, assuming the Court
22  were to authorize the Receiver to make payment of the administrative and
23  professional fees and expenses addressed in the Final Fee Applications, total
24  payments would be approximately 10.1% of all funds recovered for the benefit and
25  administration of the Estate.

26       Accordingly, the total fees and expenses incurred by the Receiver and his
27  Professionals in this matter fall far **below** the 25% benchmark established by the
28  Ninth Circuit as presumptively reasonable.

An application of the lodestar method to the fees and cost incurred to date likewise supports the Final Fee Applications, particularly given the complexity of the business and financial activities of the Entities, the lack of documentation initially available to the Receiver and the resultant investigation he was required to undertake, resulting in a detailed forensic accounting, the complexity of tax issues encountered by the Receiver, and the Receiver's success in maximizing the value of the Entities' Properties and other Receivership Assets. The Receiver therefore respectfully requests that the Court grant the Final Fee Applications and approve the fees and expenses requested therein.

### 3. The Fees and Expenses Requested in the Final Fee Applications have been Submitted to the Commission, Without Objection.

Courts often consider the judgment and experience of the Commission relating to receiver compensation. "[I]t is proper to [keep] in mind that the [Commission] is about the only wholly disinterested party in [this] proceeding and that … its experience has made it thoroughly familiar with the general attitude of the Courts and the amounts of allowances made in scores of comparable proceedings." In re Phila. & Reading Coal & Iron Co., 61 F. Supp. 120, 124 (D.C. Pa. 1945). Indeed, the Commission's perspectives are not "mere casual conjectures, but are recommendations based on closer study than a district judge could ordinarily give to such matters." Finn v. Childs Co., 181 F.2d 431, 438 (2d Cir. 1950) (internal quotation marks omitted). In fact, "recommendations as to fees of the [Commission] may be the only solution to the 'very undesirable subjectivity with variations according to the particular judge under particular circumstances' which has made the fixing of fees seem often to be 'upon nothing more than an ipse dixit basis.'" Id. Thus, the Commission's perspective on the matter should certainly by given "great weight," as observed by the court in Fifth Ave. Coach Lines, Inc., 364 F. Supp. at 1222.

1    In order to ensure that the fees and expenses requested in the Final Fee Applications are appropriate, the Receiver and his Professionals have submitted their respective invoices to the Commission for review.  The Commission has not objected.  The Commission's satisfaction with the subject invoices therefore merits significant deference.  As the <u>Phila. & Reading Coal & Iron Co.</u> court observed, the Commission is "thoroughly familiar with … the amounts of allowances made in scores of comparable proceedings."  61 F.Supp. at 124.  Indeed, the Commission is likely in the best position to measure the fees and expenses requested here against those incurred in other, similar proceedings, and cases of similar complexity.

The Receiver and his Professionals, therefore, respectfully request that the Court approve all requested fees and expenses as identified in the Final Fee Applications.

4.    <u>The Receiver Should be Authorized to Pay Allowed Fees and Expenses from Cash on Hand.</u>

By their Final Fee Applications, the Receiver and his Professionals respectfully request that the Court exercise its broad discretion and enter an order permitting the payment of fees and expenses requested from the cash on-hand that the Receiver presently holds for the benefit of the Estate.[2]  Specifically, the Receiver requests that this Court authorize the payment of previously approved holdbacks in the aggregate amount of $900,113.72, aggregate fees and expenses for the period from October 1, 2023 through May 3, 2024 in the amount of $179,128.85, and to set aside an aggregate reserve in the amount of $50,000 for fees and expenses incurred in connection with the wind-down and termination of the instant receivership.

---

[2]   As reflected above, any funds remaining thereafter would be remitted to the Commission, for payment to the United States Treasury.

Allen Matkins Leck Gamble Mallory & Natsis LLP

4858-6886-7745.2                -14-

## V. **CONCLUSION.**

Based on the Receiver's cumulative findings and the fulfillment of his duties under the Appointment Order and other Court orders in this receivership case, the Receiver respectfully requests that this Court enter an order:

1. Approving the Final Report and Accounting and ratifying and confirming that the actions taken by the Receiver were in the best interests of the receivership estate;

2. Authorizing the payment of the fees and expenses requested in the Final Fee Applications;

3. Authorizing the Receiver to make a corrective distribution of $58,061.38 to 24 investors;

4. Authorizing the Receiver to submit final tax returns for the Receivership Entities and pay tax preparation fees and post- closing professional fees not to exceed $50,000;

5. Authorizing the Receiver to abandon or destroy, as necessary, Receivership Entity documents retained by the Receiver;

6. Authorizing and instructing the Receiver to complete the outstanding wind-down and closing tasks identified herein, and thereafter closing the instant receivership case and discharging and releasing the Receiver, without further order of the Court, effective upon receipt of the Final Declaration from the Receiver reflecting his completion of the foregoing tasks.

\\\
\\\
\\\
\\\
\\\
\\\
\\\

|   |   |
|---|---|
| 1 | 7. Authorizing the Receiver to pay all funds in the remaining in the receivership estate anticipated to be $527,796.42 based on the Court's approval of the Receiver's Final Accounting & Report, and pay any other funds that may be paid to the Receiver following the Final Account & Report to the Securities and Exchange Commission for payment to the United States Treasury. |

Dated: May 14, 2024

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID R. ZARO
EDWARD G. FATES

By:     /s/ *David R. Zaro*
    DAVID R. ZARO
    Attorneys for Receiver
    THOMAS A. SEAMAN